UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                            Case No. 11-58953-TJT

**MICHAEL E. McINERNEY,**                         Chapter 11

      Debtor.                              HON. THOMAS J. TUCKER
_____/

**DANIEL M. McDERMOTT,**
**United States Trustee,**

      Plaintiff,
                                                  Adversary Proc. No. 12-4930
v.

**MICHAEL E. McINERNEY,**

      Defendant.
_____/

## MOTION FOR SUMMARY JUDGMENT
## UNDER 11 U.S.C. § 727(a)(7)

Daniel M. McDermott, United States Trustee for Region 9, states as follows:

1.     The Court has jurisdiction over this matter based on 28 U.S.C. § 1334(a) and (b), 28 U.S.C. § 157 and 28 U.S.C. § 151. This is a core proceeding under 28 U.S.C. § 157(b)(2)(J). This Motion is filed pursuant to Fed. R. Civ. P. 56(a). A proposed Order, Brief and Exhibits in Support are attached.

2.     The Defendant is an individual residing at 4086 Nearbrook Road, Bloomfield Hills, Michigan 48302.

3.     The Defendant is an attorney and experienced businessman and is presently representing himself in his bankruptcy case after withdrawal of his bankruptcy counsel and is representing himself in this Adversary Case.

4.      The above-captioned chapter 11 proceeding was commenced by the filing of a voluntary petition on July 12, 2011.

5.      The U.S. Trustee filed a complaint to deny the Defendant's discharge on May 17, 2012 [Adversary Proceeding 12-4930, Doc. No. 1], pursuant to 11 U.S.C. §§ 727(a)(7).

6.       Defendant was the President and person in control of MEM Investments, LLC ("MEM").

7.      Defendant, as President of MEM, caused MEM to file a voluntary petition under Chapter 11 on August 30, 2010, Case# 10-67143-tjt.

8.      Defendant was also the President and person in control of a number of other companies, being operating and non-operating subsidiaries of MEM, including Post Six, Inc. d/b/a Post Bar Novi ("Post Six").

9.      Defendant, as President of Post Six, caused Post Six to file a voluntary petition under Chapter 11 on August 30, 2010, Case# 10-67149-tjt.

10.      From at least August 2010 through January 2012 and to present, Defendant was and is the Resident Agent and President of Post Six.

11.      The Post Six case, Bankr. E.D. Mich. Case No. 10-67149, filed on August 30, 2010, was filed less than one year prior to the Defendant's current bankruptcy case, filed on July 12, 2011.

12.      Post Six is an insider of Defendant as defined under 11 U.S.C. §101(31) of the U.S. Bankruptcy Code.

13.      Defendant is also an insider of Post Six as defined under 11 U.S.C. §101(31) of the U.S. Bankruptcy Code.

14. On November 18, 2011, an Order was entered appointing Basil Simon as the Chapter 11 Trustee for the jointly administered cases under MEM, including for Post Six (Case# 10-67143, Docket# 317).

15. On or about Monday, November 21, 2011 Basil Simon, in his capacity as Chapter 11 Trustee for the MEM jointly administered cases including Post Six, met with Defendant and informed him that he was no longer authorized to write checks for any of the MEM joint debtors, which included Post Six.

16. Citizens Bank was where the MEM Debtors, including Post Six, had their Debtor in Possession (DIP) bank accounts.

17. On or about Monday, November 21, 2011, Basil Simon met with Defendant at a branch of Citizens Bank in Lake Orion, MI.

18. On or about Monday, November 21, 2011, Basil Simon and Defendant met with a branch manager at Citizens Bank in Lake Orion, MI named Mr. Jason Gresock.

19. During that November 21, 2011meeting Mr. Gresock as branch manager was informed that Basil Simon was the Chapter 11 Trustee and that Defendant no longer had check writing authority for any of the MEM Debtors, including specifically Post Six.

20. During that November 21, 2011 meeting at Citizens Bank the necessary forms were filled out removing Defendant as a signatory on the MEM and related Debtor, including Post Six, DIP bank accounts.

21. As of November 21, 2011, Defendant was aware he no longer had check writing authority to write any checks from the Post Six Citizens Bank DIP account.

22.    As of November 21, 2011, Defendant was informed by Basil Simon that he was also no longer going to receive any payment or salary from any of the MEM Debtors, which would include Post Six.

23.    In or about early February 2012, Basil Simon, during a review of the bank accounts for the MEM debtors discovered that two checks dated in January 2012 had been drafted from the Citizens Bank DIP account of Post Six and signed by Defendant.

24.    The funds from both checks constitute property of the Post Six bankruptcy estate.

25.    The first check was Post Six check number 10159, dated what appears to be 1/15/12, in the amount of $1648.24 made payable to the order of BMW Financial Services and bearing Defendant's signature.

26.    The second check was Post Six check number 10160, dated what appears to be 1/15/12, in the amount of $1342.69 made payable to the order of Detroit Athletic Club and bearing Defendant's signature.

27.    The use and signing of the two Post Six checks (numbers 10159 and 10160) by Defendant was not authorized by or consented to by the Chapter 11 Trustee of Post Six, Basil Simon.

28.    Defendant wrote and signed (or caused to be signed by using a stamp) the two Post Six checks (numbers 10159 and 10160).

29.    Defendant used Post Six check number 10159 to pay for personal expenses of the Defendant, being two months of Defendant's BMW car payments.

30.    Defendant used Post Six check number 10160 to pay for personal expenses of the Debtor, being multiple months of Defendant's membership at the Detroit Athletic Club.

31.     The Chapter 11 Trustee Basil Simon had requested through Defendant's former counsel that Defendant re-pay the amounts represented by the two Post Six checks, ## 10159 and 10160.

32.     On information and belief, the Defendant to date has failed to re-pay the Post Six estate the amounts of either of the two Post Six checks used by Defendant.

33.     As explained in the attached brief in support, the Defendant's acts of signing and using the two Post Six checks (numbers 10159 and 10160) transferred, removed or concealed or permitted to be transferred, removed and concealed property of the Post Six estate, as described in paragraphs 23 through 30, with the requisite intent to hinder, delay or defraud an officer of the estate charged with custody of such property, being the Chapter 11 Trustee, Basil Simon, under 11 U.S.C. § 727(a)(2).

34.     As explained in the attached brief, the Defendant acts of signing and using the two Post Six checks (numbers 10159 and 10160) concealed from the Chapter 11 Trustee Basil Simon and/or falsified information, including books, documents, records and papers from which the financial condition or business transactions of the Post Six estate could be ascertained, as described in paragraphs 23 through 30, which acts were not justified under all of the circumstances of the case, under 11 U.S.C. § 727(a)(3).

35.     As explained in the attached brief in support, the Defendant's acts of signing and using the two Post Six checks (numbers 10159 and 10160) concealed from an officer of the estate, being the Chapter 11 Trustee of the Post Six estate, Basil Simon, entitled to possession of recorded information, including books, documents, records and papers relating to the Debtor's property or financial affairs, as described in paragraphs 23 through 30, with the requisite knowledge and fraudulent intent under 11 U.S.C. § 727(a)(4).

36.     Upon these facts, and for the reasons explained in the U.S. Trustee's attached Brief and Exhibits, summary judgment should be granted for the U.S. Trustee, as no genuine dispute of material fact remains to be resolved and the U.S. Trustee is entitled to judgment as a matter of law.

37.     Counsel for the U.S. Trustee contacted Defendant via e-mail on October 23, 2012 requesting concurrence in this Motion which was not granted by Defendant.

**WHEREFORE**, the United States Trustee respectfully requests the entry of an order granting the U.S. Trustee's motion for summary judgment, and denying the Defendant's discharge pursuant to 11 U.S.C. § 727(a)(7).

Respectfully submitted,

**DANIEL M. McDERMOTT**
**UNITED STATES TRUSTEE**
Region 9

By     /s/ Richard A. Roble (P51429)
Richard.A.Roble@usdoj.gov
Trial Attorney
Office of the U.S. Trustee
211 West Fort St - Suite 700
Detroit, Michigan 48226
(313) 226-6769

Dated: October 23, 2012

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                          Case No. 11-58953-TJT

**MICHAEL E. McINERNEY,**                       Chapter 11

      Debtor.                        HON. THOMAS J. TUCKER

_____/

**DANIEL M. McDERMOTT,**
**United States Trustee,**

      Plaintiff,
                                                Adversary Proc. No. 12-4930
v.

**MICHAEL E. McINERNEY,**

      Defendant.

_____/

### ORDER DENYING DISCHARGE

    **THIS MATTER** came before the Court on the United States Trustee's Motion for Summary Judgment pursuant to 11 U.S.C. § 727(a)(7).  All parties in interest have received notice of this Motion and the Court is otherwise fully advised in this matter.

    **NOW, THEREFORE,**

    **IT IS ORDERED** that the Defendant's discharge is **DENIED** pursuant to 11 U.S.C. § 727(a).

In re:                                                    Case No. 11-58953-TJT

**MICHAEL E. McINERNEY,**                                 Chapter 11

      Debtor.                                    HON. THOMAS J. TUCKER
_____/

**DANIEL M. McDERMOTT,**
**United States Trustee,**

      Plaintiff,

                                    Adversary Proc. No. 12-4930

v.

**MICHAEL E. McINERNEY,**

      Defendant.
_____/

## NOTICE OF MOTION FOR SUMMARY JUDGMENT

      The United States Trustee has filed papers with the court for summary judgment seeking to deny the Defendant's discharge in the above-captioned Chapter 7 bankruptcy case.

      **<u>Your rights may be affected.</u>** You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you not have an attorney, you may wish to consult one.).

      If you do not want the court to grant the relief requested, or if you want the court to consider your views on the motion, **within 14 days**, you or your attorney must:

      1.      File with the court a written response or an answer, explaining your position at:[1]

U.S. Bankruptcy Court
211 West Fort Street, 17th Floor, Intake
Detroit, MI 48226

      If you mail your response to the court for filing, you must mail it early enough so the court will receive it on or before the date stated above.

      You must also mail a copy to:     Richard A. Roble, Esq.
                               Office of the United States Trustee
                                 211 West Fort Street, Suite 700
                                 Detroit, MI 48226

      2.      If a response or answer is timely filed and served, the clerk will schedule a hearing on the motion and you will be served with a notice of the date, time and location of the hearing.

      If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the motion and may enter an order granting that relief.

                                  **DANIEL M. McDERMOTT**
                                  **UNITED STATES TRUSTEE**
                                  Region 9

                  By     /s/ Richard A. Roble (P51429)
                              Richard.A.Roble@usdoj.gov
                              Trial Attorney - Office of the U.S. Trustee
                              211 West Fort St - Suite 700
                              Detroit, Michigan 48226
Dated: October 23, 2012               (313) 226-6769

---

[1] Response or answer must comply with F.R.Civ.P. 8(b), (c) and (e).

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                          Case No. 11-58953-TJT

**MICHAEL E. McINERNEY,**                       Chapter 11

     Debtor.                              HON. THOMAS J. TUCKER

_____/

**DANIEL M. McDERMOTT,**
**United States Trustee,**

     Plaintiff,

                                 Adversary Proc. No. 12-4930

v.

**MICHAEL E. McINERNEY,**

     Defendant.

_____/

### BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR
### SUMMARY JUDGMENT UNDER 11 U.S.C. § 727(a) (7)

**I.    ISSUE PRESENTED**

       Whether the actions of Defendant  -- who used two checks from an insider corporate

Debtor estate to pay for his personal expenses during his own individual bankruptcy, when he

was no longer drawing a salary or otherwise entitled to any compensation, and knew he had been

removed from signatory authority on the corporate Debtor's checking account, and without the

knowledge or permission of the corporate Debtor's Chapter 11 Trustee -- has violated the

provisions of 11 U.S.C. § 727(a)(2), (3) and/or (4)(D) and raised sufficient questions of fact to

survive a motion for summary judgment under 11 U.S.C. § 727(a)(7).

## II.    STATEMENT OF FACTS

Defendant, Michael McInerney, was and is the President of Post Six, Inc. d/b/a Post Bar Novi ("Post Six"), and caused that entity (along with other related entities) to file a voluntary Chapter 11 petition on August 30, 2010 [See copy of Petition and Resolution Case# 10- 67149 tjt *Exhibit 1* ].  Defendant filed his present individual Chapter 11 proceeding by filing a voluntary petition on July 12, 2011. [See copy of Petition Case# 11- 58953 tjt *Exhibit 2*]. Defendant's Chapter 11 case was filed within one year of the filing of the Chapter 11 case of Post Six.

Defendant met with Basil Simon on Monday, November 21, 2011, (who was appointed the Chapter 11 Trustee on or about November 18, 2011 for Post Six and the related entities) at a Citizens Bank branch in Lake Orion, MI. At that meeting Basil Simon and Defendant met with a branch manager named Mr. Jason Gresock and the necessary forms were filled out removing Defendant as a signatory on the Post Six, Debtor in Possession (DIP) bank accounts [Citizens Bank forms adding Basil Simon and removing Defendant as signatory on the Post Six DIP accounts *Exhibit 3*]. The Chapter 11 Trustee also informed the Defendant that the Defendant no longer had any check writing authority for any of the Debtor entities. [2004 Exam. of Basil Simon dated May 1, 2012, p. 9, Lines 3-8; p. 10, Lines 8-17, *Exhibit 4*]. The Chapter 11 Trustee also informed the Defendant that the Defendant would no longer be entitled to any payment or salary from any of the Debtor entities and had been removed from the payroll. [*Exhibit 4*, p. 8, Lines 10-15; p. 15, line 24].

The Citizens Bank branch manager, Mr. Gresock, indicated it was his understanding that Defendant had signed off on any responsibility for the Debtor's accounts [Dep. of Jason Gresock dated September 18, 2012, p. 21, Lines 8-15 *Exhibit 5*].    It was also the understanding of the Mr. Gresock, based on the forms which were signed, that

only Basil Simon had authority to write checks from the Post Six DIP account and Defendant no longer had any authority to do "anything whatsoever on the account". [*Exhibit 5*, p. 22, Lines 2-13].

On or about January 15, 2012, without the knowledge or consent of the Chapter 11 Trustee, Defendant gained access to Post Six DIP checks and drafted from the Post Six DIP account two checks, one in the amount of $1648.24 made payable to the order of BMW Financial Services [See copy of check *Exhibit 6*] and the other in the amount of $1342.69 made payable to the order of Detroit Athletic Club (DAC), [Copy of check *Exhibit 7*] both bearing Defendant's signature. The funds taken by Defendant were property of the Post Six bankruptcy estate. Defendant has admitted he wrote the checks and they bear his signature [2004 Exam of Defendant dated June 18, 2012, p. 43, Lines 24-25; p. 44, Lines 1-5 *Exhibit 8*] and that he used those checks to pay for his personal expenses during the pendency of his individual Chapter 11 bankruptcy case to pay for two months of his BMW automobile payments and pay for multiple months of his DAC membership [*Exhibit 8*, p 45. Lines 3-25]. Defendant has also admitted he was not authorized to fill out the checks and use them for his personal bills:

Q: Did Mr. Simon authorize you to fill out these two checks ad pay your personal bills with them when you were off the payroll from MEM?

A: No.
[*Exhibit 8*, p. 48, Lines 9-12]

The Chapter 11 Trustee only became aware the two checks had been used by Defendant in February 2012, when the Chapter 11 Trustee was going over the Post Six banking records on line to check on disbursements [*Exhibit 4*, p. 13, Lines 3-15].

At Mr. Gresock's deposition he was shown a copy of the two checks written by Defendant. When asked if there was any reason Defendant should have been continuing to write

checks out of the Post Six DIP account in January 2012, Mr. Gresock stated "Absolutely not, he should not have written these checks." [*Exhibit 5*, p. 24, Lines 10-18].

### III.    STANDARD OF REVIEW

This motion is brought pursuant to Federal Rule of Civil Procedure 56(a), which is incorporated by reference in Federal Rule of Bankruptcy Procedure 7056.  That Rule provides as follows, in pertinent part:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as matter of law.

Fed. R. Civ. P. 56(a).  The party seeking summary judgment has the initial burden of informing the Court of the bases for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits which it believes demonstrate the absence of a genuine dispute of material fact.  *Celotex v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal citations and quotations omitted).    The central inquiry is whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one- sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that here be no genuine issue of material fact. *Anderson*, 477 U.S. at 247-248.  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-250.

The non-moving party must provide more than a scintilla of evidence to survive summary judgment. *Anderson*, 477 U.S. at 252; *Humenny v. Genex Corp.*, 390 F.3d 901, 904 (6th Cir. 2004). "Rule 56(e) places responsibility on the party against whom summary judgment is sought to demonstrate that summary judgment is improper, either by showing the existence of a material question of fact or that the underlying substantive law does not permit such a decision." *Jones v. Asgrow Seed Co.*, 749 F. Supp 832, 834 (N.D.Ohio 1990). "If after reviewing the record as a whole a rational finder of fact could not find for the nonmoving party, summary judgment is appropriate." *Braithwaite v. Timken Co.*, 258 F.3d 488, 493 (6th Cir. 2001).

## IV. ARGUMENT

Count I of the U.S. Trustee's Complaint seeks denial of Defendant's discharge under Section 727(a)(7) of the Bankruptcy Code. That statutory section states that the Court shall grant debtors a discharge unless - -

> the debtor has *committed any act specified in paragraph (2),* (3), (*4*), (5) or (6) of this subsection, on or *within one year before the date of the filing of the petition*, *or during the case*, *in connection with another case under this title* or under the Bankruptcy Act, *concerning an insider*.

11 U.S.C. § 727(a)(7) (emphasis added). As set forth below, Defendant committed specific acts specified in under 727(a)(2), (3) and (4) which satisfy the requirements of § 727(a)(7) sufficient to deny his discharge here.

"Section 727(a)(7) extends the basis for denial of discharge to the debtor's misconduct in a substantially contemporaneous related bankruptcy case." 6 COLLIER ON BANKRUPTCY ¶727.10 (6th ed). *In re Watman*, 458 F.3d 26 (First Cir. 2006) (A court may deny a debtor's discharge under 11 U.S.C § 727(a)(7) if the debtor has committed an act specified in §727(a)(2)); *In re Adams*, 31 F.3d 389 (Sixth Cir. 1994)(same). The filing of the Post Six case on August 30, 2010 and Defendant's case filed on July 12, 2011 meets the 727(a)(7)'s within one year requirement in

connection with another case under Title 11 or which conduct occurs during Defendant's case in

connection with Post Six's case. *In re Monus*, 294 BR 707, 716 (Bankr. N.D. Ohio 2003). The

"insider" requirement of § 727(a)(7) is satisfied as well. See *In re Halishak*, 337 B.R. 620, 628-

30 (Bankr. N.D. Ohio 2005) citing to *In re Monus*. The term "insider" is defined to include, in

the case of an individual such as Defendant, "a corporation of which the debtor is a director,

officer, or person in control." 11 U.S.C. §101(31)(A)(iv). *In re Krehl*, 86 F.3d 737, 741 (Seventh

Cir. 1996); *Adams* at 394.

A. **Defendant's Actions Under § 727(a)(2)**

In accordance with 11 U.S.C. § 727(a)(2), the Court shall grant the Debtor a discharge

unless--

the debtor with the intent to hinder, delay, or defraud a creditor or an officer of the
estate charged with custody of property under this title, has transferred, removed,
destroyed, mutilated, or concealed, or has permitted to be transferred, removed,
destroyed, mutilated, or concealed--

(A) property of the debtor, within one year before the date of the filing of
the petition; or
(B) property of the estate, after the date of the filing of the petition.

In *In re Swegan*, 383 B.R. 646, 655 (B.A.P. Sixth Cir. 2008), the definition of the term

"concealed" in a §727(a)(2) context includes "the withholding of knowledge of an asset by the

failure or refusal to divulge information required by law to be made known." See *Peterson v.*

*Scott (In re Scott)*, 172 F.3d 959, 967 (Seventh Cir. 1999)(defining concealment to include

"'preventing discovery, fraudulently transferring or withholding knowledge or information

required by law to be made known.'" (quoting *United States v. Turner*, 725 F.2d 1154,

1157(Eighth Cir. 1984)). Fraudulent intent may be inferred from circumstances showing that the

debtor made material misrepresentations knowing them to be false, or if information was omitted

that the debtor knew would create erroneous impression. *Keeney v. Smith (In re Keeney)*, 227

F.3d 679, 685-686 (Sixth Cir. 2000). Because actual intent is difficult to prove directly, it may be established from circumstantial evidence or inferred from the debtor's conduct. *American Gen. Fin., Inc. V. Burnside (In re Burnside)*, 209 B.R. 867, 871 (Bankr. N.D. Ohio 1997). "Just one wrongful act may be sufficient to show actual intent..." *Hunter v. Sowers (In re Sowers)*, 229 B.R. 151, 153 (Bankr. N.D. Ohio 1998).

A Chapter 11 debtor-in-possession owes a greater duty of disclosure than the typical chapter 7 debtor, as the debtor-in-possession is serving as. *Scott*, at 967. A debtor -in-possession owes a fiduciary duty to his creditors and that duty requires the debtor-in-possession to "furnish such information concerning the estate and the estate's administration as is requested by a party in interest." *Scott*, at 967.

Over six weeks after Defendant *knew* had been removed as a signatory on the Post Six (and related MEM Debtor cases) Citizens Bank DIP accounts and no longer had check writing authority [*Exhibit 4*, p. 9, Lines 3-8; p. 10, Lines 8-17,] and *knew* that he had been told by the Chapter 11 Trustee that he was no longer entitled to a salary by any of the MEM Debtors (including Post Six), [*Exhibit 8*, p. 48, Lines 7-8], he took it upon himself to obtain possession of two checks and write out those two checks totaling almost $3,000.00, to pay his personal expenses for his BMW automobile and for his Detroit Athletic Club membership dues. These acts are *admitted* by Defendant [*Exhibit 8*, p. 43, Lines 24-25; p. 44, Lines 1-5 and p. 45, Lines 12-25]. Defendant has also admitted he was not authorized to fill out the two checks and use them for his personal bills [*Exhibit 8*, p. 48, Lines 9-12].

When questioned as to why he took and used the two checks, the Defendant's excuse was that he "believed" he "was entitled to it" [*Exhibit 8*, p. 48, Lines 13-14]. Even though Defendant knew he was off payroll and no longer entitled to a salary, somehow his excuse is that he was

still entitled to be paid expenses he allegedly had been drawing from the MEM Debtors while he was still in charge of those entities during their bankruptcy. [*Exhibit 8*, p.48, Lines 14-17 and 20-21]. The true effect of Defendant's actions is that he concealed from the Chapter 11 Trustee, who was entitled to know this information, Defendant's use of funds from the Post Six estate for his personal expenses.

Defendant not only concealed his use of the two Post Six checks from the Chapter 11 Trustee in the Post Six case, he also concealed his use of the Post Six checks for payment of his BMW and DAC membership from the U.S. Trustee, the Court and any other parties in interest in his individual Chapter 11 case as well. The payments for Defendant's BMW and DAC membership do not show up in any of his Monthly Operating Reports ("MORs") in his personal bankruptcy case. Defendant's position is that since these payments were an expense paid by the Post Six business, he did not have to disclose that to anyone. [*Exhibit 8*, p. 48, Lines 24-25; p. 49, Lines 1-20; and p. 50, Lines 1-13].

Defendant should have divulged to the Post Six Chapter 11 Trustee his use of the two checks, and he should have also divulged this information to all parties in interest in his MORs in his individual bankruptcy case. Instead, Defendant intentionally and knowingly concealed this information. But for the Chapter 11 Trustee's scrutiny of the Post Six DIP account, no one would have ever known. Defendant's excuse that he was "entitled to it" is meritless. By concealing this information Defendant knew it would make an erroneous impression on all parties in interest in his case regarding his true financial situation and in the Post Six case.

**B.      Defendant's Actions Under § 727(a)(3)**

In accordance with 11 U.S.C. § 727(a)(3), the Court shall grant the Debtor a discharge unless--

the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

All that is required as proof under 727(a)(3) is concealment of assets. Intent is not an element. *Scott* at 969. The purpose of 727(a)(3) is to ensure that the trustee and creditors are supplied with dependable information on which they can rely in tracing a debtor's financial history. *Meridian Bank v. Alten*, 58 F.2d 1226, 1230 (Third Cir. 1992). Sophisticated persons are also generally held to a higher level of accountability in record keeping. *Alten* at 1231.

The Defendant, by failing to inform Basil Simon as Chapter 11 Trustee, of his signing and use of the two Post Six checks concealed and/or falsified information, including books, documents, records and papers from which the financial condition or business transactions of Post Six could be ascertained. The actions of Defendant, by signing and using the two Post Six checks (numbers 10159 and 10160) totaling almost $3000.00 as described herein, is not justified under all of the circumstances of this case and constitute an act as specified in 11 U.S.C. § 727(a)(3). Likewise, the Defendant's failure to include in his MORs in his individual Chapter 11 case any reference to the use of the Post Six funds to pay his bills was a concealment of information in his individual case as well.

## C.    Defendant's Actions Under § 727(a)(4)

In accordance with 11 U.S.C. § 727(a)(4), the Court shall grant the Debtor a discharge unless–

the debtor knowingly and fraudulently, in or in connection with the case—

     * * *
     (D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs;

The focus of §727(a)(4)(D) is on the debtor's duty to maintain and turn over recorded information which bears upon the debtor's financial condition and business affairs. *In re Guttman (Gold v. Guttman)*, 237 B.R. 643, 649-650 (Bankr. E.D. Mich.1999)(Rhodes, J., citing, *In re McDonald*, 25 B.R. 186, 189 (Bankr. N.D. Ohio 1982) and *In re Gannon*, 173 B.R. 313, 320 (Bankr. S.D.N.Y. 1994)). By the explicit terms of § 727(a)(4), this duty is in *or* in connection with the case.

Courts commonly analyze the factor of whether the actions of a Debtor were done with fraudulent intent. *See In re Sharp*, 244 B.R. 889, 893 (Bankr. E.D. Mich. 2000) ("The primary issue in this case is whether these omissions and concealments were knowing and fraudulent. . . ."). As the Western District of Kentucky Bankruptcy Court recently discussed:

> To find the requisite degree of fraudulent intent, the court must find that the debtor knowingly intended to defraud the trustee, or engaged in such reckless behavior as to justify the finding of fraud. The trustee may prove the debtor's fraud by *evidence of the debtor's awareness of the omitted asset* and by showing that the debtor knew that failure to list the asset could seriously mislead the trustee or *that the debtor acted so recklessly in not reporting the asset that fraud is implied*.

*In re Rule*, 2011 WL 841505, *5 (emphasis added). Courts may deduce such intent "from all the facts and circumstances of a case." *Keeney,* at 686. In *Keeney*, the Sixth Circuit discussed the standard of proof for deducing fraudulent intent under § 727(a)(4)(A) as follows:

> [I]ntent to defraud involves a material representation that you know to be false, or, what amounts to the same thing, an omission that you know will create an erroneous impression. A reckless disregard as to whether a representation is true will also satisfy the intent requirement.

*Keeney*, at 685-86 (internal citation and quotation omitted). This Court finds such fraudulent intent present where defendants make numerous errors and omissions in their schedules and statement of financial affairs. *See, e.g., In re Cutler*, 291 B.R. 718, 726 (Bankr. E.D. Mich.

2003) ("A series or pattern of errors or omissions may have a cumulative effect giving rise to an inference of an intent to deceive"). See *Halishak*, at 629.

The same is true in the present case, where the Defendant has offered no credible explanation – except to say he was "entitled" to the money – for his concealment of his use of the Post Six checks from the Post Six Chapter 11 Trustee and his intentional failure to list the use of these checks to pay for his personal expenses in his MORs filed in his individual Chapter 11 case.

In *Stamat v. Neary*, 635 F.3d 974 (7th Cir. 2011), two doctors concealed income from their medical practice in the course of their bankruptcy filing, and their discharge was denied under § 727(a)(4)(A). Coupled with other errors and omissions in their filings, the Seventh Circuit upheld denial of their discharges:

> Given the Stamats' level of education and business experience, their failure to disclose the required past business interests, property transfers, and income as discussed above shows a reckless disregard sufficient for the bankruptcy court's finding of intent under section 727(a)(4)[.]

*Stamat*, 635 F.3d at 982. Here, like the doctors in *Stamat*, Defendant is a sophisticated actor – an attorney and experienced business man. Defendant should therefore appreciate the requirement of complete candor that the Bankruptcy Code requires.

In *In re Summers*, 320 B.R. 630 (Bankr. E.D. Mich. 2005) this Court denied the discharge of a debtor who failed to accurately disclose his historical income, coupled with numerous other inaccuracies in his bankruptcy filings. *Summers*, 320 B.R. at 638-44. The Court found that debtor's level of candor in his schedules to be "cavalier at best," *Summers*, 320 B.R. at 643, to a level which warranted denial of that debtor's discharge:

> The Court cannot condone the filing of slipshod schedules by a debtor who dismisses his paramount responsibility to be candid, accurate and honest as a

mere formality to be corrected later if it suits him, or not at all. The bankruptcy system simply could not function were this cavalier attitude accepted.

*Id*. at 644. The same is true in the instant case.

The Defendant's actions, by signing and using the two Post Six checks (numbers 10159 and 10160) totaling almost $3000.00 as described herein, constitute a knowing and fraudulent concealment from an officer of the estate entitle to possession under title 11, being Basil Simon as the Chapter 11 Trustee, of recorded information, including books, documents, records and papers, relating to the debtor Post Six's property or financial affairs. This concealment also applies to the Defendant's individual Chapter 11 case. On this record, the Court should find the actions of the Defendant to be a knowingly and fraudulently concealment and withholding of records and information under 11 U.S.C. § 727(a)(4)(D).

## V.    CONCLUSION

The conduct described above violates 11 U.S.C. § 727(a)(7) as a matter of law, and Defendant's discharge should be denied. As no genuine disputes of material fact remain, the Court should **GRANT** the U.S. Trustee's motion for summary judgment, and **DENY** Defendant's discharge.

Respectfully submitted,

**DANIEL M. McDERMOTT**
**UNITED STATES TRUSTEE**
Region 9

By    /s/ Richard A. Roble (P51429)
Richard.A.Roble@usdoj.gov
Trial Attorney
Office of the U.S. Trustee
211 West Fort St - Suite 700
Detroit, Michigan 48226
(313) 226-6769

Dated: October 23, 2012

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                          Case No. 11-58953-TJT

**MICHAEL E. McINERNEY,**                       Chapter 11

      Debtor.                          HON. THOMAS J. TUCKER
_____/

**DANIEL M. McDERMOTT,**
**United States Trustee,**

      Plaintiff,
                                                Adversary Proc. No. 12-4930

v.

**MICHAEL E. McINERNEY,**

      Defendant.
_____/

## CERTIFICATE OF SERVICE

I hereby certify that on October 23, 2012, I served copies as follows:

1.    Documents Served:             *Motion for Summary Judgment, Notice of Motion, Brief, Exhibits* and *Certificate of Service.*

2.    Served Upon:                  Michael E. McInerney
4086 Nearbrook Road
Bloomfield Hills,  MI 48302

3.    Method of Service            First Class Mail

                                    **DANIEL M. McDERMOTT**
**UNITED STATES TRUSTEE**
Region 9

                  By:    /s/ Karen Riggs
Karen.Riggs@usdoj.gov
Paralegal Specialist
Office of the U.S. Trustee
211 West Fort Street - Suite 700
Detroit, Michigan 48226
313.226.7259

Dated: October 23, 2012

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                          Case No. 11-58953-TJT

**MICHAEL E. McINERNEY,**                       Chapter 11

         Debtor.                                HON. THOMAS J. TUCKER
_____/

**DANIEL M. McDERMOTT,**
**United States Trustee,**

         Plaintiff,
                                                Adversary Proc. No. 12-4930
v.

**MICHAEL E. McINERNEY,**

         Defendant.
_____/

## EXHIBIT LIST

Exhibit 1       Petition and Resolution Case# 10- 67149 tjt Court [Docket#]

Exhibit 2       Petition Case# 11- 58953 tjt [Docket#]

Exhibit 3       Citizens Bank forms adding Basil Simon and removing Defendant as signatory on
                the Post Six DIP accounts

Exhibit 4       Transcript of 2004 Examination of Basil Simon dated May 1, 2012

Exhibit 5       Deposition transcript of Jason Gresock dated September 18, 2012

Exhibit 6       Post Six check number 10159 dated 1/15/12 in the amount of $1648.24 made
                payable to the order of BMW Financial Services

Exhibit 7       Post Six check number 10160 is dated 1/15/12 in the amount of $1342.69 made
                payable to the order of Detroit Athletic Club

Exhibit 8       Transcript of 2004 Examination of Defendant dated June 18, 2012

| United States Bankruptcy Court<br>Eastern District of Michigan | Voluntary Petition |
|---|---|

| Name of Debtor (if individual, enter Last, First, Middle):<br>Post Six, Inc. | Name of Joint Debtor (Spouse) (Last, First, Middle): |
|---|---|
| All Other Names used by the Debtor in the last 8 years<br>(include married, maiden, and trade names): | All Other Names used by the Joint Debtor in the last 8 years<br>(include married, maiden, and trade names): |
| Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN) No./Complete EIN<br>(if more than one, state all)<br>36-4503857 | Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN) No./Complete EIN<br>(if more than one, state all) |
| Street Address of Debtor (No. and Street, City, and State):<br>42875 Grand River<br>Novi, MI<br><br>ZIP Code **48375** | Street Address of Joint Debtor (No. and Street, City, and State):<br><br>ZIP Code |
| County of Residence or of the Principal Place of Business:<br>Oakland | County of Residence or of the Principal Place of Business: |
| Mailing Address of Debtor (if different from street address):<br><br>ZIP Code | Mailing Address of Joint Debtor (if different from street address):<br><br>ZIP Code |
| Location of Principal Assets of Business Debtor<br>(if different from street address above): | |

**Type of Debtor**
(Form of Organization)
(Check one box)

- ☐ Individual (includes Joint Debtors)
  *See Exhibit D on page 2 of this form.*
- ☒ Corporation (includes LLC and LLP)
- ☐ Partnership
- ☐ Other (If debtor is not one of the above entities, check this box and state type of entity below.)

**Nature of Business**
(Check one box)

- ☐ Health Care Business
- ☐ Single Asset Real Estate as defined in 11 U.S.C. § 101 (51B)
- ☐ Railroad
- ☐ Stockbroker
- ☐ Commodity Broker
- ☐ Clearing Bank
- ☐ Other

**Tax-Exempt Entity**
(Check box, if applicable)

- ☐ Debtor is a tax-exempt organization under Title 26 of the United States Code (the Internal Revenue Code).

**Chapter of Bankruptcy Code Under Which the Petition is Filed** (Check one box)

- ☐ Chapter 7
- ☐ Chapter 9
- ☒ Chapter 11
- ☐ Chapter 12
- ☐ Chapter 13
- ☐ Chapter 15 Petition for Recognition of a Foreign Main Proceeding
- ☐ Chapter 15 Petition for Recognition of a Foreign Nonmain Proceeding

**Nature of Debts**
(Check one box)

- ☐ Debts are primarily consumer debts, defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."
- ☒ Debts are primarily business debts.

**Filing Fee** (Check one box)

- ☒ Full Filing Fee attached
- ☐ Filing Fee to be paid in installments (applicable to individuals only). Must attach signed application for the court's consideration certifying that the debtor is unable to pay fee except in installments. Rule 1006(b). See Official Form 3A.
- ☐ Filing Fee waiver requested (applicable to chapter 7 individuals only). Must attach signed application for the court's consideration. See Official Form 3B.

**Chapter 11 Debtors**
Check one box:
- ☐ Debtor is a small business debtor as defined in 11 U.S.C. § 101(51D).
- ☒ Debtor is not a small business debtor as defined in 11 U.S.C. § 101(51D).

Check if:
- ☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,343,300 *(amount subject to adjustment on 4/01/13 and every three years thereafter)*.

Check all applicable boxes:
- ☐ A plan is being filed with this petition.
- ☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

**Statistical/Administrative Information**

- ☒ Debtor estimates that funds will be available for distribution to unsecured creditors.
- ☐ Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors.

THIS SPACE IS FOR COURT USE ONLY

**Estimated Number of Creditors**

| ☒ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|---|
| 1-49 | 50-99 | 100-199 | 200-999 | 1,000-5,000 | 5,001-10,000 | 10,001-25,000 | 25,001-50,000 | 50,001-100,000 | OVER 100,000 |

**Estimated Assets**

| ☐ | ☐ | ☐ | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|---|
| $0 to $50,000 | $50,001 to $100,000 | $100,001 to $500,000 | $500,001 to $1 million | $1,000,001 to $10 million | $10,000,001 to $50 million | $50,000,001 to $100 million | $100,000,001 to $500 million | $500,000,001 to $1 billion | More than $1 billion |

**Estimated Liabilities**

| ☐ | ☐ | ☐ | ☐ | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|---|
| $0 to $50,000 | $50,001 to $100,000 | $100,001 to $500,000 | $500,001 to $1 million | $1,000,001 to $10 million | $10,000,001 to $50 million | $50,000,001 to $100 million | $100,000,001 to $500 million | $500,000,001 to $1 billion | More than $1 billion |

**EXHIBIT 1**

| **Voluntary Petition** | Name of Debtor(s): |
|---|---|
| *(This page must be completed and filed in every case)* | Post Six, Inc. |

| **All Prior Bankruptcy Cases Filed Within Last 8 Years** (If more than two, attach additional sheet) | | |
|---|---|---|
| Location<br>Where Filed:  - None - | Case Number: | Date Filed: |
| Location<br>Where Filed: | Case Number: | Date Filed: |

| **Pending Bankruptcy Case Filed by any Spouse, Partner, or Affiliate of this Debtor** (If more than one, attach additional sheet) | | |
|---|---|---|
| Name of Debtor:<br> - None - | Case Number: | Date Filed: |
| District: | Relationship: | Judge: |

| **Exhibit A** | **Exhibit B** |
|---|---|
| (To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11.)<br><br>☐ Exhibit A is attached and made a part of this petition. | (To be completed if debtor is an individual whose debts are primarily consumer debts.)<br>I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter. I further certify that I delivered to the debtor the notice required by 11 U.S.C. §342(b).<br><br>X _____<br>Signature of Attorney for Debtor(s)          (Date) |

**Exhibit C**

Does the debtor own or have possession of any property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety?

☐ Yes, and Exhibit C is attached and made a part of this petition.

■ No.

**Exhibit D**

(To be completed by every individual debtor. If a joint petition is filed, each spouse must complete and attach a separate Exhibit D.)

☐ Exhibit D completed and signed by the debtor is attached and made a part of this petition.

If this is a joint petition:

☐ Exhibit D also completed and signed by the joint debtor is attached and made a part of this petition.

**Information Regarding the Debtor - Venue**
(Check any applicable box)

■ Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.

☐ There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District.

☐ Debtor is a debtor in a foreign proceeding and has its principal place of business or principal assets in the United States in this District, or has no principal place of business or assets in the United States but is a defendant in an action or proceeding [in a federal or state court] in this District, or the interests of the parties will be served in regard to the relief sought in this District.

**Certification by a Debtor Who Resides as a Tenant of Residential Property**
(Check all applicable boxes)

☐ Landlord has a judgment against the debtor for possession of debtor's residence. (If box checked, complete the following.)

_____
(Name of landlord that obtained judgment)

_____
(Address of landlord)

☐ Debtor claims that under applicable nonbankruptcy law, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after the judgment for possession was entered, and

☐ Debtor has included in this petition the deposit with the court of any rent that would become due during the 30-day period after the filing of the petition.

☐ Debtor certifies that he/she has served the Landlord with this certification. (11 U.S.C. § 362(l)).

**EXHIBIT 1**

| **Voluntary Petition** | Name of Debtor(s):<br>Post Six, Inc. |
|---|---|
| *(This page must be completed and filed in every case)* | |

Signatures

| **Signature(s) of Debtor(s) (Individual/Joint)** | **Signature of a Foreign Representative** |
|---|---|

**Signature(s) of Debtor(s) (Individual/Joint)**

I declare under penalty of perjury that the information provided in this petition is true and correct.
[If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7] I am aware that I may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7.
[If no attorney represents me and no bankruptcy petition preparer signs the petition] I have obtained and read the notice required by 11 U.S.C. §342(b).

I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

**X** _____
Signature of Debtor

**X** _____
Signature of Joint Debtor

_____
Telephone Number (If not represented by attorney)

_____
Date

**Signature of a Foreign Representative**

I declare under penalty of perjury that the information provided in this petition is true and correct, that I am the foreign representative of a debtor in a foreign proceeding, and that I am authorized to file this petition.

(Check only one box.)

☐ I request relief in accordance with chapter 15 of title 11, United States Code. Certified copies of the documents required by 11 U.S.C. §§1515 are attached.

☐ Pursuant to 11 U.S.C. §1511, I request relief in accordance with the chapter of title 11 specified in this petition. A certified copy of the order granting recognition of the foreign main proceeding is attached.

**X** _____
Signature of Foreign Representative

_____
Printed Name of Foreign Representative

_____
Date

**Signature of Attorney***

**X** /s/ John C. Lange
Signature of Attorney for Debtor(s)

John C. Lange P-39302
Printed Name of Attorney for Debtor(s)

Gold, Lange & Majoros, PC
Firm Name
24901 Northwestern Hwy.
Suite 444
Southfield, MI 48075

Address

Email: jlange@glmpc.com
(248) 350-8220
Telephone Number

August 30, 2010
Date

*In a case in which § 707(b)(4)(D) applies, this signature also constitutes a certification that the attorney has no knowledge after an inquiry that the information in the schedules is incorrect.

**Signature of Non-Attorney Bankruptcy Petition Preparer**

I declare under penalty of perjury that: (1) I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110; (2) I prepared this document for compensation and have provided the debtor with a copy of this document and the notices and information required under 11 U.S.C. §§ 110(b), 110(h), and 342(b); and, (3) if rules or guidelines have been promulgated pursuant to 11 U.S.C. § 110(h) setting a maximum fee for services chargeable by bankruptcy petition preparers, I have given the debtor notice of the maximum amount before preparing any document for filing for a debtor or accepting any fee from the debtor, as required in that section. Official Form 19 is attached.

_____
Printed Name and title, if any, of Bankruptcy Petition Preparer

_____
Social-Security number (If the bankrutpcy petition preparer is not an individual, state the Social Security number of the officer, principal, responsible person or partner of the bankruptcy petition preparer.)(Required by 11 U.S.C. § 110.)

_____
Address

**X** _____

_____
Date

Signature of Bankruptcy Petition Preparer or officer, principal, responsible person, or partner whose Social Security number is provided above.

Names and Social-Security numbers of all other individuals who prepared or assisted in preparing this document unless the bankruptcy petition preparer is not an individual:

If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person.

*A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both 11 U.S.C. §110; 18 U.S.C. §156.*

**Signature of Debtor (Corporation/Partnership)**

I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor.

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

**X** /s/ Michael McInerney
Signature of Authorized Individual

Michael McInerney
Printed Name of Authorized Individual

President
Title of Authorized Individual

August 30, 2010
Date

<b>EXHIBIT 1</b>

## RESOLUTIONS OF THE BOARD OF DIRECTORS

  I, Michael E. McInerney, President of MEM Investments, LLC, a Michigan corporation, together with its operating and non-operating subsidiaries Post Six, Inc., S&J Post, Inc., Real Entertainment, LLC, The Elephant, Inc., Entertainment Holdings, LLC, and BCB Development Associates, LLC (collectively, the "Company"), do hereby certify that: (i) I am the duly elected, qualified acting President of the Company; (ii) the following resolutions were duly adopted by the Board of Directors of the Company, as of August 30, 2010, in accordance with the requirements of Michigan corporation law; and (iii) said resolutions have not been amended, modified, or rescinded and are in full force and effect as of the date hereof:

  WHEREAS, the Board of Directors (the "Board") has considered the financial and operational aspects of the Company's businesses;

  WHEREAS, the Board has reviewed the historical performance of the Company, and the current and long-term liabilities of the Company;

  WHEREAS, the Board believes that a restructuring is unlikely to be achieved outside a bankruptcy proceeding due to the Company's highly leveraged financial condition;

  WHEREAS, given liquidity constraints and the risk of erosion in the value of the Company's businesses and assets, the Company has determined that a bankruptcy filing is in the best interests of the Company and its creditors;

  RESOLVED, that in the judgment of the Board of Directors of the Company, it is in the best interests of the Company, its creditors, and other interested parties that petitions be filed by the Company seeking relief under the provisions of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code");

  RESOLVED, that the President of the Company be, and hereby is, authorized, empowered and directed, in the name and on behalf of the Company, to execute and verify petitions under chapter 11 of the Bankruptcy Code with respect to the Company and to cause the same to be filed in the United States Bankruptcy Court for the Eastern District of Michigan (the "Bankruptcy Court") at such time as the President executing such petition shall determine;

  RESOLVED, that the law firm of Gold, Lange & Majoros, P.C. ("GLM") be, and hereby is, retained as general bankruptcy and corporate counsel for the Company under a general retainer in the Company's chapter 11 case, subject to the approval of the Bankruptcy Court;

  RESOLVED, that the Company may retain professionals to perform supplemental legal services, as well as accounting, restructuring and/or financial advisory services for the Company's chapter 11 case, all subject to the approval of the Bankruptcy Court;

  RESOLVED, that the President be, and hereby is, authorized, empowered and directed to execute and approve the filing of all petitions, schedules, motions, lists, applications, pleadings and other papers and, in connection therewith, to employ and retain all assistance by legal counsel, accountants, financial advisors and other professionals and to take and perform

any and all such further acts and deeds that the President deems necessary and proper in connection with the Company's chapter 11 cases, with a view to the successful prosecution of such cases;

RESOLVED, that the President, and such other officers of the Company as the President shall from time to time designate, and any employees or agents (including GLM as counsel) designated by or directed by the President, be, and each hereby is, authorized, empowered and directed, in the name and on behalf of the Company, to cause the Company to enter into, execute, deliver, certify, file and/or record and perform such agreements, instruments, motions, affidavits, applications for approvals or rulings of governmental or regulatory authorities, certificates or other documents, and to take such other actions, as in the judgment of any such officer shall be or become necessary, proper or desirable to the successful prosecution of these chapter 11 cases;

RESOLVED, that any and all past actions heretofore taken by the President, any other officer of the Company as authorized above, or the Directors of the Company in the name and on behalf of the Company in furtherance of any or all of the preceding resolutions be, and the same hereby are, ratified, confirmed and approved.


The foregoing Resolutions are approved on and as of August 30, 2010.

MICHAEL MCINERNEY
President

B1 (Official Form 1) (4/10)

| United States Bankruptcy Court<br>Eastern District of Michigan | Voluntary Petition |
|---|---|

| Name of Debtor (if individual, enter Last, First, Middle):<br>**McInerney, Michael E.** | Name of Joint Debtor (Spouse) (Last, First, Middle): |
|---|---|
| All Other Names used by the Debtor in the last 8 years<br>(include married, maiden, and trade names): | All Other Names used by the Joint Debtor in the last 8 years<br>(include married, maiden, and trade names): |
| Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN)/Complete EIN<br>(if more than one, state all):<br>**xxx-xx-7632** | Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN)/Complete EIN<br>(if more than one, state all): |

Street Address of Debtor (No. & Street, City, and State):
**4086 Nearbrook Road**
**Bloomfield Hills, MI 48302**

ZIP CODE **48302-0000**

Street Address of Joint Debtor (No. & Street, City, and State):

ZIP CODE

County of Residence or of the Principal Place of Business:
**Oakland**

County of Residence or of the Principal Place of Business:

Mailing Address of Debtor (if different from street address):

ZIP CODE

Mailing Address of Joint Debtor (if different from street address):

ZIP CODE

Location of Principal Assets of Business Debtor (if different from street address above):

**Type of Debtor**
(Form of Organization)
(Check one box.)

- ☒ Individual (includes Joint Debtors)
  *See Exhibit D on page 2 of this form.*
- ☐ Corporation (includes LLC and LLP)
- ☐ Partnership
- ☐ Other (If debtor is not one of the above entities, check this box and state type of entity below.)

**Nature of Business**
(Check one box.)

- ☐ Health Care Business
- ☐ Single Asset Real Estate as defined in 11 U.S.C. § 101(51B)
- ☐ Railroad
- ☐ Stockbroker
- ☐ Commodity Broker
- ☐ Clearing Bank
- ☒ Other

**Tax-Exempt Entity**
(Check box, if applicable.)

- ☐ Debtor is a tax-exempt organization under Title 26 of the United States Code (the Internal Revenue Code).

**Chapter of Bankruptcy Code Under Which the Petition is Filed** (Check one box)

- ☐ Chapter 7
- ☐ Chapter 9
- ☒ Chapter 11
- ☐ Chapter 12
- ☐ Chapter 13
- ☐ Chapter 15 Petition for Recognition of a Foreign Main Proceeding
- ☐ Chapter 15 Petition for Recognition of a Foreign Nonmain Proceeding

**Nature of Debts**
(Check one box)

- ☐ Debts are primarily consumer debts, defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."
- ☒ Debts are primarily business debts.

**Filing Fee** (Check one box.)

- ☒ Full Filing Fee attached
- ☐ Filing Fee to be paid in installments (Applicable to individuals only) Must attach signed application for the court's consideration certifying that the debtor is unable to pay fee except in installments. Rule 1006(b). See Official Form 3A.
- ☐ Filing Fee waiver requested (Applicable to chapter 7 individuals only). Must attach signed application for the court's consideration. See Official Form 3B.

**Chapter 11 Debtors**
Check one box:

- ☐ Debtor is a small business debtor as defined in 11 U.S.C. § 101(51D).
- ☒ Debtor is not a small business debtor as defined in 11 U.S.C. § 101(51D).

Check if:

- ☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,343,300 (amount subject to adjustment on 4/01/13 and every three years thereafter.)

Check all applicable boxes:

- ☐ A plan is being filed with this petition.
- ☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

**Statistical/Administrative Information**

- ☒ Debtor estimates that funds will be available for distribution to unsecured creditors.
- ☐ Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors.

THIS SPACE IS FOR COURT USE ONLY

Estimated Number of Creditors

| ☒ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|
| 1-49 | 50-99 | 100-199 | 200-999 | 1,000-5,000 | 5001-10,000 | 10,001-25,000 | 25,001-50,000 | 50,001-100,000 | OVER 100,000 |

Estimated Assets

| ☐ | ☐ | ☐ | ☐ | ☐ | ☒ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|---|
| $0 to $50,000 | $50,001 to $100,000 | $100,001 to $500,000 | $500,001 to $1 million | $1,000,001 to $10 million | $10,000,001 to $50 million | $50,000,001 to $100 million | $100,000,001 to $500 million | $500,000,001 to $1 billion | More than $1 billion |

Estimated Debts

| ☐ | ☐ | ☐ | ☐ | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|---|
| $0 to $50,000 | $50,001 to $100,000 | $100,001 to $500,000 | $500,001 to $1 million | $1,000,001 to $10 million | $10,000,001 to $50 million | $50,000,001 to $100 million | $100,000,001 to $500 million | $500,000,001 to $1 billion | More than $1 billion |

**EXHIBIT 2**

| **Voluntary Petition** *(This page must be completed and filed in every case)* | Name of Debtor(s): **Michael E. McInerney** |
|---|---|

### All Prior Bankruptcy Cases Filed Within Last 8 Years (If more than two, attach additional sheet.)

| Location Where Filed:  - None - | Case Number: | Date Filed: |
|---|---|---|
| Location Where Filed: | Case Number: | Date Filed: |

### Pending Bankruptcy Case Filed by any Spouse, Partner, or Affiliate of this Debtor (If more than one, attach additional sheet.)

| Name of Debtor: **See Attachment** | Case Number: | Date Filed: |
|---|---|---|
| District: | Relationship: | Judge: |

| **Exhibit A** | **Exhibit B** (To be completed if debtor is an individual whose debts are primarily consumer debts.) |
|---|---|
| (To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11.) <br><br> ☐ Exhibit A is attached and made a part of this petition. | I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter. I further certify that I delivered to the debtor the notice required by 11 U.S.C. § 342(b). <br><br> X _____<br> Signature of Attorney for Debtor(s)          (Date) |

### Exhibit C

Does the debtor own or have possession of any property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety?

☐ Yes, and Exhibit C is attached and made a part of this petition.

☒ No

### Exhibit D

(To be completed by every individual debtor. If a joint petition is filed, each spouse must complete and attach a separate Exhibit D.)

☒ Exhibit D completed and signed by the debtor is attached and made a part of this petition.

If this is a joint petition:

☐ Exhibit D also completed and signed by the joint debtor is attached and made a part of this petition.

### Information Regarding the Debtor - Venue
(Check any applicable box.)

☒ Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.

☐ There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District.

☐ Debtor is a debtor in a foreign proceeding and has its principal place of business or principal assets in the United States in this District, or has no principal place of business or assets in the United States but is a defendant in an action or proceeding [in a federal or state court] in this District, or the interests of the parties will be served in regard to the relief sought in this District.

### Certification by a Debtor Who Resides as a Tenant of Residential Property
(Check all applicable boxes.)

☐ Landlord has a judgment against the debtor for possession of debtor's residence. (If box checked, complete the following.)

_____
(Name of landlord that obtained judgment)

_____
(Address of landlord)

☐ Debtor claims that under applicable nonbankruptcy law, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after the judgment for possession was entered, and

☐ Debtor has included in this petition the deposit with the court of any rent that would become due during the 30-day period after the filing of the petition.

☐ Debtor certifies that he/she has served the Landlord with this certification. (11 U.S.C. § 362(l)).

11-58953-tjt   Doc 1   Filed 07/12/11   Entered 07/12/11 13:33:32   Page 2 of 9
12-04930-tjt   Doc 15   Filed 10/23/12   Entered 10/23/12 14:12:10   Page 29 of 192

**EXHIBIT 2**

| Voluntary Petition <br> *(This page must be completed and filed in every case)* | Name of Debtor(s): <br> **Michael E. McInerney** |
|---|---|

## Signatures

### Signature(s) of Debtor(s) (Individual/Joint)

I declare under penalty of perjury that the information provided in this petition is true and correct.

[If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7] I am aware that I may proceed under chapter 7, 11, 12 or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7.

[If no attorney represents me and no bankruptcy petition preparer signs the petition] I have obtained and read the notice required by 11 U.S.C. § 342(b).

I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X _____
Signature of Debtor **Michael E. McInerney**

X _____
Signature of Joint Debtor

_____
Telephone Number (If not represented by attorney)
**July 11, 2011**
_____
Date

### Signature of Attorney*

X _____
Signature of Attorney for Debtor(s)
**Michael I. Zousmer P47190**
Printed Name of Attorney for Debtor(s)
**Nathan Zousmer, P.C.**
Firm Name
**29100  Northwestern Hwy., Suite 260**
**Southfield, MI 48034**
Address

**(248) 351-0099 Fax:(248) 351-0487**
Telephone Number
**July 11, 2011**
Date

*In a case in which § 707(b)(4)(D) applies, this signature also constitutes a certification that the attorney has no knowledge after an inquiry that the information in the schedules is incorrect.

### Signature of Debtor (Corporation/Partnership)

I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor.

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X _____
Signature of Authorized Individual

_____
Printed Name of Authorized Individual

_____
Title of Authorized Individual

_____
Date

### Signature of a Foreign Representative

I declare under penalty of perjury that the information provided in this petition is true and correct, that I am the foreign representative of a debtor in a foreign proceeding, and that I am authorized to file this petition.

(Check only **one** box.)

☐ I request relief in accordance with chapter 15 of title 11, United States Code. Certified copies of the documents required by 11 U.S.C. § 1515 are attached.

☐ Pursuant to 11 U.S.C. § 1511, I request relief in accordance with the chapter of title 11 specified in this petition. A certified copy of the order granting recognition of the foreign main proceeding is attached.

X _____
(Signature of Foreign Representative)

_____
(Printed Name of Foreign Representative)

_____
Date

### Signature of Non-Attorney Bankruptcy Petition Preparer

I declare under penalty of perjury that:  1) I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110; 2) I prepared this document for compensation and have provided the debtor with a copy of this document and the notices and information required under 11 U.S.C. §§ 110(b), 110(h), and 342(b); and, 3) if rules or guidelines have been promulgated pursuant to 11 U.S.C. § 110(h) setting a maximum fee for services chargeable by bankruptcy petition preparers, I have given the debtor notice of the maximum amount before preparing any document for filing for a debtor or accepting any fee from the debtor, as required in that section. Official form 19 is attached.

_____
Printed Name and title, if any, of Bankruptcy Petition Preparer

_____
Social-Security number (If the bankruptcy petition preparer is not an individual, state the Social Security number of the officer, principal, responsible person or partner of the bankruptcy petition preparer.)(Required by 11 U.S.C. § 110.)

_____
Address

X _____

_____
Date

Signature of Bankruptcy Petition Preparer or officer, principal, responsible person, or partner whose social security number is provided above.

Names and Social-Security numbers of all other individuals who prepared or assisted in preparing this document unless the bankruptcy petition preparer is not an individual.

If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person.

*A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both  11 U.S.C. § 110; 18 U.S.C. § 156.*

**EXHIBIT 2**

In re    **Michael E. McInerney**                                              Case No. _____
                                                    Debtor(s)

# FORM 1. VOLUNTARY PETITION

## Pending Bankruptcy Cases Filed Attachment

| Name of Debtor | Case No. | Judge |
|---|---|---|
| **BCB Development Associates, LLC** | **10-67162** | |
| | | Thomas J. Tucker |
| **Entertainment Holdings, LLC** | **10-67155** | |
| | | Thomas J. Tucker |
| **MEM Investments, L.L.C., et al** | **10-67143** | |
| | | Thomas J. Tucker |
| **Post Six, Inc.** | **10-67149** | |
| | | Thomas J. Tucker |
| **Real  Entertainment, LLC** | **10-67153** | |
| | | Thomas J. Tucker |
| **S&J Post, Inc.** | **10-67151** | |
| | | Thomas J. Tucker |
| **The Elephant, Inc.** | **10-67154** | |
| | | Thomas J. Tucker |

**EXHIBIT 2**

B1 (Official Form 1) (4/10)

| United States Bankruptcy Court<br>Eastern District of Michigan | Voluntary Petition |
|---|---|

| Name of Debtor (if individual, enter Last, First, Middle):<br>**McInerney, Michael E.** | Name of Joint Debtor (Spouse) (Last, First, Middle): |
|---|---|
| All Other Names used by the Debtor in the last 8 years<br>(include married, maiden, and trade names) | All Other Names used by the Joint Debtor in the last 8 years<br>(include married, maiden, and trade names) |
| Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN)/Complete EIN<br>(if more than one, state all):<br>**xxx-xx-7632** | Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN)/Complete EIN<br>(if more than one, state all): |

Street Address of Debtor (No. & Street, City, and State):
**4086 Nearbrook Road**
**Bloomfield Hills, MI 48302**
ZIP CODE **48302-0000**

Street Address of Joint Debtor (No. & Street, City, and State):
ZIP CODE

County of Residence or of the Principal Place of Business:
**Oakland**

County of Residence or of the Principal Place of Business:

Mailing Address of Debtor (if different from street address):
ZIP CODE

Mailing Address of Joint Debtor (if different from street address):
ZIP CODE

Location of Principal Assets of Business Debtor (if different from street address above):

### Type of Debtor
(Form of Organization)
(Check one box.)

- [X] Individual (includes Joint Debtors)
  *See Exhibit D on page 2 of this form.*
- [ ] Corporation (includes LLC and LLP)
- [ ] Partnership
- [ ] Other (If debtor is not one of the above entities, check this box and state type of entity below.)

### Nature of Business
(Check one box.)

- [ ] Health Care Business
- [ ] Single Asset Real Estate as defined in 11 U.S.C. § 101(51B)
- [ ] Railroad
- [ ] Stockbroker
- [ ] Commodity Broker
- [ ] Clearing Bank
- [X] Other

### Tax-Exempt Entity
(Check box, if applicable.)

- [ ] Debtor is a tax-exempt organization under Title 26 of the United States Code (the Internal Revenue Code).

### Chapter of Bankruptcy Code Under Which the Petition is Filed (Check one box)

- [ ] Chapter 7
- [ ] Chapter 9
- [X] Chapter 11
- [ ] Chapter 12
- [ ] Chapter 13
- [ ] Chapter 15 Petition for Recognition of a Foreign Main Proceeding
- [ ] Chapter 15 Petition for Recognition of a Foreign Nonmain Proceeding

### Nature of Debts
(Check one box)

- [ ] Debts are primarily consumer debts, defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."
- [X] Debts are primarily business debts.

### Filing Fee (Check one box.)

- [X] Full Filing Fee attached
- [ ] Filing Fee to be paid in installments (Applicable to individuals only) Must attach signed application for the court's consideration certifying that the debtor is unable to pay fee except in installments. Rule 1006(b). See Official Form 3A.
- [ ] Filing Fee waiver requested (Applicable to chapter 7 individuals only). Must attach signed application for the court's consideration. See Official Form 3B.

### Chapter 11 Debtors
Check one box:
- [ ] Debtor is a small business debtor as defined in 11 U.S.C. § 101(51D).
- [X] Debtor is not a small business debtor as defined in 11 U.S.C. § 101(51D).

Check if:
- [ ] Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,343,300 *(amount subject to adjustment on 4/01/13 and every three years thereafter).*

Check all applicable boxes:
- [ ] A plan is being filed with this petition.
- [ ] Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

### Statistical/Administrative Information

- [X] Debtor estimates that funds will be available for distribution to unsecured creditors.
- [ ] Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors.

THIS SPACE IS FOR COURT USE ONLY

Estimated Number of Creditors

| 1-49 | 50-99 | 100-199 | 200-999 | 1,000-5,000 | 5001-10,000 | 10,001-25,000 | 25,001-50,000 | 50,001-100,000 | OVER 100,000 |
|---|---|---|---|---|---|---|---|---|---|
| [X] | [ ] | [ ] | [ ] | [ ] | [ ] | [ ] | [ ] | [ ] | [ ] |

Estimated Assets

| $0 to $50,000 | $50,001 to $100,000 | $100,001 to $500,000 | $500,001 to $1 million | $1,000,001 to $10 million | $10,000,001 to $50 million | $50,000,001 to $100 million | $100,000,001 to $500 million | $500,000,001 to $1 billion | More than $1 billion |
|---|---|---|---|---|---|---|---|---|---|
| [ ] | [ ] | [ ] | [ ] | [ ] | [X] | [ ] | [ ] | [ ] | [ ] |

Estimated Debts

| $0 to $50,000 | $50,001 to $100,000 | $100,001 to $500,000 | $500,001 to $1 million | $1,000,001 to $10 million | $10,000,001 to $50 million | $50,000,001 to $100 million | $100,000,001 to $500 million | $500,000,001 to $1 billion | More than $1 billion |
|---|---|---|---|---|---|---|---|---|---|
| [ ] | [ ] | [ ] | [ ] | [X] | [ ] | [ ] | [ ] | [ ] | [ ] |

**EXHIBIT 2**

| Voluntary Petition<br>*(This page must be completed and filed in every case)* | Name of Debtor(s):<br>**Michael E. McInerney** |
|---|---|

**All Prior Bankruptcy Cases Filed Within Last 8 Years** (If more than two, attach additional sheet.)

| Location<br>Where Filed:    **- None -** | Case Number: | Date Filed: |
|---|---|---|
| Location<br>Where Filed: | Case Number: | Date Filed: |

**Pending Bankruptcy Case Filed by any Spouse, Partner, or Affiliate of this Debtor** (If more than one, attach additional sheet.)

| Name of Debtor:<br>**See Attachment** | Case Number: | Date Filed: |
|---|---|---|
| District: | Relationship: | Judge: |

| Exhibit A | Exhibit B |
|---|---|
| (To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11.)<br><br>☐ Exhibit A is attached and made a part of this petition. | (To be completed if debtor is an individual<br>whose debts are primarily consumer debts.)<br><br>I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter. I further certify that I delivered to the debtor the notice required by 11 U.S.C. § 342(b).<br>X _____<br>   Signature of Attorney for Debtor(s)      (Date) |

**Exhibit C**

Does the debtor own or have possession of any property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety?

☐ Yes, and Exhibit C is attached and made a part of this petition.

☒ No

**Exhibit D**

(To be completed by every individual debtor. If a joint petition is filed, each spouse must complete and attach a separate Exhibit D.)

☒ Exhibit D completed and signed by the debtor is attached and made a part of this petition.

If this is a joint petition:

☐ Exhibit D also completed and signed by the joint debtor is attached and made a part of this petition.

**Information Regarding the Debtor - Venue**
(Check any applicable box.)

☒ Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.

☐ There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District.

☐ Debtor is a debtor in a foreign proceeding and has its principal place of business or principal assets in the United States in this District, or has no principal place of business or assets in the United States but is a defendant in an action or proceeding [in a federal or state court] in this District, or the interest of the parties will be served in regard to the relief sought in this District.

**Certification by a Debtor Who Resides as a Tenant of Residential Property**
(Check all applicable boxes.)

☐ Landlord has a judgment against the debtor for possession of debtor's residence. (If box checked, complete the following.)

      _____
      (Name of landlord that obtained judgment)

      _____
      (Address of landlord)

☐ Debtor claims that under applicable nonbankruptcy law, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after the judgment for possession was entered, and

☐ Debtor has included in this petition the deposit with the court of any rent that would become due during the 30-day period after the filing of the petition.

☐ Debtor certifies that he/she has served the Landlord with this certification. (11 U.S.C. § 362(l)).

11-58953-tjt   Doc 1   Filed 07/12/11   Entered 07/12/11 13:33:32   Page 6 of 9
12-04930-tjt   Doc 15   Filed 10/23/12   Entered 10/23/12 14:12:10   Page 33 of 192

**EXHIBIT 2**

| Voluntary Petition<br>*(This page must be completed and filed in every case)* | Name of Debtor(s):<br>**Michael E. McInerney** |
|---|---|

## Signatures

### Signature(s) of Debtor(s) (Individual/Joint)

I declare under penalty of perjury that the information provided in this petition is true and correct.

[If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7] I am aware that I may proceed under chapter 7, 11, 12 or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7.

[If no attorney represents me and no bankruptcy petition preparer signs the petition] I have obtained and read the notice required by 11 U.S.C. § 342(b).

I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X _____
Signature of Debtor **Michael E. McInerney**

X _____
Signature of Joint Debtor

_____
Telephone Number (If not represented by attorney)

**July 11, 2011**
Date

### Signature of Attorney*

X _____
Signature of Attorney for Debtor(s)
**Michael I. Zousmer P47190**
Printed Name of Attorney for Debtor(s)
**Nathan Zousmer, P.C.**
Firm Name
**29100 Northwestern Hwy., Suite 260**
**Southfield, MI 48034**
Address

**(248) 351-0099 Fax:(248) 351-0487**
Telephone Number
**July 11, 2011**
Date

*In a case in which § 707(b)(4)(D) applies, this signature also constitutes a certification that the attorney has no knowledge after an inquiry that the information in the schedules is incorrect.

### Signature of Debtor (Corporation/Partnership)

I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor.

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X _____
Signature of Authorized Individual

_____
Printed Name of Authorized Individual

_____
Title of Authorized Individual

_____
Date

### Signature of a Foreign Representative

I declare under penalty of perjury that the information provided in this petition is true and correct, that I am the foreign representative of a debtor in a foreign proceeding, and that I am authorized to file this petition.

(Check only one box.)

☐ I request relief in accordance with chapter 15 of title 11, United States Code. Certified copies of the documents required by 11 U.S.C. § 1515 are attached.

☐ Pursuant to 11 U.S.C. § 1511, I request relief in accordance with the chapter of title 11 specified in this petition. A certified copy of the order granting recognition of the foreign main proceeding is attached.

X _____
(Signature of Foreign Representative)

_____
(Printed Name of Foreign Representative)

_____
Date

### Signature of Non-Attorney Bankruptcy Petition Preparer

I declare under penalty of perjury that: 1) I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110; 2) I prepared this document for compensation and have provided the debtor with a copy of this document and the notices and information required under 11 U.S.C. §§ 110(b), 110(h), and 342(b); and, 3) if rules or guidelines have been promulgated pursuant to 11 U.S.C. § 110(h) setting a maximum fee for services chargeable by bankruptcy petition preparers, I have given the debtor notice of the maximum amount before preparing any document for filing for a debtor or accepting any fee from the debtor, as required in that section. Official form 19 is attached.

_____
Printed Name and title, if any, of Bankruptcy Petition Preparer

_____
Social-Security number (If the bankruptcy petition preparer is not an individual, state the Social Security number of the officer, principal, responsible person or partner of the bankruptcy petition preparer.)(Required by 11 U.S.C. § 110.)

_____
Address

X _____

_____
Date

Signature of Bankruptcy Petition Preparer or officer, principal, responsible person, or partner whose social security number is provided above.

Names and Social-Security numbers of all other individuals who prepared or assisted in preparing this document unless the bankruptcy petition preparer is not an individual.

If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person.

*A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both 11 U.S.C. § 110; 18 U.S.C. § 156.*

## EXHIBIT 2

In re   **Michael E. McInerney**
                              Debtor(s)                         Case No. _____

# FORM 1. VOLUNTARY PETITION

## Pending Bankruptcy Cases Filed Attachment

| Name of Debtor | Case No. | Judge |
|---|---|---|
| BCB Development Associates, LLC | 10-67162 | |
| | | Thomas J. Tucker |
| Entertainment Holdings, LLC | 10-67155 | |
| | | Thomas J. Tucker |
| MEM Investments, L.L.C., et al | 10-67143 | |
| | | Thomas J. Tucker |
| Post Six, Inc. | 10-67149 | |
| | | Thomas J. Tucker |
| Real Entertainment, LLC | 10-67153 | |
| | | Thomas J. Tucker |
| S&J Post, Inc. | 10-67151 | |
| | | Thomas J. Tucker |
| The Elephant, Inc. | 10-67154 | |
| | | Thomas J. Tucker |

**EXHIBIT 2**



**CITIZENS**
BANK.

DATE: _11/21/2011_

## TITLE/OWNERSHIP CHANGE FORM

Note: When changing primary or adding names the branch must build the initial client record, if they are not existing clients.

| BANK#: 143 | BRANCH#: 339 | COMPLETED BY: _Jason Gresock_ | PHONE#: _248-293-3930_ |

ACCOUNT NUMBER(s): _4535016437 - POST SIX_

| PRIMARY ACCOUNT HOLDER CHANGE | REMOVE NAME |
|---|---|

### PRIMARY ACCOUNT HOLDER CHANGE

Current primary name: _____

TIN: _____ Date of death: _____
                                    (If applicable)

New primary name: _____

TIN: _____

☐ Primary is deceased. Interest must be split for 1099-INT reporting

By signing below, I acknowledge that any information return applicable to the above account will now be reported to the IRS under my TIN.

### ADD NAMES

New name: _____

TIN: _____

New name: _____

TIN: _____

### LEGAL NAME CHANGE/CORRECTION

Current name: _____

New name: _____

TIN: _____

Reason: _____

### REMOVE NAME

Name to remove: _____

TIN: _____ Date of death: _____
                                    (If applicable)

By signing below, I acknowledge being a joint owner of the account(s) listed above. I direct the Bank to remove my name as an owner of the account(s). I release and waive all my rights, title and interest in and to the funds now, or from time to time hereafter deposited in the account(s) and discharge the Bank from any obligation to me in connection with the account(s).

### Individual being removed from account:

_____
Signature and date

Note: Notarization required if not signed in the presence of bank personnel

### - ACKNOWLEDGEMENT-

STATE OF                               }
                                       } SS
COUNTY OF                              }

Be it known that on the _____ day of _____
before the undersigned, in and for said County, personally came to me known to be the identical person described in and who executed the foregoing instrument as Customer and acknowledged said instrument to be (his) (her) (their) voluntary act and deed.   Witness my hand and seal the day and year last above written.

_____ Notary Public

My commission expires the _____ day of _____

ADDITIONAL COMMENTS:

---

NEW ACCOUNT TITLE _Please Add Basil T. Simon_

_As Trustee_

### DOCUMENTATION REQUIREMENTS
☐ Signature card completed and faxed
☐ Viewed Death Certificate
☐ Viewed name change document
☐ Verified ID
☐ Address change form (if mailing address change required also)

If this request involves removing an owner on an account, by signing this document, I agree to the following: a) any and all checks, pre-authorized electronic payments and all other electronic transactions (including, but not limited to, check cards and online banking) currently in process are property payable against this account. b) I assume responsibility for discontinuation of any pre-authorized electronic payments or charges authorized by the owner being deleted, indemnifying Bank against all loss or liability associate with paying or accepting such transactions against the account; and c) I understand that this request will not be effective until the Bank obtains the appropriately signed signature card(s) from the remaining party(ies) on the account.

PRIMARY/AUTHORIZED SIGNATURE                                    DATE:

---

Send Completed Form to Deposit Operations. Refer to Branch Distribution Bags, BIG 55-001        Rev. 06/10



EXHIBIT
GRESOCK
4
9-18-12    BK

**EXHIBIT 3**

## Business/Organization Account Signature Card

### ACCOUNT INFORMATION

Account Number **4535016432** ☒ Checking ☐ Saving    ☐ New ☒ Modified, Date:11/21/2011    Account Open Date:

Title of Account **Post Six Dba Postbar Novi Dip#1067149Tjt, ,**

Individual(s) Related to Account     Relationship
Basil T. Simon                     Trustee

Business Documentation Type Provided:
Additional Account Documentation Required (*check if applicable*):
☐ Escrow Agreement (*for Escrow Account*)      ☐ Certificate of Assumed Name/Fictitious Name (*for DBAs not using an EIN*)
☐ IOLTA/IOTA/IBRETA Papers                  ☐ Eligibility form (*for NOW accounts only*)

### TAXPAYER IDENTIFICATION NUMBER (TIN) CERTIFICATION
#### (Substitute Form W9)

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and
2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of failure to report interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding (Notice: If you are subject to backup withholding, cross out #2), and
3. I am a U.S. person (including a U.S. resident alien).

Taxpayer Identification Number 36-4503857     ☐ Exempt Payee

_____         Previously Certified on _____
Signature of Authorized Signer

### ACKNOWLEDGEMENT
#### (Required by all Authorized Signers on the Account)

By signing below, the undersigned have opened or modified the account listed above; acknowledge receipt of the Checking and Savings Account Agreement or Deposit Account Rules, as applicable to the account, the related Fee Schedule and the Funds Availability Policy; and agree to be bound by these terms and conditions. If the account is in the name of a business entity/organization, the undersigned is (are) acting on behalf of the business entity/organization.

Number of Signatures Required: 1

Authorized Signatures:

_____                |              _____
Basil T. Simon          Trustee

_____                |              _____

_____                |              _____

Bank # **143**      Branch # **339**      Accepted by (Print Full Name)    Jason Gresock

Page 1 of 2                                Updated: 5-1-11



EXHIBIT
GRESOCK
5
9-18-12   EK

**EXHIBIT 3**

**RESOLUTION**

Account Number 4535016432

Certified copy of Resolutions of the  Board of Directors          of the Post Six Dba Pontier Novi Dip61067149Tjt

Resolved

1. That the Bank is designated as a depository of this Corporation                              , and that the Bank is authorized to accept for credit to this Corporation         and/or for collection, any and all checks, drafts, notes, and other negotiable instruments when endorsed in the name of this Corporation in writing, by rubber stamp, or otherwise, with or without a designation of the party making such endorsement.

2. That any and all funds standing to the credit of this Corporation          with the Bank in said account or accounts may be withdrawn upon checks, drafts, notes, orders or other undertakings for the payment of money, when signed in the name of this  Corporation          by any of the following

| | | | |
|---|---|---|---|
| Name Basil T. Simon | Title  Trustee | Name | Title |
| Name | Title | Name | Title |
| Name | Title | Name | Title |
| Name | Title | Name | Title |
| Name | Title | Name | Title |

whose signatures shall be duly certified to the Bank, and the Bank is authorized to pay any checks, drafts, notes, and orders so signed without any inquiry as to the circumstances of issue or the disposition of the proceeds thereof, whether drawn to the individual order or tendered in payment of individual obligations, or for deposit to the individual accounts, or the individuals named above or others of this Corporation          or otherwise.

3. That these resolutions and the authority hereby conferred shall remain in full force and effect until notice to the contrary in writing shall be received by the Bank.

---

**☒ Certification of Corporation**
I certify that I am the duly appointed Secretary of the  Post Six Dba Pontier Novi          , and that the foregoing is a complete, true and correct copy of the resolution adopted by a quorum of the Board of Directors of this Corporation at a meeting held on _____

Secretary Signature _____                          Director Signature _____

---

**☐ Certification of Limited Liability Company**
I/We certify that I/We are the managing Members(s) of                          and that the foregoing is a complete, true and correct copy of the resolutions duly adopted by the managing Member(s) at a meeting held on _____

Member Signature _____                          Member Signature _____

Member Signature _____                          Member Signature _____

---

**☐ Certification of Partnership**
I/We certify that I/We are the partners of                          and that the foregoing is a complete, true and correct copy of the resolutions duly adopted by the partners at a meeting held on _____

Partner Signature _____                          Partner Signature _____

Partner Signature _____                          Partner Signature _____

---

**☐ Certification of Sole Proprietorship**
I certify that I am the sole proprietor and the foregoing is a complete, true, and correct copy of the resolutions I have adopted on _____, I further certify that any individual designated as an Authorized Signer(s) does not have any right, title, or interest in this proprietorship.

Sole Proprietor Signature _____

---

**☐ Certification of Unincorporated Association/Organization or Other Business Entity**
I/We certify that I/We are the governing body of                          and that the foregoing is a complete, true and correct copy of the resolutions duly adopted by the governing body of at a meeting held on _____

Authorized Signature _____                          Authorized Signature _____

Authorized Signature _____                          Authorized Signature _____

---

Updated: 5-1-11

**EXHIBIT 3**

1    UNITED STATES BANKRUPTCY COURT

2        EASTERN DISTRICT OF MICHIGAN

3            SOUTHERN DIVISION

4

5  In re:

6  MICHAEL E. MCINERNEY,        Case No. 11-58953-TJT

7                    Chapter 11

8    Debtor.          Hon. Thomas J. Tucker

9

10  _____/

11

12

13  PAGE 1 TO 27

14

15    The Deposition of BASIL SIMON,

16    Taken at 700 West Fort Street, Suite 211,

17    Detroit, Michigan 48226,

18    Commencing at 1:30 p.m.,

19    Tuesday, May 1, 2012,

20    Before Elizabeth Koller, CSR-7042.

21

22

23

24

25

**EXHIBIT 4**

1  APPEARANCES:

2  RICHARD A. ROBLE (P51429)

3  Office of the U.S. Trustee

4  211 West Fort Street, Suite 700

5  Detroit, Michigan  48226

6  Richard.A.Roble@usdoj.gov

7  (313) 226-6769

8      Appearing on behalf of the U.S. Trustee.

9

10  ALLISON M. DIETZ (P73612)

11  Assistant Attorney General

12  3030 West Grand Boulevard, Suite 10-200

13  Detroit, Michigan 48202

14  dietza@michigan.gov

15  (313) 456-0140

16      Appearing on behalf of the Michigan Department of

17  Treasury.

18

19  ELLIOT CROWDER

20  Stevenson & Bullock, P.L.C.

21  26100 American Drive, Suite 500

22  Southfield, Michigan 48034

23  ecrowder@sbplclaw.com

24  (248) 354-7907

25      Appearing on behalf of Charles Becker.

1              TABLE OF CONTENTS

2

3  Witness                       Page

4

5  BASIL SIMON

6  EXAMINATION BY MR. ROBLE:.............................  5

7  EXAMINATION BY MR. CROWDER............................  25

8

9

10             INDEX TO EXHIBITS

11

12  Exhibit                      Page

13

14  DEPOSITION SIMON EXHIBITS

15  Exhibit Number 1 Check No. 10159

16  Exhibit Number 2 Check No. 10160

17  Exhibit Number 3 Sales Tax Post VI

18  Exhibit Number 4 Sales Tax Elephant

19  Exhibit Number 5 Sales Tax Real Entertainment

20  Exhibit Number 6 Sales Tax S&J Post ..................  4

21

22  (Exhibits retained by Counsel.)

23

24

25

**EXHIBIT 4**

1      Detroit, Michigan

2      May 1, 2012

3      About 1:30 p.m.

4                     BASIL SIMON,

5      having first been duly sworn, was examined and

6      testified on his oath as follows:

7      DEPOSITION SIMON EXHIBITS NUMBER 1, 2, 3, 4, 5 & 6

8      Check No. 10159

9      Check No. 10160

10      Sales Tax Post VI

11      Sales Tax Elephant

12      Sales Tax Real Entertainment

13      Sales Tax S&J Post

14      WERE MARKED BY THE REPORTER

15      FOR IDENTIFICATION

16    EXAMINATION BY MR. ROBLE:

17    Q.    Good afternoon.  For the record, Richard Roble on

18          behalf of the United States Trustee's Office.  There's

19          a couple other people here.  I would ask them to put

20          their appearance or at least acknowledge that they're

21          here.

22                     MS. DIETZ:  Allison Dietz, Michigan Attorney

23          General's Office on behalf of the Michigan Department

24          of Treasury.

25                     MR. CROWDER:  Elliot Crowder, Stevenson and

**EXHIBIT 4**

1      Bullock, PLC, on behalf of Charles Becker.

2   EXAMINATION BY MR. ROBLE:

3   Q.    Mr. Simon, you're here voluntarily but in response to a

4        Notice for Taking Deposition under the Rule 2004,

5        correct?

6   A.    Correct.

7   Q.    And this is, well, it's kind of regarding two cases.

8        Actually we've got the Michael McInerney, Chapter 11

9        Individual Bankruptcy Case, Case Number 11-58953,

10       related to that which is really what my questions are

11       for you today regarding the MEM Investments Bankruptcy

12       Chapter 11 Case.  That Case Number should be 10-87143,

13       and that's a consolidated case with four, five or six

14       other Chapter 11's.

15            A couple preliminary matters, obviously I

16       know you've chosen not to, but you're aware that you

17       could have counsel here today --

18   A.    That's correct.

19   Q.    -- if you felt you needed it?  Okay.  Have you given

20       depositions before?

21   A.    Yes.

22   Q.    So you're familiar with the rules.  I'll run over them

23       like I would for anybody, though.  You need to make

24       sure that you speak clearly, don't just nod your head.

25       If you've got any questions for me or you don't

1   understand what I said feel free to ask me to repeat

2   it.  You're not in jail here, obviously, if you want to

3   take a break, if you do have something else you need to

4   take care of right away, you need a bathroom break,

5   etcetera, glass of water, that's fine, we'll take a

6   short break, otherwise, I don't have a lot as intro for

7   you as I might have for some other people.

8           Briefly, can you give me your background,

9   just very brief?

10  A.   Well, I'm an attorney.  I've been practicing since

11       1976, and I'm on the panel of Chapter 7 Trustees here

12       in the Eastern District of Michigan, and I think I've

13       been on the panel since the early 80s.

14  Q.   Your offices are down here in Detroit?

15  A.   Yes, they are, down at 422 West Congress, Suite 400,

16       right down the street from here.

17  Q.   That's all I need in the way of background.  I

18       appreciate it.  I want to focus your attention

19       specifically to at this point the MEM Investment

20       Bankruptcy Chapter 11 Case that I mentioned earlier.

21           What is your position relative to that case?

22  A.   I'm the Chapter 11 Court Appointed Operating Trustee.

23  Q.   Approximately when were you appointed the trustee?

24  A.   November the 18th of 2011.

25  Q.   As part of your duties or getting up to speed on the

**EXHIBIT 4**

1        status of that Chapter 11 case, did you have an

2        opportunity or opportunities to meet with an individual

3        named Michael McInerney?

4   A.   Yes.

5   Q.   Very briefly can you just describe to me what

6        relationship Mr. McInerney had with regard to the MEM

7        Investments Joint Chapter 11 case?

8   A.   He was the DIP, the Debtor in Possession, when I became

9        appointed in the case. He is the shareholder owner of

10       MEM. So he has an equity interest in the MEM

11       businesses which make up the Post Bars.

12  Q.   Now, when you were initially taking over as the

13       Chapter 11 Trustee and trying to get up to speed, did

14       you have opportunities to have discussions or meetings

15       with Mr. McInerney?

16  A.   Yes, I did.

17  Q.   Just in general -- strike that.

18            Did Mr. McInerney either offer to help you

19       understand what was going on in the MEM Investment's

20       case or did you potentially approach him and ask him to

21       provide some kind of help with regard to what was going

22       on?

23  A.   I think it was mutual. I think initially I approached

24       him and said that he'd be welcome to continue assisting

25       in the operations at no compensation.

1   Q.    And just in general what kind of help did he provide?

2   A.    First of all as I recall, I was appointed on a Friday,

3         I think the 18th is a Friday, and then I communicated

4         with him during the weekend and I met with him on the

5         Monday and it was the Monday right before Thanksgiving.

6         So I'm now thrown into a case where Wednesday night is

7         the biggest bar night of the year, so I didn't want to

8         disrupt that operation.  I didn't know the loyalties of

9         the employees.

10              So Monday morning I had this initial meeting

11        with Mr. McInerney and I told him he would no longer be

12        paid and that he could assist as far as the payables

13        going over those since he was familiar with those and

14        monitor the banking so that we're not bouncing any

15        checks or doing anything that's improper.

16  Q.    Would it be the understanding that it would also be in

17        Mr. McInerney's best interest to want to keep the bars

18        open and operating during this busy timeframe?

19  A.    Yeah, exactly, because from day one from the time I was

20        appointed he's always represented to me that it's his

21        intent to somehow, he's got funding or a purchaser that

22        he's going to reacquire these during the bankruptcy.

23        So, of course, it benefits him to have these ongoing

24        businesses remain open.

25  Q.    Now, at some point did you have discussions with

1       Mr. McInerney with regard to the ability to write

2       checks on behalf of MEM Investments?

3   A.   We had that meeting from day one, that Monday morning

4       meeting that he's no longer authorized to write checks

5       and that he came with me to Chase Bank where they were

6       banking and we signed appropriate signature cards where

7       I was the only one authorized signer and his name was

8       removed as a signer on the checks.

9   Q.   I just want to get a couple specifics.  Would this

10       meeting, as far as we know again from your recollection

11       would have been Monday, I believe that would have been

12       November 21st?

13   A.   If that's the Monday, yes.

14   Q.   On that same day was that the day you also went down to

15       Chase with him?

16   A.   Yes.

17   Q.   Which Chase branch was that?

18   A.   It's the one out in -- near Auburn Hills location.  I

19       forgot the street it's on.  It's by the Auburn Hills

20       Post Bar out there.

21   Q.   So he physically went with you to that bank location?

22   A.   Correct.

23   Q.   Was anyone else present -- I'll step back.  At the

24       initial meetings you had with him about trying to help

25       somewhat, but when you informed him that he did not

1     have check writing ability before you went to the bank,

2     was anyone else present at that meeting or meetings

3     where that was discussed that you recall?

4  A.   I don't recall.  I think it was just me and him.

5  Q.   When you were at the bank and you're having this

6     discussion again was anyone else present including

7     necessarily the teller, if you know?

8  A.   Yeah, well, we met, not with the teller, but we had to

9     meet with one of the loan officers in the office, and

10     we explained to him that I had my court order and I'm

11     now the Chapter 11 Trustee and that Mr. McInerney will

12     no longer have check writing authority.

13         And I think his name was Jason, the person we

14     dealt with at the bank, so he prepared all the

15     necessarily resolutions, the typical banking documents

16     that are require to remove somebody and add somebody in

17     on the accounts.

18  Q.   All right.  I'm just curious, did you end up talking to

19     anyone else that you can recall who might not have been

20     present either at the bank or during your conversations

21     with Mr. McInerney, but was there someone else that

22     maybe you had talked to about the fact that

23     Mr. McInerney did not have check writing authority

24     anymore?

25  A.   Yes.

**EXHIBIT 4**

1  Q.   Who would that be?

2  A.    Subsequently I met with the managers of each store, and

3       when I say store, each bar.  It would be Darryl for

4       Auburn Hills, Jena for Novi, the two managers, and to

5       introduce myself, explain to them what my role is and

6       tell them at this point all checks would be signed by

7       me.

8  Q.    Anyone else that comes to mind other than the managers

9       of the various bar locations that you talked to about

10       that?

11  A.   No, nobody.

12  Q.    Now, as part of your duties and job being the

13       Chapter 11 Trustee, did you look at the books and

14       records and start reviewing what was going on with the

15       various debtor entities, the related MEM Investments

16       entities?

17  A.   Yes, I did.

18  Q.   I'm going to show you what I've marked as Exhibit

19       Number 1 and Exhibit Number 2.  Can you just please

20       identify for the record what Exhibit Number 1 and

21       Exhibit Number Exhibit 2 are?

22  A.    Exhibit Number 1 is the Post VI, Inc. account which is

23       the Novi store and it's Check Number 10159 and it's

24       made payable to BMW Financial Services.  It's dated,

25       looks like January the 18th of 2012 for $1,648.24.

**EXHIBIT 4**

1    It's not signed by me, but it has the signature or the

2    stamp of Mr. McInerney.

3        Check Number 10160 is a check again from the

4    same account, Post VI, Inc. which is made payable to

5    the Detroit Athletic Club and it's in the amount of

6    $1,342.69, and, again, it's not signed by me.  It's

7    signed by Mr. McInerney and it's dated January 15 of

8    '12.

9  Q.   I note for the record if you agree and if you don't you

10      can state, on the 10159 check the date does seem a

11      little unclear, possibly that could be 115 or 118?

12 A.   Possibly, yes.

13 Q.   It's hard to tell.  It looks a little clearer on the

14      1016 that's a 1-05 date?

15 A.   Yes.

16 Q.   Are you familiar with any of the handwriting on either

17      one of these checks?

18 A.   Yes, I am.

19 Q.   And how?

20 A.   Well, it resembles checks that was handwritten before I

21      become appointed as a trustee that I seen.

22 Q.   So from your review of the records and including the

23      specific checks for the Post VI, Inc. or other related

24      entities, you've seen this handwriting before?

25 A.   Yes.

**EXHIBIT 4**

1   Q.   Who's handwriting did you understand it to be?

2   A.   Mr. McInerney's.

3   Q.   Now, when did you come across these two checks?  Under

4        what circumstances did you have happen to find these

5        two checks?

6   A.   Well, the checking system, the banking systems is

7        online and I would be reviewing what disbursements are

8        coming through and this had to be probably sometime in

9        February and I'm looking at these disbursements and I

10       click the icon just to see who is this made payable to.

11            I didn't recognize the amounts.  They seemed

12       kind of odd.  And then it dawned on me these are checks

13       that I had never signed.  At that point it was sometime

14       in February that I realized these two checks were

15       inappropriately issued.

16  Q.   Were you able to online or otherwise get actual copies

17       of these checks as they appear?

18  A.   Yes, I just printed them from my computer.

19  Q.   Now, once you saw these checks did you make any efforts

20       I guess to contact Mr. McInerney and have him explain

21       these checks or look into it somehow?

22  A.   Yeah, I immediately called him.

23  Q.   What was the gist of the conversation?

24  A.   He said something odd to me.  He says, you mean I can't

25       do that, when I said to him, you know, these checks are

1     inappropriate, you can't sign anymore checks.  And that

2     was I recall that response.

3  Q.   Did he make any efforts at that initial time that you

4     contacted him about these checks to pay them back or

5     say, I'll pay them back right away or anything like

6     that?

7  A.   Not then, not at that time.

8  Q.   Was there a later conversation either with him or a

9     representative of Mr. McInerney about trying to get

10     these checks repaid?

11  A.   Yes, there was.

12  Q.   Was that with him or a representative?

13  A.   As I recall what I did is I told him that I either, the

14     next business day or if it was Monday, we would meet at

15     the Auburn Hills store and discuss these checks.  And

16     he came in there and at that point I told him what he

17     did was totally inappropriate and that I can't trust

18     him to be on the premises anymore and he's not to come

19     back and he's to reimburse the estate, that was my

20     first discussion with him.

21  Q.   Just to clarify for the record, when you say, he and

22     him, you're talking about Mr. Michael McInerney?

23  A.   That's correct.

24  Q.   So up until that time, fair to say between when you

25     took over as the trustee in approximately mid November

**EXHIBIT 4**

1    up to February timeframe when you discovered these

2    checks, had Mr. McInerney been around at the various

3    business locations still helping for a lack of a better

4    word?

5  A.   Yes, he was.

6  Q.   I just want to confirm, you'd already indicated on one

7    of your very first initial meetings with him you made

8    it clear he wasn't being compensated.  Was that ever

9    discussed again during this two or three month period

10    about compensation with him?  Did he ever ask for

11    compensation?

12  A.   Never asked for compensation, no.

13  Q.   Was there anything that you can recall from a

14    conversation with him where he would have, though,

15    somehow thought he was entitled to compensation for

16    helping?

17  A.   Not that I remember.

18  Q.   If you had, in fact, desired to compensate him for his

19    help what would you have done as the trustee in order

20    to accomplish that?  Was there some kind of steps that

21    you would have taken to make it clear that, okay, this

22    guy's going to get paid for whatever help he's doing?

23  A.   Yeah, I would have taken steps to put him back on the

24    payroll.  I had removed him from the payroll.  If, in

25    fact, I felt that his services were worthy of being

**EXHIBIT 4**

1      compensated then I would have talked to him and made

2      those arrangements.

3  Q.   Okay.  I'll presume but I don't know for the other

4      people who were employees or continued to work for

5      these debtor entities who did get compensated they

6      remain on the payroll?

7  A.   Yes.

8  Q.   Was there anybody who as far as you know was not on the

9      payroll for these entities that was getting

10      compensation?

11  A.   Not that I know of, not while I've been there.

12  Q.   All right.

13  A.   Yeah.

14  Q.   As we sit here today and, well, getting into May now,

15      May 1st, have these checks, the amounts of any of these

16      checks been paid back?

17  A.   No.

18  Q.   Would you consider the funds from the Post VI accounts

19      for these two checks to be funds of the bankruptcy

20      estate?

21  A.   Absolutely.

22  Q.   Just based on your position as an attorney and a

23      trustee and the trustee in this case do you know what

24      an insider is?

25  A.   Yes, of course.

1  Q.   Would Mr. McInerney be in your opinion at least, not

2       asking for a legal opinion, but just as your position

3       as a trustee and being familiar with bankruptcy, would

4       he qualify as an insider?

5  A.   Absolutely.

6  Q.   I'm going to show you now and I guess I'll ask you a

7       quick followup, is there anything else maybe while

8       we're talking about this scenario that comes to mind

9       that you want to discuss?

10  A.   Nothing more, but, you know, though nothing has been

11       paid Mr. Zausmer has sent me an email saying that

12       McInerney's agreed starting May 15th to pay this off in

13       three monthly payments, so I just want that clear that

14       nothing's been received today.  So we're waiting for

15       May 15th to see if in three months this can be paid

16       off.

17  Q.   Okay.  The last question, is there anything in your

18       mind that if -- let me start over.  If it was

19       propounded by Mr. McInerney or a representative of

20       Mr. McInerney that somehow there was just a mistake or

21       misunderstanding with regard to his authority or

22       ability to be able to write these checks for his

23       personal expenses which those were for a BMW and a

24       health club, is there anything you can think of that

25       would make Mr. McInerney believe that somehow there was

**EXHIBIT 4**

1       this misunderstanding about whether he had the ability

2       to write these checks?

3   A.   No, I can't think of anything that would support that

4       thought.

5   Q.   I'm going show you what's been marked as Exhibits 3, 4,

6       5, and Number 6.  These are all similar I know kind of

7       looking items.  Can you just explain briefly without

8       going through each individual, we'll go through these

9       in minute, but what number 3, 4, 5 and 6 are?

10  A.    These are what's known as Michigan Sales Tax Returns.

11       And Exhibit 3 is for the entity of Post VI for a period

12       of time, Exhibit 4 is for the entity of the Elephant

13       for a number of months and they're monthly sales tax

14       returns so I'm clear on that, Exhibit 5 is Real

15       Entertainment, same kind of documents, and Exhibit 6 is

16       S&J Post.

17  Q.    Were each of those entities you just mentioned part of

18       the joint filing with the MEM Investments case?

19  A.    Yes, they were.

20  Q.    So each of these separate entities were all in

21       individual Chapter 11 cases?

22  A.    Yes.

23  Q.    At some point in time did you discover again as your

24       duties as the Chapter 11 Trustee that the sales tax for

25       these various entities we're not being paid?

**EXHIBIT 4**

1  A.  I did.

2  Q.  Just in general how did that come about?

3  A.  It came about because there was letter from the

4     Attorney General's Office from Ms. Dietz who's here

5     today addressed not to me but to the attorney for

6     debtor --

7  Q.  Michael Zausman?

8  A.  No, no, no, for the Chapter 11 debtor, Hanna.

9  Q.  Hannah McCollum?

10  A.  McCollum, right, which she forwarded onto me to where

11     Ms. Dietz outlined not only had taxes not been paid,

12     but a number of returns including these had not been

13     filed during the Chapter 11.

14  Q.  Had you ever been notified by Mr. McInerney at anytime

15     during this period and that you were the trustee

16     starting in mid November until approximately February,

17     were you notified by him that sales taxes hadn't been

18     paid?

19  A.  No.

20  Q.  Were you ever notified by Ms. Hanna McCollum which was

21     the MEM Investments Chapter 11 Attorney before your

22     appointment at anytime notified by her that she had any

23     knowledge that these sales taxes were not paid?

24  A.  No.

25  Q.  So after you found out that these were not paid did you

**EXHIBIT 4**

1    have any discussions with Mr. McInerney about these

2    sales taxes and the fact they weren't paid?

3  A.   Absolutely.

4  Q.   Approximately when was that?

5  A.   Well, it would have been like immediate when I got that

6    correspondence and I'm trying to think, I think that

7    letter from the Attorney General's Office came out in

8    December, January, whatever that time period is, and I

9    either called him or emailed it to him because we were

10    at that point also communicating through email and

11    said, what's going on, these taxes, not only have taxes

12    not been paid during the 11, the returns aren't being

13    filed.

14  Q.   What was his response?

15  A.   Well, his response was always to blame Kallas.  He

16    said, well, Kallas is taking care of that, Kallas

17    Accounting, the accounting firm hired during the

18    Chapter 11.

19  Q.   I'll just note on here for what's it's worth on each of

20    those documents is says there's a little line above

21    that says prepared by and it says Kallas, K-A-L-L-A-S,

22    Restaurant Accounting?

23  A.   Right.

24  Q.   So as far as you know that's the accountant that

25    Mr. McInerney was talking about?

1  A.   Yes.

2  Q.   At some point in time, though, did he end up coming in

3      to either your office or one of the bars or some place

4      to sign or prepare these different returns?

5  A.   Well, now that I think back, I remember giving him

6      copies of these returns at some point I think at the

7      bar in blank.  And I said, look, these need to be

8      signed by you, they occurred during when you were the

9      responsible officer, you need take them, sign them, and

10      we can get these filed because the State of Michigan's

11      going to -- we need definite numbers as to what the

12      liability is.

13  Q.   Do you know approximately when that meeting would have

14      taken place?

15  A.   Sometime very close to when I discovered these checks

16      that he had written as I recall.  You know, I don't

17      remember the date to be honest with you.

18  Q.   I'm just trying to narrow it down a little bit, after

19      the new year, January 1st?

20  A.   Yes, after the new year, yeah.

21  Q.   So you gave those to him in blank and then did he give

22      these back to you or what happened?

23  A.   No, he didn't sign them for a long period of time and

24      then my partner Steven Stella who's serving as my

25      counsel here had to communicate with Mr. Zausmer and

1    insist on getting these signed.  Mr. Zausmer had his

2    client, Mr. McInerney, sign them and return them back

3    to us so we could at least get them filed, even though

4    there was no money at least we got the return filed.

5  Q.   So it's your understanding that Mr. Zausmer got

6    Mr. McInerney to sign these and so then you got these

7    documents back in the mail or hand-delivered, do you

8    remember how you got them back?

9  A.   Both.  They were emailed signed but we needed the

10   originals and they were mailed back to us from

11   Mr. Zausmer so that we could file them.

12 Q.   And then after you received them, the originals, what

13   did you do with them?

14 A.   I sent them into the State of Michigan.  I think I

15   directed them to Ms. Dietz figuring that this way she

16   can account for the various returns.

17 Q.   The copies of these exhibits we're looking at here,

18   three, four, five, and six, these are copies that you

19   had retained for your purposes as far as you know?

20 A.   Yes.

21 Q.   For your records?

22 A.   Exactly.

23 Q.   I'll note for the record it appears on each one of

24   these as far as I can tell I see where it says

25   taxpayers signature on here, as far as you know that's

1    the signature of Mr. McInerney?

2  A.   Yes, it is.

3  Q.   Underneath that it says, title, and it's abbreviated

4       again looks like on all of these, but it says P-R-E-S

5       which I presumes stands for president, is that your

6       understanding?

7  A.   That's my understanding.

8  Q.   Again, that would have been because Mr. McInerney for

9       each of these entities the Post VI, Inc., Elephant,

10      Inc., Real Entertainment, LLC, and the S&J Post, Inc.,

11      presumably either prior to or currently during the

12      course of the initial Chapter 11 filing in these cases

13      was acting as the president or officer?

14 A.   Yes.

15 Q.   Unless you've got something else that comes into mind,

16      I don't think I have any additional questions about

17      these two matters.

18 A.   The only thing I do want to say is I then went back to

19      Kallas and said what is going on?  And Kallas said,

20      well, he knows we prepare the returns and we send it to

21      him as we do with all our customers on sales tax.  We

22      don't pay the tax.  Then the customer's supposed to

23      sign it and send it in with the check.

24 Q.   Okay.  So after Mr. McInerney essentially pointed the

25      finger or pointed the blame at Kallas?

1  A.   Yes.

2  Q.   Based on your conversation with someone at Kallas, do

3       you know who that was?

4  A.   George Kallas.

5  Q.   His response to you was that, no, in fact, they had

6       prepared these presumably timely or at the time that

7       they were owed?

8  A.   Yes.

9  Q.   And then they had sent those to Mr. McInerney to be

10      signed?

11 A.   Yeah, and then I confronted Mr. McInerney with that and

12      said this is what Kallas says.  I said, what have you

13      been doing with these?  He says, I thought they were

14      just showing me what they've paid and I just filed them

15      away.

16 Q.   Okay.  Do know approximately what the timeframe was

17      that you spoke with Mr. Kallas, when that would have

18      been?

19 A.   Pretty quick, within a few days when all this was

20      exposed.

21 Q.   So probably sometime in February?

22 A.   Yeah.

23 Q.   Of this year?

24 A.   Yeah.

25 Q.   The same question with regard to your discussion with

1    Mr. McInerney after you spoke with Kallas?

2  A.   Yes.

3  Q.   Quick timeframe?

4  A.   Same time period.  I wanted to get a handle on

5       everything at that point.

6        MR. ROBLE:  I don't have any further

7       questions I think at this time.  If you're not opposed

8       to it, I know the other two counsel are here.  I know

9       you're not here for their exam.  It's my exam.  But to

10      keep you from potentially having to come back, if

11      someone had a question, although that would be their

12      right to.  Does anybody have any particular questions

13      for Mr. Simon?

14       MS. DIETZ:  I don't have any question.

15  EXAMINATION BY MR. CROWDER:

16  Q.   I just have one question.  Are you familiar with the

17      way that Kallas was handling or I'm sorry, the way

18      Mr. McInerney was handling the sales tax prior to your

19      appointment?  By that I mean, if Kallas were to send

20      him a return were those being signed and sent in to the

21      best of your knowledge?

22  A.   No, not to the best of my knowledge.  Obviously, they

23      were not.

24  Q.   The ones prior to this are you --

25  A.   I'm not familiar with that.

**EXHIBIT 4**

1          MR. CROWDER:  That's all I have.

2          MR. ROBLE:  That's all I have.  Thank you,

3     Mr. Simon.

4          (The deposition concluded at 2:00 p.m.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**EXHIBIT 4**

1               CERTIFICATE OF NOTARY

2     STATE OF MICHIGAN     )

3                 ) SS

4     COUNTY OF WAYNE     )

5        I, Elizabeth Koller, Certified Shorthand Reporter,

6     a Notary Public in and for the above county and state,

7     do hereby certify that the above deposition was taken

8     before me at the time and place hereinbefore set forth;

9     that the witness was by me first duly sworn to testify

10    to the truth, and nothing but the truth, that the

11    foregoing questions asked and answers made by the

12    witness were duly recorded by me stenographically and

13    reduced to computer transcription; that this is a true,

14    full and correct transcript so taken; and that I am not

15    related to, nor of counsel to either party nor

16    interested in the event of this cause.

17

18

19           _____

20           Elizabeth Koller

21           CSR 7042, Notary Public,

22           Wayne County, Michigan

23    My Commission expires:  June 1st, 2012,

24

25

**EXHIBIT 4**

0001

1          UNITED STATES BANKRUPTCY COURT

2             EASTERN DISTRICT OF MICHIGAN

3

4   MICHAEL E. MCINERNEY,        Case No. 11-58953-TJT

5       Debtor.          Chapter 11

6                  HON. THOMAS J. TUCKER

7   DANIEL M. MCDERMOTT,

8   United States Trustee,   Adversary Case No. 12-4930

9       Plaintiff,

10    -vs-

11  MICHAEL E. MCINERNEY,

12      Defendant.

13  _____/

14

15  PAGE 1 TO 26

16

17     The Deposition of JASON GRESOCK,

18     Taken at 211 West Fort Street, Suite 700

19     Detroit, Michigan 48226,

20     Commencing at 10:11 a.m.,

21     Tuesday, September 18, 2012,

22     Before Elizabeth Koller, CSR-7042.

23

24

25

EXHIBIT 6

0002

1  APPEARANCES:

2  MR. RICHARD A. ROBLE (P51429)

3  Office of the U.S. Trustee

4  211 West Fort Street, Suite 700

5  Detroit, Michigan  48226

6  richard.a.roble@usdoj.gov

7  (313) 226-6769

8      Appearing on behalf of the U.S. Trustee.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

0003

1    TABLE OF CONTENTS

2

3   Witness                          Page

4

5   JASON GRESOCK

6   EXAMINATION BY MR. ROBLE............................   4

7

8

9              INDEX TO EXHIBITS

10

11   Exhibit                          Page

12   (Retained by Counsel.)

13   DEPOSITION GRESOCK EXHIBIT NUMBER 1

14    Proof of Service......................................   4

15   DEPOSITION GRESOCK EXHIBIT NUMBER 2

16    Notice.................................................   4

17   DEPOSITION GRESOCK EXHIBIT NUMBER 3

18    Account Information....................................   4

19   DEPOSITION GRESOCK EXHIBIT NUMBER 4

20    Change Form...........................................   4

21   DEPOSITION GRESOCK EXHIBIT NUMBER 5

22    Signature Card........................................   4

23   DEPOSITION GRESOCK EXHIBIT NUMBER 6

24    Copy of Checks........................................   4

25

1    Detroit, Michigan

2    September 18, 2012

3    About 10:11 a.m.

4             JASON GRESOCK,

5    having first been duly sworn, was examined and

6    testified on his oath as follows:

7    DEPOSITION GRESOCK EXHIBIT NUMBERS 1, 2, 3, 4, 5, & 6

8    Proof of Service

9    Notice

10    Account information

11    Change Form

12    Signature Card

13    Copy of Checks

14    WERE MARKED BY THE REPORTER

15    FOR IDENTIFICATION

16   EXAMINATION BY MR. ROBLE:

17   Q.   Good morning, Mr. Gresock.  Do you mind if I call you

18        Jason, is that easier?

19   A.   Please.

20   Q.   This is the date and time and place set for a 2004

21        Examination which is like a deposition of you as a

22        representative basically of Citizens Bank.

23   A.   Okay.

24   Q.   And it's my understanding that you are a manager at

25        Citizens Bank?

1  A.   Correct.

2  Q.   Just a couple background things, have you ever had your

3       deposition taken before?

4  A.   No, I have not.

5  Q.   I'm going to give you some general ground rules I give

6       pretty much everyone, all right?

7  A.   Okay.

8  Q.   First off, you're not trapped here.  Obviously if you

9       need to get a drink of water, go to the bathroom, just

10      take a break for a minute, that's fine, just let me

11      know and we'll go ahead and do that.

12 A.   Okay.

13 Q.   Second thing, so far you're doing well as far as when I

14      ask a question you have to answer verbally, not just

15      shake your head up and down or side to side because

16      obviously the court reporter can't read that.

17 A.   No problem.

18 Q.   So verbal responses to everything as you are doing.

19      Last, I going to presume when I ask you a question and

20      you answer it two things, the two things are, one, that

21      you heard what I asked you and that you understand what

22      I asked you?

23 A.   Okay.

24 Q.   And therefore, you've given me a response?

25 A.   Okay.

1  Q.   If you don't hear what I ask you or you don't

2      understand please say so?

3  A.   Okay.

4  Q.   Fair enough?

5  A.   Absolutely.

6  Q.   Just very general background, I mentioned it, but your

7      occupation, you're a manager at Citizens Bank?

8  A.   Yes, I'm a branch manager.

9  Q.   Approximately how long have you been doing that?

10  A.   Just over six years -- actually, I'm sorry, I've been

11      with Citizen over six years.  I've been a branch

12      manager for, jeez, over five and a half years.

13  Q.   I just want to clarify.  You've been with Citizens for

14      six years and of that six years five and a half years

15      you've been a branch manager?

16  A.   I started with Republic Bank and then we merged with

17      Citizens.  When I was with Republic Bank I was a

18      personal banker and then when we transitioned over to

19      Citizens Bank I was a manager at that point, and I

20      believe that was in March 2007 that the merger

21      finished, so approximately five and a half years.

22  Q.   That's fine.  Just in general, what's your educational

23      background?  Did you finish high school?

24  A.   Correct, yes.

25  Q.   Do you have a college degree?

1  A.   I do.

2  Q.   Can you describe in general very briefly what are your

3        duties as a manager?

4  A.   I try to grow our business whether it's between, you

5        know, personal and commercial, retain clients.  I try

6        to develop further relationships to bring more products

7        and more revenue to the bank.  I deal with loans.  I

8        also help mentor the staff, the day-to-day operations.

9            I'm the go-to man.  Basically I'm the face of

10       Citizens.  When you come to my office I'm the glorified

11       Walmart greeter, so to speak.  I'm just -- it's a sale

12       position, but it's just to help with the clientele and

13       help with their problems or help make their banking

14       easier and life easier.

15  Q.  When you said something like general duties or

16       day-to-day operations whatever you just said, would

17       that include helping with, if needed, a change of the

18       signatures or who was an authorized person on a

19       particular bank account?

20  A.   Yes.

21  Q.   I'm going to show you what's been marked as Deposition

22       Exhibit Number 1.

23  A.   Okay.

24  Q.   That's a copy of the subpoena that was sent to Citizens

25       Bank care of yourself, there's actually two of them.

1    If you'll look through the pages and they were directed

2    towards counsel for the bank, Mr. Thomas Gallagher, and

3    on one of these subpoenas there's an attachment, do you

4    see that where it says attachment to subpoena of

5    Citizens Bank at the top?

6  A.   Yes, I do.

7  Q.   And then it has, please produce, and it's got some

8    various documents, correct?

9  A.   Yep, I see that.

10  Q.   And those were requested to be provided to my office by

11    the end of the day yesterday, correct, somewhere on

12    here I think it says, if you look at --

13  A.   Yes, by yesterday at 5:00.

14  Q.   All right.  And just confirming you did, in fact, email

15    to my office here a number of documents, correct?

16  A.   I did.

17  Q.   We'll go over those one by one.

18  A.   Okay.

19  Q.   I'm going to take that back from you.  If you need to

20    refer back to this or any other exhibits as we go

21    through them that's fine, but I don't think we have

22    more questions about that one.

23        Now I'm going to show you what's been marked

24    as Exhibit Number 2, and this was part of the documents

25    that you emailed to me, correct?

1  A.   That is correct.

2  Q.   For the record, I'm just noting this is a copy of the

3       order approving appointment of Chapter 11 Trustee

4       Docket Number 317, and then the neck page is the

5       Certification of Appointment of Trustee in a Chapter 11

6       Case?

7  A.   Yes.

8  Q.   And that's about six pages long.  I notice at the top

9       of these there's a fax number dated November 21st,

10      2011, in the afternoon that says Citizens Bank,

11      correct?

12 A.   That is correct.

13 Q.   I don't want to presume, but I guess I am a little bit,

14      is this something that was then faxed to Citizens from

15      someone or do you know what the fax notice on the top

16      is about?

17 A.   Yes, what this is this is something that I faxed after

18      receiving this and changing the signature card for

19      supporting documentation.

20 Q.   Who would you have faxed this to?

21 A.   I would fax this to our deposit operations area.

22 Q.   That's fine.  So this is part of documentation that you

23      received from someone, correct?

24 A.   Correct.

25 Q.   Do you recall who you received this documentation from?

1   A.   I received it from Basil Simon, he's the one that

2        produced this for me.

3   Q.   All right.  In general, and I don't need you to read

4        through this, unless if you need to take a minute

5        that's fine, but what was your understanding of why you

6        were being provided with this document, do you recall?

7   A.   From my recollection when Mr. Simon produced this, gave

8        this to me, it was for me to remove the current signers

9        on the account because it was being transferred over to

10       his hands in order to run the companies while the

11       bankruptcy proceedings were taking place and to give

12       him sole authorization to run any of the transactions

13       through the account.

14  Q.   Did you take this as being that it's an order approving

15       his appointment here this document?

16  A.   Yes, I did.

17  Q.   So that was the proof you wanted to show that it was

18       okay to go ahead and make the change on the signature

19       account?

20  A.   That is correct.

21            MR. ROBLE:  That's fine.  I'll take that back

22       from you.  Off the record for a minute.

23                 (An off-the-record

24                 discussion was held.)

25  BY MR. ROBLE:

EXHIBIT 6

1  Q.   I'm now handing you what's been marked as Deposition

2       Exhibit Number 3, I'm showing you.  Was this also a

3       document that was part of the group of documents that

4       you forwarded to my office in response to the subpoena?

5  A.   Yes, it is.

6  Q.   I'm just going to go over a few things on this

7       Number 3.

8  A.   Okay.

9  Q.   First, I'm noting at the top it's got again a fax date

10      it says 10-20-2010, 10:48, I'm presuming that's a.m.,

11      Citizens Bank, same thing, do you know what that's

12      about?  What that fax has to do with?

13 A.   Well, I'm not the one that did the signature card, but

14      based on my experience by looking at it this was faxed

15      over from Mark Ritter's office or whomever did the

16      signature card for Mark Ritter, and what they did is

17      they sent the same thing like I did with the other

18      information.

19          It's documentation we send down for them to

20      image showing because you can tell at the very top it

21      says -- there's a checkmark next to checking next to

22      the account number and the checkmark next to new, that

23      means that this is indeed a brand-new account that was

24      opened on October 20th, 2010.

25 Q.   A couple clarifications, when you say Mark Ritter, who

1    is that?

2  A.   Mark Ritter is one of the officers at the bank.  I

3    believe he's a commercial lender.  Unfortunately and

4    fortunately commercial lenders do not open accounts

5    themselves.  They typically will take it to somebody

6    like myself or a personal banker.

7         We open it for them but we code it with their

8    officer number if there's any questions then it can be

9    directed directly to them.

10  Q.   And his name is on a line on the second page of this

11    exhibit near the bottom, correct?

12  A.   Correct.

13  Q.   I note it looks like title of account on the first page

14    it has the Post VI Inc., d/b/a Post Bar Novi, then it

15    has DIP with a case number.  I understand you didn't

16    prepare this document, but do you know what DIP and the

17    case number represent?  Do you know what that means?

18  A.   The case represents referring back to the documentation

19    I provided earlier that Basil had provided me, but I'm

20    not sure what DIP stands for.

21  Q.   That's fine.  But the case number you understood that

22    to be a bankruptcy case number?

23  A.   Correct.

24  Q.   All right.  Also clarifying what you said before I

25    think when you said that this was something sent to

EXHIBIT 6

1      them by Tom Ritter, who's them?

2   A.   I'm sorry, deposit operations.

3   Q.   And you indicated as well at the time this was prepared

4        you weren't involved with this particular transaction,

5        correct?

6   A.   That is correct.

7   Q.   I'm going to give that back to you.

8   A.   Okay.

9   Q.   Are you familiar, though, with this document as a

10       general bank document?

11  A.   Yes, I am.

12  Q.   Just explain to me briefly, you already went over the

13       top portion with checks and boxes, what's the bottom,

14       the acknowledge portion, in general, what's that about?

15  A.   What that is is -- can I give an example?

16  Q.   Sure.

17  A.   Right here it says Michael McInerney, President and

18       then Tom Stiber CFO.  You could list anybody that's an

19       authorized signer on here, so if both you and I had a

20       business together and say, for instance, we have

21       somebody that was an office manager they could be an

22       authorized signer on it but they wouldn't be a

23       president or a member of an LLC or anything like that.

24       You can dictate on there who is whom that has any

25       authority on the account to make any changes or

EXHIBIT 6

1    whatnot.

2  Q.    Can you tell why, I know it's pretty scribbly with the

3        signature block from where it say Michael McInerney is

4        printed underneath his line where it says President, I

5        see that, but underneath both his name and Tom Stiber's

6        there looks like another signature, do you know what

7        that is?  It almost frankly looks to me like that's a

8        stamp?

9  A.    This is purely speculation because I didn't open this

10       account, is that typically people sign in a hurry and

11       you say sign and they just sign something and we state,

12       you know, you need to sign above your name instead of

13       over here.

14  Q.    Is it possible that could also be a stamp of a

15       signature?

16  A.    It could be because the signatures do look completely

17       separate.  But once again not looking at the original

18       I'd be speculating.

19  Q.    That's fine.  And then the second page of this document

20       there's a check in the box Certification of

21       Corporation, we were just looking at that, that appears

22       though to be comparing the first page it looks like

23       Mr. McInerney's signature?

24  A.    Correct.

25  Q.    Do you agree just by looking at how it looks to be his

1    signature?

2  A.   I do.

3  Q.   Now, I'm going to take that back from you.  Thank you.

4  A.   No problem.

5  Q.   I going to hand you what's been marked as

6    Exhibits Number 4 and I think Number 5 at the same

7    time, all right?

8  A.   Okay.  Thank you.

9  Q.   Without going into any detail on either one of these

10    can you explain what is Exhibit Number 4?  What kind of

11    form or what is it?

12  A.   It's a title ownership change form and what this is is

13    it's giving us permission to place Basil Simon as the

14    trustee on the account.

15  Q.   Okay.  I'm going to go back over that detail.  It's a

16    form to change as you said who would normally be on the

17    account, this is a normal bank document that anyone

18    would have for a bank account?

19  A.   Correct.

20  Q.   And just looking at Exhibit Number 5, as well, what's

21    this document?  What is this type of document with the

22    bank?

23  A.   This is a business account signature card.

24  Q.   Similar to what we went over previously?

25  A.   Absolutely.

1 Q. Easy enough. Now, and I gave you these to help you

2 refresh your recollection, if needed. Before I get

3 into those specific documents, I've just got some

4 general questions for you.

5 A. Okay.

6 Q. Do you recall meeting with, you've already actually

7 stated you did meet at some point with, but do you

8 recall meeting with Basil Simon as the Chapter 11

9 Trustee for looks like this debtor is Post VI d/b/a

10 Post Bar of Novi?

11 A. I do.

12 Q. Do you recall when that was?

13 A. That would be November 21st, 2011.

14 Q. And do you recall that because you're looking at

15 documents that has that date on it?

16 A. That's correct.

17 Q. That's fine. Do you recall where the meeting took

18 place?

19 A. In was in my office.

20 Q. Which was where exactly?

21 A. Lake Orion which is an office of Citizens Bank inside

22 my personal office.

23 Q. So that was a Citizens Bank branch?

24 A. Correct.

25 Q. In Lake Orion?

EXHIBIT 6

1  A.   Yes.

2  Q.   And just like any bank branch you've got teller's

3       windows and things as part of the bank branch and then

4       you had your own office somewhere in the building?

5  A.   That is correct.

6  Q.   Who else was there at this meeting?

7  A.   Michael McInerney -- I don't know, I'm slaughtering

8       that name.  He was in the office as well as Basil and

9       myself.  It was just us three.

10  Q.   Do you recall was it the morning, afternoon?  If you

11      don't remember, you don't remember.

12  A.   I don't recall, and I don't believe it was in the

13      morning or late, somewhere I would say midday.

14  Q.   During normal banking hours, though?

15  A.   Correct, yes.

16  Q.   Again, we'll get to these documents specifically in a

17      second.  But do you recall what was the reason for the

18      meeting with you?

19  A.   To change the ownership of the accounts into Basil's

20      name.

21  Q.   While we're mentioning that I know these documents in

22      particular reference the Post VI, d/b/a Post Bar in

23      Novi with a DIP number.  Just for your knowledge DIP

24      stands for Debtor in Possession.

25  A.   Oh, yeah, fair enough.

1  Q.   That's fine.  Were other accounts for other related

2       bankruptcy cases also switched?

3  A.   Yes, there were.

4  Q.   Do you recall how many?

5  A.   I believe I want to say there was a total, it was

6       either four or six total accounts including the one

7       we're speaking of right now.

8  Q.   All right.  I'm going to ask you some questions about

9       these documents.  Looking at Number 4, let's start at

10      the top.  Now that has, again, a fax line across the

11      top dated November 21st, 2011, 2:21 p.m., Citizens

12      Bank.  Who would this fax have come from and who would

13      it be going to, if you know?

14 A.   The fax would have come from me.  I would have been the

15      one that faxed that and I would have faxed it to our

16      deposit operations.

17 Q.   We have the date in the box.  Let me step back a

18      second.  Do you recognize whose handwriting that is on

19      this Document Number 4?

20 A.   Yeah, embarrassingly enough it's mine.

21 Q.   It's your handwriting?

22 A.   It is.

23 Q.   I'm just going to go through the box.  We have a bank

24      number that's some internal number, we have the branch

25      number which is again an internal number from the bank,

1    right?

2  A.   Correct.

3  Q.   Completed by, that's your name?

4  A.   Uh-huh.

5  Q.   And that's your phone number?

6  A.   That's our general number at our branch, yes.

7  Q.   And then it references the account number and the Post

8       VI?

9  A.   Uh-huh.

10  Q.   And then there's a block near the bottom, new account

11      title, can you read what that says?

12  A.   It says, please add Basil T. Simon as Trustee.

13  Q.   Now, there's another below that says, primary

14      authorized signature, do you recognize that signature?

15  A.   I do.

16  Q.   Whose is it?

17  A.   That's Michael McInerney.  I'm having a brain freeze on

18      that one.

19  Q.   That's fine.  It looks like in conjunction with

20      Number 4, Exhibit Number 5 was also done?

21  A.   That is correct.

22  Q.   Again, at the very top we've got November 21st, 2011

23      now at 2:21 p.m., Citizens Bank will fax notation.  Can

24      you explain that again?

25  A.   This is supporting documentation with the title

EXHIBIT 6

1     ownership change form as well as the information

2     provided to give Basil permission to be on the account,

3     so it's all grouped together.

4  Q.   When we look in the middle on the first page of this

5     Exhibit Number 5 there's kind of a scribbly signature

6     of authorized signer.  Can you tell whose signature

7     that is?

8  A.   Yes, that's Basil T. Simons.

9  Q.   Okay.  And then in the bottom portion it says

10     acknowledgment in this block and we see Basil T. Simon

11     typed in and it says Trustee and a signature above, do

12     you know who's signature that is?

13  A.   That's Basil's, as well.

14  Q.   I note on the bottom of this first page in the middle

15     it says accepted by print full name and it has your

16     name there above a line, correct?

17  A.   That is correct.

18  Q.   If you turn to the second page of Exhibit Number 5, now

19     we see kind of in the middle that there's an X in the

20     box Certification of Corporation, right?

21  A.   Yes.

22  Q.   Do you know whose signature that is?

23  A.   Michal McInerney.

24  Q.   Now, if you'll think back what was your understanding

25     of what was going on at this meeting at your offices

EXHIBIT 6

1    and the changes of, I guess, signatory on the account

2    for not only the Post VI, but the other entities you

3    mentioned, there's four or six of them approximately.

4         Do you recall was there any conversation

5    about what was going on with this transaction either

6    been Mr. Simon and Mr. McInerney or directly with you?

7  A.   Well, going back I'm trying to go off a recollection on

8    this.  What I gathered from the meeting was that Basil

9    was taking full control on everything to ensure that

10   only business transactions were being covered going

11   forward on this and that's why Basil was taking full

12   responsibility on this until the bankruptcy case came

13   to fruition.  And it seemed to me that Michael signed

14   off on it and said, here you go, Basil, it's yours now,

15   and I'm done, take care of everything.

16 Q.   Do you recall any discussion about whether

17   Mr. McInerney either had or did not have any longer

18   check writing authority to write checks from these

19   accounts, was that discussed?

20 A.   It was not discussed, no.

21 Q.   That you recall?

22 A.   That I recall, correct.  I don't know if it was because

23   Basil and Michael, I don't know what they spoke about

24   before or after.  A lot of times they do not discuss

25   that stuff in front of me just because I'm not really

1       privy to that information.

2   Q.   I'm just trying to get a feel looking at these

3       documents in front of you what would be the

4       understanding of who would have authority to write

5       checks off of this particular Post VI account?

6   A.   Only Basil.  I had Michael sign on the title ownership

7       change form as adding Basil giving Basil complete

8       control.  He knew that he's no -- Michael had no longer

9       any responsibility or any type of authority to do

10       anything whatsoever on the account, that it was now in

11       Basil's hands and it was up to Basil to see fit on what

12       Basil did.  It was his sole account at that point in

13       essence.

14   Q.   You say, he and his sold account, you mean Basil Simon?

15   A.   Correct, I'm sorry, yes, Basil had full control of the

16       account to make any changes or to do anything to that

17       account that he saw fit, meaning Basil.

18   Q.   Including writing checks?

19   A.   That is correct.

20   Q.   So I'm going to show you what's been marked as Exhibit

21       Number 6.

22   A.   Would you like these back?

23   Q.   You can hold onto to them for a minute.  I don't know

24       if we'll get back to them or not.  Exhibit Number 6 if

25       you take a look it's two pages and it's checks that

1    appear to be written off the Post VI Inc. Account, the

2    dates are a little scribbly.  I think the first one is

3    1-15-12, but the Check Number is 10159, in the

4    right-hand corner?

5  A.   Yes.

6  Q.   And then the second one is a littler clearer maybe

7    looks like 1-15-12, Check Number 10161, okay?

8  A.   I have 10160.

9  Q.   I'm sorry, 10160, correct?

10  A.   Yes.

11  Q.   Have you seen these before?

12  A.   I have not.

13  Q.   Just from looking at them do they appear to be normal

14    checks from a normal Citizens Bank account?

15  A.   It could be.  May I clarify?

16  Q.   Sure.

17  A.   Every business has checks different ways.  Some of them

18    they'll have checks even from the same account multiple

19    ways, some where it's either laser checks where

20    somebody print's it off and it's stamped or they have

21    some on travel so they can jut fill it out, just like

22    you and I would have a normal check.

23  Q.   So that said you're saying when I say a normal one,

24    you're kind of saying nicely there's not really a

25    normal way, it could be different ways?

EXHIBIT 6

1  A.   Correct.

2  Q.   That's fine.

3  A.   I mean, it looks authentic based on the photocopy.

4  Q.   And I'm not questioning the actual authenticity of

5       these checks as being Citizens Bank checks.

6            Now, I mentioned the dates before, presuming

7       I'm right and these are both dated 1-15-12, January

8       of 2012, and also presuming that this is

9       Mr. McInerney's signature or a stamp of his signature

10      on these two checks.  Is there any reason based on what

11      happened at your offices back in November 21st, 2011,

12      is there any reason why Mr. McInerney should have been

13      continuing to write checks out of the Post VI account

14      back in January which is now a little bit less than two

15      months after the November 21st, 2011 with you in your

16      offices as you previously testified about?

17 A.   Absolutely not, he should not have written these

18      checks.

19           MR. ROBLE:  Off the record for a minute.

20                (An off-the-record

21                 discussion was held.)

22           MR. ROBLE:  Jason, I appreciate your time

23      today.  I'm going to take Exhibits 4 and 5 and 6 from

24      you.

25 A.   Okay.

1       MR. ROBLE:  I don't have any further

2    questions at this time.  And I appreciate you making

3    the time on behalf of yourself and also the bank making

4    these documents available to my office.  I know it's

5    pursuant to subpoena, you don't really have a choice,

6    but you and your counsel, especially you were very

7    cooperative and I appreciate that.

8  A.   Absolutely.

9       MR. ROBLE:  In taking time out of the day, so

10    with that I'm going to conclude your deposition.  Thank

11    you.

12      (The deposition concluded at 10:43 a.m.)

13

14

15

16

17

18

19

20

21

22

23

24

25

EXHIBIT 6

```
1              CERTIFICATE OF NOTARY

2    STATE OF MICHIGAN        )

3                    ) SS

4    COUNTY OF WAYNE          )

5        I, Elizabeth Koller, Certified Shorthand Reporter,

6    a Notary Public in and for the above county and state,

7    do hereby certify that the above deposition was taken

8    before me at the time and place hereinbefore set forth;

9    that the witness was by me first duly sworn to testify

10    to the truth, and nothing but the truth, that the

11    foregoing questions asked and answers made by the

12    witness were duly recorded by me stenographically and

13    reduced to computer transcription; that this is a true,

14    full and correct transcript so taken; and that I am not

15    related to, nor of counsel to either party nor

16    interested in the event of this cause.

17

18

19          _____

20          Elizabeth Koller

21          CSR 7042, Notary Public,

22          Wayne County, Michigan

23    My Commission expires:  June 1st, 2018

24

25
```



THIS CHECK HAS VARIOUS SECURITY FEATURES INCLUDING COLORED BACKGROUND MICROPRINTING & A WATERMARK

POST SIX INC.
DBA POST BAR NOVI
D.I.P. CASE #10 67149 TJT
GENERAL ACCOUNT
42875 GRAND RIVER
NOVI, MI 48375

Citizens Bank
Flint, Michigan

74-0052
0724

10159

DATE 1/18/12

AMOUNT $1648.24

PAY  Sixteen Hundred Forty Eight ————————— 24

TO THE
ORDER
OF  BMW Financial Services

⑈010159⑈ ⑆072400528⑈ 4535016432⑈



EXHIBIT
14
6-18-12 EK



EXHIBIT
1
5-1-12 EK



EXHIBIT
GRESOCK
6
9-18-12 EK

THIS CHECK HAS VARIOUS SECURITY FEATURES INCLUDING COLORED BACKGROUND, MICROPRINTING, & WATERMARK

**POST SIX INC.**
**DBA POST BAR NOVI**
D.I.P. CASE #10 67149 TJT
GENERAL ACCOUNT
42875 GRAND RIVER
NOVI, MI 48375

Citizens Bank
Flint, Michigan

74-0052
0724

10160

MC-004

DATE 1/15/12

AMOUNT $1342.69

PAY Thirteen Hundred Forty Two — 69/100

TO THE ORDER OF Detroit Athletic Club

⑈010160⑈ ⑆072400528⑆ 4535016432⑈

EXHIBIT
2
5-1-12  EK

PENGAD 800-631-6989

UNITED STATES BANKRUPTCY COURT

FOR THE EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION


In re:                          Case No. 11-58953-TJT

MICHAEL E. MCINERNEY,           Chapter 11

     Debtor.                    HON. THOMAS J. TUCKER

_____/




PAGE 1 TO 82


     The Deposition of MICHAEL E. MCINERNEY,

     Taken at 29100 Northwestern, Suite 310,

     Southfield, Michigan 48034,

     Commencing at 2:11 p.m.,

     Monday, June 18, 2012,

     Before Elizabeth Koller, CSR-7042.

**EXHIBIT 8**

HANSON RENAISSANCE
COURT REPORTERS & VIDEO
*hansonreporting.com*
*313-567-8100*

1   APPEARANCES:

2   MR. RICHARD A. ROBLE (P51429)

3   Office of the U.S. Trustee

4   211 West Fort Street, Suite 700

5   Detroit, Michigan  48226

6   Richard.A.Roble@usdoj.gov

7   (313) 226-6769

8       Appearing on behalf of the U.S. Trustee.

9

10  MR. PATRICK A. FOLEY (P74323)

11  MR. ELLIOT CROWDER (P76137)

12  26100 American Drive, Suite 500

13  Southfield, Michigan 48034

14  pfoley@sbplclaw.com

15  ecrowder@sbplclaw.com

16  (248) 354-7906

17      Appearing on behalf of Charles Becker.

18

19

20

21

22

23

24

25

HANSON RENAISSANCE   hansonreporting.com
COURT REPORTERS & VIDEO   313-567-8100

1                    TABLE OF CONTENTS

2

3    Witness                                          Page

4

5    MICHAEL E. MCINERNEY

6    EXAMINATION BY MR. ROBLE:...............................   6

7    EXAMINATION BY MR. FOLEY:...............................  67

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

HANSON RENAISSANCE   hansonreporting.com
COURT REPORTERS & VIDEO   313-567-8100

1                    INDEX TO EXHIBITS

2

3   Exhibit                                          Page

4   (Retained by Counsel)

5   DEPOSITION MCINERNEY EXHIBIT NUMBER 1

6     Order ...............................................   12

7   DEPOSITION MCINERNEY EXHIBIT NUMBER 2

8     List................................................   13

9   DEPOSITION MCINERNEY EXHIBIT NUMBER 3

10    Employee Statement .................................   17

11  DEPOSITION MCINERNEY EXHIBIT NUMBER 4

12    2011 1099 ..........................................   18

13  DEPOSITION MCINERNEY EXHIBIT NUMBER 5

14    Agreement ..........................................   20

15  DEPOSITION MCINERNEY EXHIBIT NUMBER 6

16    2011 1099 ..........................................   22

17  DEPOSITION MCINERNEY EXHIBIT NUMBER 7

18    MOR July 2011.......................................   23

19  DEPOSITION MCINERNEY EXHIBIT NUMBER 8

20    MOR August 2011.....................................   25

21  DEPOSITION MCINERNEY EXHIBIT NUMBER 9

22    MOR September 2011..................................   27

23

24

25

EXHIBIT 8
HANSON RENAISSANCE   hansonreporting.com
COURT REPORTERS & VIDEO   313-567-8100

1                    INDEX OF EXHIBITS

2

3    Exhibit                                          Page

4

5    DEPOSITION MCINERNEY EXHIBIT NUMBER 10

6      MOR October 2011 .....................................   29

7    DEPOSITION MCINERNEY EXHIBIT NUMBER 11

8      MOR November 2011 ....................................   32

9    DEPOSITION MCINERNEY EXHIBIT NUMBER 12

10     MOR December 2011 ....................................   35

11   DEPOSITION MCINERNEY EXHIBIT NUMBER 13

12     MOR January 2012 .....................................   41

13   DEPOSITION MCINERNEY EXHIBIT NUMBER 14

14     Copy of Two Checks ...................................   43

15   DEPOSITION MCINERNEY EXHIBIT NUMBER 15

16     MOR February 2012 ....................................   50

17   DEPOSITION MCINERNEY EXHIBIT NUMBER 16

18     MOR March 2012 .......................................   54

19   DEPOSITION MCINERNEY EXHIBIT NUMBER 17

20     Order ................................................   67

21   DEPOSITION MCINERNEY EXHIBIT NUMBER 18

22     Reorganization & Disclosure Statement ................   67

23

24

25

EXHIBIT 8

HANSON RENAISSANCE
COURT REPORTERS & VIDEO    hansonreporting.com
313-567-8100

```
 1        Southfield, Michigan

 2        June 18, 2012

 3        About 2:11 p.m.

 4                     MICHAEL E. MCINERNEY,

 5        having first been duly sworn, was examined and

 6        testified on his oath as follows:

 7                     MR. ROBLE:  For the record, Richard Roble on

 8        behalf of the United States Trustees Office.  Other

 9        counsel is present.

10                     MR. FOLEY:  Patrick Foley on behalf of

11        Creditor Charles E. Becker.

12                     MR. CROWDER:  Elliot Crowder on behalf of

13        Charles E. Becker.

14   EXAMINATION BY MR. ROBLE:

15   Q.   Mr. McInerney, just starting off you're here for a 2004

16        Exam scheduled pursuant to a court order that was

17        entered in this case and the Docket is Number 246.  I'm

18        going to give you a copy of that in just a second, all

19        right?

20   A.   Yes.

21   Q.   Thank you.  And also I'm just confirming for the record

22        you are here by yourself.  Your previous counsel

23        pursuant to the previous court order entered that

24        allowed Michael Zousmer to withdraw is not present in

25        the room, correct?
```

EXHIBIT 8

HANSON RENAISSANCE
COURT REPORTERS & VIDEO
hansonreporting.com
313-567-8100

1  A.   Correct.

2  Q.   So you're going forward at this time without counsel?

3  A.   Correct.

4  Q.   All right.  I know you've had your deposition taken

5       before, correct?

6  A.   Yes.

7  Q.   I'm just going to go over some of the basic ground

8       rules which I know you probably know but I always let

9       everybody know.  First off, you're not trapped in here,

10      if you need a break, need to go to the bathroom, a

11      drink, etcetera, obviously you have to be excused,

12      that's fine, we'll take a break.

13           Obviously things are being recorded, so

14      please don't nod your head up or down or shake your

15      head, all verbal responses.  If I ask you a question

16      and you don't understand it please let me know you

17      don't understand it.  If you answer a question then I'm

18      going to presume two things, one, that you heard my

19      question, and two, you understood what I asked you.

20           Any questions about any of those ground rules

21      I've set?

22  A.   No.

23  Q.   Okay.  Before we start I wanted to go off the record

24      and talk about potentially a couple things for use at

25      the evidentiary hearing, which we can go back on the

EXHIBIT 8

HANSON RENAISSANCE   hansonreporting.com
COURT REPORTERS & VIDEO      313-567-8100

1    record at anytime, but at this point I think it's

2    something we can talk about off the record.  It's more

3    administrative.  All right.

4                         (An off-the-record

5                         discussion was held.)

6  BY MR. ROBLE:

7  Q.   We're back on the record.  While we were off the record

8       I discussed with Mr. McInerney a copy of a chart that

9       my office has prepared that I want to use basically as

10      a demonstrative chart, not necessarily as evidence at

11      the evidentiary hearing.  We went over all the columns.

12             My understanding is and you can confirm, I

13      believe, Mr. McInerney, you don't have any objection

14      and you will agree that we can use this chart, your

15      only concern at this point is just you want an

16      opportunity to confirm that all the dollar numbers

17      which again as I indicated came straight off of your

18      Monthly Operating Reports that were filed, you just

19      want to confirm the dollar amounts on here are the

20      correct dollar amounts, and then as long as these are

21      all the correct dollar amounts and they're not wrong

22      because of a typo or something else being wrong, you

23      would agree that this could come in.

24             Again, it's not evidence but just to be used

25      by the court and any other parties as a demonstrative

1        exhibit at the upcoming evidentiary hearing set for

2        next week or if it goes beyond that date.  Does that

3        sound fair?

4   A.   That's accurate other than I want to verify the

5        accuracy of all the information including the yes or

6        nos.

7   Q.   Okay, that's fine, too.  All right.  When are you going

8        to get a chance to get back with me on that, do you

9        think, because the reason is I'll be honest if you

10       can't agree with this then I'm going to have to have

11       somebody from my office presumably come in as a witness

12       to say that they went through everything and here's the

13       numbers?

14  A.   When would you like me?

15  Q.   Could you by Friday?

16  A.   By Friday, yep, that's fine.

17             MR. ROBLE:  Thank you.  Off the record.

18                  (An off-the-record

19                  discussion was held.)

20  BY MR. ROBLE:

21  Q.   Back on the record.  We also discussed a second

22       proposed chart from my office that I have,

23       Mr. McInerney, that essentially went over the section

24       of the amended plan that covers how the payments are

25       going to be made to creditors and that section of the

EXHIBIT 8
HANSON RENAISSANCE
COURT REPORTERS & VIDEO   hansonreporting.com
313-567-8100

1    plan is essentially all of Article II in the amended

2    plan.

3              We've have a chance to discuss that similar

4    to the other proposed chart.  Mr. McInerney is in

5    agreement to get back with me by Friday to let me know

6    whether you're essentially going to stipulate or just

7    agree that I can use this as a demonstrative chart.

8              It's not coming in as evidence but at least

9    to maybe capsulate your portion of your Article II

10   plan.  You're going to get to Friday and then during

11   that timeframe I presume you're going to look this

12   over, number one, presume my math is right and the

13   numbers are right which again I took right from the

14   plan, could of had a typo.

15             And you had a couple questions I know on a

16   couple other issues, we tried to kind of resolve and

17   explain but you said you're going to need some time to

18   look at it, and that's fine.  So you're going to get

19   back to me by Friday on this, as well, correct?

20  A.   Correct.

21  Q.   While we're talking about these couple things, also

22   since you don't have counsel I think it's going to be

23   worthwhile for everybody here, how can I get ahold of

24   you?  I don't have a direct email.  How am I going to

25   get back and forth with you for communication?

HANSON RENAISSANCE   hansonreporting.com
Court Reporters & Video        313-567-8100

1   A.   I can give you my email and cell phone number.

2   Q.   Thanks.

3   A.   memcinerney57@gmail.com, and best number is my cell

4       which is (248) 709-3535.

5   Q.   Thank you.  It's memcinerney, your last name obviously,

6       57, no dashes or dots or anything, okay, at gmail.com.

7       Do you also have, again, you normally don't contact me,

8       do you have my contact info?

9   A.   I have your email address.  I think I have everything

10      else.  Sorry for mumbling.  Yeah, I'm all set.  I got

11      your office number and your email.

12  Q.   Okay.  For what it's worth also with regard to that

13      last chart we just went over if it may help you to

14      understand it where I got some of the numbers from, I'm

15      also going to give you a copy, this is a partial

16      printout of the claims docket so you can see the

17      numbers and again it references either the claims for

18      at least mainly the taxing authorities are on there,

19      the Michigan Department of Treasury and IRS, that may

20      just help you.

21  A.   Okay.

22  Q.   I'm also going to hand to you just to help you maybe

23      figure out or confirm the numbers, I'm going to give

24      you a copy of the objection that was filed by the

25      Oakland County Treasurer.  These are just the things

EXHIBIT 8
HANSON RENAISSANCE
COURT REPORTERS & VIDEO
hansonreporting.com
313-567-8100

 1     that I looked at to help me put the chart together.

 2          Again, I'm not relying on you or expecting

 3     you if you agree with these charts that you're

 4     acknowledging in anyway those are all amounts that are

 5     owed.  I'm just simply going by what has been filed,

 6     what a creditor says they're owed.

 7  A.   I understand.

 8  Q.   So it's not an admission on your part or anything.  I'm

 9     just giving you that objection.  I'm also going to give

10     you the copy of the objection that was filed by the

11     United States, i.e., the IRS.

12  A.   Okay.

13  Q.   Now, we're getting really to the actual 2004 Exam.  I'm

14     going to give you a copy and I want to mark this as

15     Exhibit Number 1.

16     DEPOSITION MCINERNEY EXHIBIT NUMBER 1

17     Order

18     WAS MARKED BY THE REPORTER

19     FOR IDENTIFICATION

20  BY MR. ROBLE:

21  Q.   Giving you a copy of again the Order I referenced at

22     the beginning, the Order For Bankruptcy Rule 2004 Exam,

23     Docket at the bottom is Number 246.  You can keep that

24     in front of you just to refer to as needed, please.

25          Now, this asked you to provide to my office

HANSON RENAISSANCE
COURT REPORTERS & VIDEO
hansonreporting.com
313-567-8100

1      by 5:00 on June 15th, this last Friday, a number of

2      documents identified, therein.  I'm going to go over

3      with you the things that I did receive from your

4      counsel via email.  There was a number of pages with

5      different things.  I'm going to go over each one.

6                    MR. ROBLE:  Would you please mark this as

7      Exhibit 2?

8      DEPOSITION MCINERNEY EXHIBIT NUMBER 2

9      List

10     WAS MARKED BY THE REPORTER

11     FOR IDENTIFICATION

12  BY MR. ROBLE:

13  Q.   Looking at what's been marked as your Deposition Number

14       2, I take it that this was provided by you to

15       Mr. Zousmer?

16  A.   Correct.

17  Q.   And is this your handwriting?

18  A.   Yes.

19  Q.   And this was meant to or the question is was this meant

20       to comply with at least Item Number 1 regarding a list

21       indicating names and addresses for the entities that

22       have paid you money within the timeframe set forth in

23       the order?

24  A.   Definitely Number 1, and Number 2, as well.

25  Q.   All right.  I'm going to indicate I do have for

EXHIBIT 8

HANSON RENAISSANCE   hansonreporting.com
Court Reporters & Video   313-567-8100

```
 1            Number 1 you've listed, I'm just going to go through
 2            this real quick here, on Exhibit Number 2 for November
 3            you got various amounts that are on there.  I can tell,
 4            and some of this is just me deciphering your
 5            handwriting frankly, looks like 6,924 that was payments
 6            from MEM Investments?
 7      A.    Correct.
 8      Q.    And next you've got Archdiocese of Detroit which you
 9            then start abbreviating as AOD?
10      A.    Correct.
11      Q.    We've got K. McInerney income.  I presume the K.
12            McInerney is your wife, Kim?
13      A.    Correct.
14      Q.    You have not provided her address on here, but the
15            address is your home address, correct?
16      A.    Yes.
17      Q.    I also don't see that I have any records for this
18            2,250.  Do you have any records showing she paid you
19            this money?
20      A.    No, I don't.
21      Q.    How was that paid?
22      A.    Three $750.00 checks from MEM Investments prior to the
23            period of time when the trustee was appointed.
24      Q.    Let me just clarify.  So the $750.00 checks those were
25            checks paid to Kimberly McInerney for services she
```

EXHIBIT 8
HANSON RENAISSANCE   hansonreporting.com
Court Reporters & Video   313-567-8100

 1    performed for MEM?

 2  A.   Correct.

 3  Q.   And then she used that money those three checks to

 4       essentially give to you?

 5  A.   Correct.

 6  Q.   The other thing on here and this continues on through a

 7       lot of these and I don't understand, it says SPCE-BCBS

 8       and for the month of November it says $1,253.00.  Can

 9       you just explain?  I don't know what that is.

10  A.   SPCE LLC is an entity, limited liability company which

11       my wife has an interest.  BCBS means Blue Cross --

12  Q.   Blue Cross Blue Shield?

13  A.   Correct.

14  Q.   That helps a little bit because the definition on the

15       order was even if you don't get paid money directly

16       something that benefits you.

17  A.   Correct.

18  Q.   Am I correct in stating that by putting this down on

19       here for, and there's an amount on this Exhibit 2 for

20       SPCE BCBS for November, December, January, February,

21       March, April and May, correct?

22  A.   Correct.

23  Q.   So the amounts that are shown on there are from this

24       company SPCE LLC that through your wife essentially is

25       paying over to you either for if it says BCBS that was

EXHIBIT 8
HANSON RENAISSANCE
COURT REPORTERS & VIDEO    hansonreporting.com
313-567-8100

1        to pay for your health insurance, Blue Cross Blue

2        Shield?

3  A.   It's actually hers in her name but I didn't want there

4        to be any misunderstanding so I included it.  The

5        policy is in her name.

6  Q.   You're covered under her policy, through, work or

7        through that entity?

8  A.   Correct.

9  Q.   There's a couple items on here I just want to clarify

10       for SPCE in April 2012 and May 2012.  There's a

11       separate line item you have for April it says,

12       $2,200.00, for May $1,000.00.  So as opposed to the

13       insurance which is also referenced on there those

14       amounts were actual monies given to you?

15  A.   Paid to me, consulting fees.

16  Q.   So it's your wife's company we're getting back to.  So

17       you're acting or have been acting as a consultant then

18       for SPCE?

19  A.   Correct, I'm also the manager of the company, but she

20       owns it.

21  Q.   So as opposed to it's not like it was a gift from the

22       company?

23  A.   It's for services.

24  Q.   Now, what I didn't see in any of the documents and I'll

25       go over each of these with you to get through this, but

HANSON RENAISSANCE   hansonreporting.com
COURT REPORTERS & VIDEO   313-567-8100

```
 1          what I didn't see were any documents provided regarding
 2          the Blue Cross Blue Shield.  Do you have a copy of the
 3          policy or something that would show that?
 4     A.   A copy of the bills.
 5     Q.   Okay.  But those weren't provided along with the
 6          documents that you provided to me, correct?
 7     A.   Correct.  Again this is, I put this on here in the
 8          interest of full disclosure because I didn't want there
 9          to be a perception that I'm hiding anything.  But it's
10          really, it's her policy.
11     Q.   Okay.  I appreciate that.  And the same thing with
12          regard to the SPCE, actual payments made that are
13          designated here for the two months we went over in
14          April and May, likewise, I don't see any documents that
15          have been provided to me that shows those actual
16          payments to you?
17     A.   That's because I don't have them.  They're checks.  I
18          didn't keep copies.
19               MR. ROBLE:  All right.  These again are part
20          of the documents that were provided.  You can mark this
21          as Exhibit 3.
22          DEPOSITION MCINERNEY EXHIBIT NUMBER 3
23          Employee Statement
24          WAS MARKED BY THE REPORTER
25          FOR IDENTIFICATION
```

EXHIBIT 8

HANSON RENAISSANCE
COURT REPORTERS & VIDEO
hansonreporting.com
313-567-8100

1    BY MR. ROBLE:

2    Q.    I've marked as Exhibit 3 this was part again the email

3          I received from your attorney on Friday the 15th.

4          Would you agree these were provided in response to

5          again the Order, Exhibit 1, that we went over, too?

6    A.    Yes.

7    Q.    I'm not going to go into these in detail.  I just want

8          you to confirm, because I can see what they look like,

9          these were amounts everything through Exhibit 3 various

10         types of pay.  It says an employee statement from MEM

11         Investments covering looks like the first one starts

12         from 10-23-11 and the last one on the last page ends on

13         it says check date 12-08-11, correct?

14   A.    Those are the pay periods.  The check date is the

15         actual date that I received it.

16   Q.    That's fine.

17   A.    But, yeah, it's four or five pay stubs from MEM

18         Investments.

19   Q.    The numbers are what the numbers are on here.  All

20         right.

21   A.    They match the MORs.

22   Q.    Right.

23                         (An off-the-record

24                         discussion was held.)

25         DEPOSITION MCINERNEY EXHIBIT NUMBER 4

HANSON RENAISSANCE
COURT REPORTERS & VIDEO
hansonreporting.com
313-567-8100

1        2011 1099

2        WAS MARKED BY THE REPORTER

3        FOR IDENTIFICATION

4    BY MR. ROBLE:

5    Q.    We took a very short break just for Mr. McInerney to

6          get some water.  I've given you what's marked as

7          Exhibit 4.  Again, this is part of the packet of

8          documents provided to me via email from Mr. Zousmer on

9          Friday the 15th.

10              I'm just having you look over this what looks

11         like is your 1099 from the Archdiocese of Detroit.  It

12         shows that you were paid during the year 2011,

13         $40,000.00, correct?

14   A.    Correct.

15   Q.    And then the other two pages attached it doesn't say on

16         here, it's a little unclear, I mean, I think I can

17         presume what these are for.  It has your name.  It says

18         services on some of these or partial dates of services

19         and then in the middle, the first one at least says,

20         contract services or partly your name and then the

21         amounts are ten grand.

22              So these are amounts that you were paid and

23         check numbers on each one of these starting in

24         January 2012, February, March, April, May.  So this was

25         the proof you provided regarding the payments you

EXHIBIT 8

HANSON RENAISSANCE
COURT REPORTERS & VIDEO   hansonreporting.com
313-567-8100

1        received from the Archdiocese, correct?

2   A.    Correct.

3   Q.    Any idea why, I'm just curious, on the very first one

4        the check number has a date of 2-15-2011? Do you know

5        why that is?

6   A.    Not a clue.

7   Q.    Do you know why --

8   A.    It's not accurate.

9   Q.    It looks like it's a mistake for some reason.

10   A.    I never noticed it before when I pulled these together.

11        I wasn't doing anything in February 2011.

12   Q.    All right. Any idea why where it says posting

13        description it says contracted services for the one in

14        November or I'm sorry, the one in January, and then

15        after that it starts saying under the posting

16        description it's a little clearer frankly like for

17        February, March, on the first page it says F-E-B

18        services, your name's cut off but obviously your name,

19        the next one March 2012 services, your name cut off but

20        it's pretty clear. Any idea why the different

21        description?

22   A.    No idea, nothing changed.

23        DEPOSITION MCINERNEY EXHIBIT NUMBER 5

24        Agreement

25        WAS MARKED BY THE REPORTER

HANSON RENAISSANCE   hansonreporting.com
Court Reporters & Video   313-567-8100

```
 1            FOR IDENTIFICATION

 2    Q.      I've given you a copy of what's been marked as

 3            Exhibit 5.  This is a copy apparently of a contract

 4            between yourself and the Archdiocese of Detroit that

 5            started as of October 4th, 2011?

 6    A.      Yes.

 7    Q.      And again this was part of the packet of documents as

 8            part of the email from Mr. Zousmer that was provided to

 9            my office in respond to the Order Exhibit 1, these were

10            provided to me on June 15th, correct?

11    A.      Correct.

12    Q.      Just pointing out Paragraph Number 2, it says your

13            monthly compensation is $10,000.00?

14    A.      Yes.

15    Q.      And on the last page of this exhibit if you'll look

16            it's entitled, Memorandum, correct?

17    A.      Yes.

18    Q.      It's from Pamela Beech.  Who is Pamela Beech?

19    A.      The HR Director for the Archdiocese.

20    Q.      Just confirming this document indicates that at this

21            point it says you're on a month-to-month basis

22            effective April 5th, 2012, right?

23    A.      Correct.

24    Q.      As we sit here today because it was effective April 5th

25            we're now a couple months past that you're continuing
```

HANSON RENAISSANCE   hansonreporting.com
Court Reporters & Video   313-567-8100

1        on month to month just confirming with the Archdiocese

2        with a pay of $10,000.00 per month?

3  A.    Correct.

4        DEPOSITION MCINERNEY EXHIBIT NUMBER 6

5        2011 1099

6        WAS MARKED BY THE REPORTER

7        FOR IDENTIFICATION

8  BY MR. ROBLE:

9  Q.    I'm handing you what's been marked as Exhibit 6.  This

10       was part of the email from your attorney, Mr. Zousmer,

11       I received on Friday, June 15th in respond to the

12       documents to be produced pursuant to the Order

13       Exhibit 1.  You've got 2011 1099 from Roncelli, Inc.,

14       made out to you.  It shows a total amount was

15       $2,000.00.  Does that look correct?

16  A.    Correct.

17  Q.    And on the second document which was also part of the

18       email and that shows you were paid another $3,200.00

19       from Roncelli, at least the date on here says 10-30-12

20       and on the bottom it says 10-31-12, so sometime around

21       that timeframe you got another additional $3,200.00

22       from Roncelli?

23  A.    I'm sorry, it says 1-30-12 and 1-31-12.

24  Q.    What did I say?

25  A.    You said 10-31.

HANSON RENAISSANCE   hansonreporting.com
COURT REPORTERS & VIDEO   313-567-8100

1   Q.   My mistake, then, 1-30-12 and 1-31-23?

2   A.   That's correct.

3   Q.   If I could get those exhibits back from you.  We may

4       refer back to them, but not too often.

5             Now, I want to go over with you a number of

6       the Monthly Operating Reports.  You can mark this as

7       Exhibit 7.

8       DEPOSITION MCINERNEY EXHIBIT NUMBER 7

9       MOR July 2011

10      WAS MARKED BY THE REPORTER

11      FOR IDENTIFICATION

12 BY MR. ROBLE:

13  Q.   All right.  I just have some general questions on here.

14      If you can please turn to looks like the third page

15      that's where it's got your operating statement?

16  A.   Yes.

17  Q.   I'm just trying to confirm some of the numbers on here.

18      For that month in July 2011, indicated you received

19      5,192 salary.  Would that have been from as far as you

20      know MEM Investments?

21  A.   Yes.

22  Q.   And your net income is 1,642 correct?

23  A.   Correct.

24  Q.   There's no mortgage payment that month.  Again, I'm

25      just looking at the numbers on the MOR.

HANSON RENAISSANCE
COURT REPORTERS & VIDEO   hansonreporting.com
313-567-8100

1  A.    No, there wasn't in the last nineteen days of the
2        month.
3  Q.    You're referring to the fact the July mortgage from
4        7-12 to 7-31?
5  A.    Right.
6  Q.    Do you know, did you make your mortgage payment for
7        your home in Michigan that month?
8  A.    I don't remember.
9  Q.    Do you recall, did you make the mortgage payment for
10       Florida that month?
11 A.    Don't remember that either.  I'd have to check.
12 Q.    Okay.  I going to step back.  I want to confirm, if you
13       look please at the first page, confirm for me that's
14       your signature?
15 A.    Yes.
16 Q.    That's your handwriting on here?
17 A.    Yes.
18 Q.    As far as you recall you provided these documents to
19       your attorney Mr. Zousmer to then file with the
20       bankruptcy court?
21 A.    Correct.
22 Q.    And this is, in fact, on the bottom it's noted as
23       Docket Number 69, correct?
24 A.    Correct.
25 Q.    Now, it shows a net income of 1,642 and as you've

EXHIBIT 8
HANSON RENAISSANCE
COURT REPORTERS & VIDEO   hansonreporting.com
313-567-8100

1      pointed out that's a partial month.  If you know, would

2      you know if you had made the mortgage payments which on

3      here is listed as zero would your net income then have

4      been a negative for that month?

5  A.   No, there would have been income for that first eleven

6      days, as well.

7  Q.   As we sit here, do you know what that income would have

8      been?

9  A.   Not offhand, no.  But the advice I got I wasn't

10     responsible, accountable for that period being the

11     12th.

12  Q.   I'm just asking the question.

13  A.   That's why I don't know.

14  Q.   If I could get that exhibit back from you, please?

15     Thank you.

16     DEPOSITION MCINERNEY EXHIBIT NUMBER 8

17     MOR August 2011

18     WAS MARKED BY THE REPORTER

19     FOR IDENTIFICATION seven

20  A.   Are we going to go through everyone of these?

21  BY MR. ROBLE:

22  Q.   Yes.  Somewhat boring I know, maybe, but I'm just

23     trying to confirm things.  Let me start out with

24     Exhibit 8.  Does that appear to be your signature on

25     the August 31st, 2011 MOR in your case?

EXHIBIT 8

HANSON RENAISSANCE   hansonreporting.com
COURT REPORTERS & VIDEO   313-567-8100

1   A.    Yes.

2   Q.    And that's your handwriting on there?

3   A.    Yes.

4   Q.    And you provided that to your attorney Mr. Zousmer to

5         file with the court?

6   A.    Yes.

7   Q.    And it looks like it was filed with the court and it

8         indicates it's Docket Number 70 at the bottom, right?

9   A.    Right.

10   Q.    Thank you.  Now if you can turn again to the Operating

11         Statement, third page in.  Now, this shows it's for the

12         full month of August, right?

13   A.    Correct.

14   Q.    And for this month you've got a negative 2,589, right?

15   A.    Correct.

16   Q.    Again, at least on this MOR indicates that the mortgage

17         was not paid, correct?

18   A.    Correct.

19   Q.    Do you know was the 6,923 income?  There's two lines

20         there of income, the 6,923.  Do you know was that from

21         MEM Investments?

22   A.    Yes.

23   Q.    Do you know, it's got other income of 2,750, do you

24         know what that would have been from?

25   A.    I did not go back that far.

EXHIBIT 8

HANSON RENAISSANCE
COURT REPORTERS & VIDEO   hansonreporting.com
313-567-8100

1   Q.    That's all for that one.  I'll take it back.

2        DEPOSITION MCINERNEY EXHIBIT NUMBER 9

3        MOR September 2011

4        WAS MARKED BY THE REPORTER

5        FOR IDENTIFICATION

6   BY MR. ROBLE:

7   Q.    Similar questions, but I need to do this for all these.

8        This appears to be your MOR and I refer to MOR to

9        understand it to mean the Monthly Operating Reports?

10  A.    Correct.

11  Q.    It's the MOR for September of 2011.  Does this look

12       like your handwriting on the document?

13  A.    Yes.

14  Q.    And that's your signature?

15  A.    Yes.

16  Q.    And you would have provided this document to your

17       attorney Mr. Zousmer to file with the bankruptcy court?

18  A.    Yes.

19  Q.    And this was filed, it's Docket Number 79 on the

20       docket?

21  A.    Yes.

22  Q.    If you turn to the Operating Statement on Page 3 that's

23       got your income, salary 8,655.  Again, would you know

24       would that have been from MEM as far as you know?

25  A.    Yes.

HANSON RENAISSANCE
COURT REPORTERS & VIDEO
hansonreporting.com
313-567-8100

1  Q.  And then there's other income 3,481.  Any idea where
2      that was from?
3  A.  Not offhand, no.
4  Q.  This shows a net income at the bottom of $493.00,
5      right?
6  A.  Right.
7  Q.  However, I notice on here it shows zero on the mortgage
8      for that month, correct?
9  A.  Correct?
10 Q.  Would you agree if you'd made your mortgage payment for
11     that month this would have been a negative net income
12     for that month?
13 A.  Yes.
14 Q.  When was the last time you made a mortgage payment that
15     you recall on the property in Florida?
16 A.  I don't know.  I mean, we're going to go through these
17     one by one we'll get to it.
18 Q.  Well, I'm talking about Florida.
19 A.  I understand.
20 Q.  Okay.  Any idea if the last time you made it was
21     sometime in 2011 or 2010 or this year 2012?  I'm just
22     trying to narrow it down.
23 A.  I know 2011 there were payments, pre and post petition,
24     and again I believe in 2012.
25 Q.  You made some payments for the Florida mortgage, as

1       well?

2   A.   I don't remember offhand which ones I would have paid.

3   Q.   That's fine.  As we go over these I can ask you about

4        the mortgages.  On this one it says zero.  So

5        presumably you didn't make a mortgage payment for the

6        Michigan property and you didn't make a payment for the

7        Florida property at least for the month of September?

8   A.   Correct, right.

9   Q.   I'll just go back and show you Exhibit 8, same thing,

10       that shows no mortgage payment made for the month of

11       August, so no payment for the Michigan property, no

12       mortgage payment for the Florida property, correct?

13  A.   Correct.

14       DEPOSITION MCINERNEY EXHIBIT NUMBER 10

15       MOR October 2011

16       WAS MARKED BY THE REPORTER

17       FOR IDENTIFICATION

18  BY MR. ROBLE:

19  Q.   Same question, this looks like the MOR, at the top it

20       says October 2011.  Is this your handwriting on the

21       back?

22  A.   Yes.

23  Q.   And that's you signature?

24  A.   Yes.

25  Q.   And looks like this was filed or you provided this

HANSON RENAISSANCE
COURT REPORTERS & VIDEO
hansonreporting.com
313-567-8100

1      information to your attorney Mr. Zousmer to file in

2      your bankruptcy case?

3  A.    Correct.

4  Q.    And it looks like this was, in fact, filed as Docket

5      Number 118, right?

6  A.    Correct.

7  Q.    If you can turn to the same thing the Operating

8      Statement portion salary 8,655, would that have been

9      from MEM Investments at that time?

10  A.    Yes.

11  Q.    Other income 3,846, do you know what the basis for that

12      was?

13  A.    Not offhand.

14  Q.    Now, this does show a mortgage of 3,938 on here.  Do

15      you know which mortgage payment that was for?

16  A.    Not offhand.  It's two payments, but which mortgage

17      they apply to I don't know offhand.

18  Q.    When you say, they apply to, what are you talking

19      about?

20  A.    Which mortgage those paid I can't tell you offhand.

21  Q.    Well, you just said --

22  A.    Two payment are close in amount.  So it could have been

23      two payments in Michigan.  It could have been two

24      payments on the Florida mortgage.  It could have been

25      one of each.  I don't know that offhand.

12-04930-tjt   Doc 15   Filed 10/23/12   Entered 10/23/12 14:12:10   Page 124 of 192

EXHIBIT 8

HANSON RENAISSANCE
COURT REPORTERS & VIDEO
hansonreporting.com
313-567-8100

1  Q.    I'm just trying to clarify.  When you say two payments

2          and the approximate amount, are both the mortgage

3          payments first and second mortgages on the home in

4          Michigan around $1,800.00 approximately?

5  A.    No, the first mortgage on both the Michigan home and

6          the Florida home are about two grand, within 100 bucks

7          or so.

8  Q.    How about the second mortgages then for the Michigan

9          home and the Florida property how much are those

10         supposed to be?

11  A.    The Michigan home is about 400 bucks.

12  Q.    On the second mortgage?

13  A.    Yes.

14  Q.    How about on the Florida property?

15  A.    I think it's about 1,000.

16  Q.    I just want to make sure.  Who's the bank that's got

17         the primary mortgages on the Michigan and Florida

18         property?

19  A.    Northern Trust.

20  Q.    So you would have made this payment of 3,938 to

21         Northern Trust that's who you indicated was they?

22  A.    Correct.

23  Q.    And I understand as you sit here you don't know how

24         Northern Trust actually applied that payment?

25  A.    No, I don't know how I actually made the payment.  I

HANSON RENAISSANCE    hansonreporting.com
Court Reporters & Video    313-567-8100

1   don't know if I sent in two payments on the Florida --

2   on one or the other or one each mortgage.

3 Q. So you would have normally designated how you wanted it

4   applied, you as you sit here, you're just not sure

5   looking at this back in October 2011 how you split up

6   those payments?

7 A. Correct.

8 Q. And this again shows a negative income for that month

9   of 2,719, right?

10 A. Right.

11   DEPOSITION MCINERNEY EXHIBIT NUMBER 11

12   MOR November 2011

13   WAS MARKED BY THE REPORTER

14   FOR IDENTIFICATION

15 BY MR. ROBLE:

16 Q. All right.  Number 11.  This appears to be would you

17   agree this is the Monthly Operating Report, it's dated

18   at the top November 2011?

19 A. Yes.

20 Q. And that's your handwriting on the first page?

21 A. Yes.

22 Q. And that's your signature?

23 A. Yes.

24 Q. And you provided this to your attorney Mr. Zousmer to

25   file in your bankruptcy case?

HANSON RENAISSANCE
COURT REPORTERS & VIDEO   hansonreporting.com
313-567-8100

1    A.    Correct.

2    Q.    And it appears this was, in fact, filed as Docket

3          Number 142?

4    A.    Right.

5    Q.    If we can look at the Operating Statement for November

6          you've got a salary of 6,924.  As far as you know was

7          that from MEM Investments at the time?

8    A.    Yes.

9    Q.    And you've got other income of 12,250.  I'm looking at

10         as part of that MOR there's a detailed statement of

11         your bank account.  On 11-09 it shows a $10,000.00 ATM

12         deposit.  As far as you know would that $10,000.00 have

13         been the $10,000.00 for that month from the Archdiocese

14         of Detroit?

15   A.    As far I know, yeah, I don't know what else it would

16         be.

17   Q.    That would have been my other question.  Do you have

18         anyone else that would have paid you $10,000.00 that

19         month?

20   A.    No, that's off of that schedule that I provided the

21         other day.  What date did you say that was?

22   Q.    I'm just looking at the deposit.  It says 11-09 is when

23         it was deposited.

24   A.    Okay.

25   Q.    And as you just mentioned and we went over this which

1   was on Exhibit 2, and I can give that back to you if

2   you want, but that's your handwritten list that you

3   provided.  And you're right, it's through November, you

4   had 6,924 MEM Investments, $10,000.00 you received from

5   the Archdiocese, 2,250 from Kimberly McInerney, and

6   then you've got that Blue Cross Blue Shield, which it

7   isn't dollars given to you but it's coverage of your

8   insurance?

9   A.   Right.

10  Q.   And the MOR shows you have net income of 1,301 for that

11       month, correct?

12  A.   Correct.

13  Q.   Similar I'm presuming discussion.  It has mortgages in

14       the same exact amount 3,938.  Do you know what that

15       3,938 which mortgages were paid with that amount?

16  A.   Not offhand.

17  Q.   Meaning all of it could have been to Michigan, all of

18       it could have been to the Florida or could have been a

19       split between both?

20  A.   Correct.

21  Q.   Now, without your wife's support of the 2,250 that

22       month which made up part of your other income of 12,250

23       would you agree you would of had a negative income for

24       that month?

25  A.   If all the expenses were the same.

**EXHIBIT 8**

HANSON RENAISSANCE  *hansonreporting.com*
COURT REPORTERS & VIDEO    313-567-8100

1   Q.   Well, I'm just looking at the math as a hypothetical.

2          Your other income was 12,250, 10,000 of that is the

3          Archdiocese, right?

4   A.   Yeah, if all you did was take out the income then it

5          would be a negative number, right.

6   Q.   That's all I'm saying if you took out the income from

7          you wife that month 2,250, that 1,401 would turn into

8          some negative number?

9   A.   My only point is if I didn't have that income I

10         wouldn't have paid those expenses.

11   Q.   Fair enough.  I'm not quite done with that.  Any idea

12         looking at Exhibit 11 your total income on your MOR

13         says 19,174, right?

14   A.   Correct.

15   Q.   But your total deposits on the bank statement on your

16         checking account statement which is attached to the MOR

17         says 18,788, not a big difference but a few hundred

18         dollar difference.  Any idea where the difference came

19         from?

20   A.   No, but it's not income related.

21         DEPOSITION MCINERNEY EXHIBIT NUMBER 12

22         MOR December 2011

23         WAS MARKED BY THE REPORTER

24         FOR IDENTIFICATION

25   Q.   I've given to you what has been marked as Exhibit 12,

HANSON RENAISSANCE   hansonreporting.com
Court Reporters & Video   313-567-8100

1          the same initial set of questions, just says at the

2          top, it's handwritten, December 2011.  Is that your

3          handwriting on this document?

4     A.   Yes.

5     Q.   And that's your signature?

6     A.   Yes.

7     Q.   And this document was provided from you to Mr. Zousmer

8          to file in your bankruptcy case?

9     A.   Yes.

10    Q.   And the docket appears it was filed in your bankruptcy

11         case, Docket Number 158, right?

12    A.   Yes.

13    Q.   All right.  Looking at the salary on the Operating

14         Statement, it says 1,731, was that from MEM

15         Investments?

16    A.   Yes.

17    Q.   This was the last month which would have been I think

18         probably from the month of November, but was this the

19         last income that you received from MEM?

20    A.   Yes.

21    Q.   Then we've got other income of 22,000.  And I'm

22         referring back just to help myself to Exhibit Number 2

23         where you've written out the various amounts, 1,731

24         you've already confirmed is MEM, and then 20,000 of the

25         22 was from the Archdiocese of Detroit?

EXHIBIT 8
HANSON RENAISSANCE  hansonreporting.com
Court Reporters & Video   313-567-8100

1   A.   Correct.

2   Q.   And then the additional two grand was from Roncelli?

3   A.   Correct.

4   Q.   And again we already went over previously in another

5        exhibit you had something from Roncelli showing you've

6        got some income of two grand?

7   A.   Correct.

8   Q.   I'm just curious now, why were you paid 20,000 that

9        month from the Archdiocese when the contract says

10       you're only supposed to get ten grand?

11  A.   I don't know.  I think there was a catch up involved

12       somewhere along the way, that might have been the month

13       it happened.  Could have also been two checks.  I don't

14       remember offhand.  Could have been I deposited two

15       checks.  I don't remember.

16  Q.   But as far as you know that's all money that was owed

17       to you from the Archdiocese?

18  A.   Yes.

19  Q.   Would this have gone back to the services pursuant to

20       the contract that started in October?

21  A.   Yes.

22  Q.   Of 2011?

23  A.   Yes.

24  Q.   Now, as you look on there, you may want to, I'm just

25       noting for here, indicates mortgages zero.  So you

1        didn't pay the Michigan or Florida property, right?

2  A.    Apparently not.

3  Q.    Sorry?

4  A.    Apparently not.

5  Q.    Okay.  It has a positive 266.  But would you agree if

6        you had been able to or tried to pay that mortgage this

7        would of then had a negative income on here?

8  A.    Without any changes in the expenses, that's correct.

9  Q.    I'm looking at or let's look at on the Performance

10       Checking Account Statement attached to the MOR.  Do you

11       see that?  It says Page 9 of 12 at the bottom if that

12       helps.

13  A.    Yes.

14  Q.    We've got 1,632.98 deposit that appears to be from MEM,

15       right?

16  A.    Correct.  It's the net of 1,731.

17  Q.    Right.  I got that after some taxes were taken out.

18       That's fine.  And then we've got another deposit of 20

19       grand and that was from Archdiocese, correct?

20  A.    Yes.

21  Q.    And then you've got another deposit of 3,432.98, right?

22  A.    Yes.

23  Q.    Roncelli only gave you two grand.  Do you know where

24       the balance of that came from?

25  A.    Probably from my wife from her income.

HANSON RENAISSANCE
COURT REPORTERS & VIDEO
hansonreporting.com
313-567-8100

 1   Q.   As you sit here do you know for sure or are you

 2        speculating?

 3   A.   Speculating.

 4   Q.   Is there any other source other than your wife that the

 5        difference would be?

 6   A.   No, not that I can think of.

 7   Q.   I'm just noting, but on this Exhibit 2 for the month of

 8        December it doesn't show any income on there from your

 9        wife, does it?

10   A.   It's never been clear to me whether it's irrelevant or

11        not, but it was not clear to me whether I needed to

12        report her income or not.  So I did one month and then

13        I stopped doing that and then she stopped getting

14        income.

15   Q.   When you say it wasn't clear to you are you talking

16        about the time you were filling out the MORs it wasn't

17        clear?

18   A.   Correct.

19   Q.   Okay.  Sorry to make you look through it again.  I know

20        we're kind of plodding through these.  If you look at

21        your MOR again just one more question on the income

22        page, that Operating Statement, third page.  Where it

23        shows the 23,731 on your MOR that number is not

24        actually correct, is it?

25   A.   I don't understand.

HANSON RENAISSANCE
COURT REPORTERS & VIDEO
hansonreporting.com
313-567-8100

1    Q.    Well, we went over it.  You've got salary of 1,731 that

2          was from MEM and then minus the check we went over your

3          bank statement it says 1,632 after taxes.  Okay.  I get

4          that.  And on other income it says $22,000.00.  We

5          talked about the fact that 20,000 was from the

6          Archdiocese and there's a $20,000.00 deposit in your

7          checking account, so just doing the math, right?

8    A.    Yes.

9    Q.    And then you got another $2,000.00 which per your

10         document you provided, handwritten document, which is

11         Exhibit Number 2 showed another two grand from

12         Roncelli, Inc., and you provided me with another doc

13         looks like you got two grand from Roncelli, right?

14   A.    Yes.

15   Q.    But just doing the math this shows deposits of

16         $25,075.00, and you just indicated that the additional

17         amount above and beyond the 2,000 presumably would have

18         come from your wife?

19   A.    Correct.

20   Q.    So your income for that month wasn't 23,731 if you

21         included your wife's income that would have been

22         actually the amount of the deposits 25,000 something,

23         correct?

24   A.    Once again my income is 23,731.  If her funds were

25         deposited in my account to pay household expenses then

HANSON RENAISSANCE
COURT REPORTERS & VIDEO    hansonreporting.com
313-567-8100

1        I don't consider that to be income, my income.

2        DEPOSITION MCINERNEY EXHIBIT NUMBER 13

3        MOR January 2012

4        WAS MARKED BY THE REPORTER

5        FOR IDENTIFICATION

6    BY MR. ROBLE:

7    Q.    I'm showing you what's been marked as Exhibit 13.  It's

8          handwritten January 2012 at the top, right?

9    A.    Yes.

10   Q.    And that's your handwriting on this document?

11   A.    Yes.

12   Q.    And that's your signature?

13   A.    Yes.

14   Q.    And you provided that to your attorney to file in your

15         bankruptcy case?

16   A.    Yes.

17   Q.    And it looks like, in fact, this was filed as Docket

18         159 in your bankruptcy case, right?

19   A.    Yes.

20   Q.    We'll go to the Operating Statement page, Page 3.  Now,

21         this $20,000.00, I'm looking at your, again, Exhibit 2,

22         we tried to marry these things up, and that $20,000.00

23         was from the Archdiocese of Detroit, right?

24   A.    Right.

25   Q.    Same question I had last time.  The contract says

HANSON RENAISSANCE   hansonreporting.com
COURT REPORTERS & VIDEO   313-567-8100

1      you're only supposed to be paid $10,000.00. Any idea

2      why you got $20,000.00 this month?

3   A.   I deposited the December check and the January check in

4      the same month.

5   Q.   Now, this shows some positive net income of 5,938,

6      right?

7   A.   Right.

8   Q.   And this shows for this month you did make mortgage

9      payments of 3,938. Same thing, any idea, do you know

10      were those payments was that all for the Michigan, all

11      for the Florida or split?

12   A.   Don't know offhand.

13   Q.   Could have been any of those three options?

14   A.   Correct.

15   Q.   If we turn to the checking account summary which is

16      attached, are you there?

17   A.   Yes.

18   Q.   It's on Page 8 of 12. Now, those show deposits, two

19      deposits not round amounts, first one 10,473, the other

20      10,261.50. So above and beyond the 20,000 from the

21      Archdiocese any idea where the extra approximately

22      $700.00 came from that was deposited?

23   A.   No, don't recall. It wasn't income.

24   Q.   Could it have been from your wife?

25   A.   Could have been.

HANSON RENAISSANCE
COURT REPORTERS & VIDEO   hansonreporting.com
313-567-8100

1    Q.    If it wasn't from your wife is there any other source

2          of income that it would have come from?

3    A.    Could have been some kind of reimbursement for

4          something.  I don't remember offhand.  I don't know.

5          But it wasn't income, and it wasn't my wife's income

6          because she didn't have income then.

7    Q.    Okay.  And when you say it wasn't your wife's income

8          because she had no income then when was that?

9    A.    She stopped getting paid after the U.S., the Chapter 11

10          Trustee was appointed.

11    Q.    So you're talking about her pay was from MEM

12          Investments?

13    A.    Correct.

14    Q.    When approximately did she stop receiving pay?

15    A.    Late November or early December.

16    Q.    Same time as you essentially?

17    A.    Correct.

18    Q.    Let me take that back from you.  Thank you.

19          DEPOSITION MCINERNEY EXHIBIT NUMBER 14

20          Copy of Two Checks

21          WERE MARKED BY THE REPORTER

22          FOR IDENTIFICATION

23    BY MR. ROBLE:

24    Q.    I'm showing you what's been marked as Exhibit 14.  It's

25          two pages, copies of two checks, Check Number 10159 and

HANSON RENAISSANCE
COURT REPORTERS & VIDEO   hansonreporting.com
313-567-8100

1    10160 from Post Six Inc.  Can you confirm is that your

2    handwriting on those two checks?

3  A.  Yes.

4  Q.  Does that appear to be your signature?

5  A.  Yes.

6  Q.  As far as you know was that your actual handwritten

7    signature or was it a stamp with your name?

8  A.  Don't know.

9  Q.  Did the Post Six Bar or any of the other MEM entities

10    have a stamp with your signature on it that was

11    previously able to be used on documents?

12  A.  Yes.

13  Q.  Do you know where that stamp is?

14  A.  Today?

15  Q.  Sure.

16  A.  No.

17  Q.  Do you know where it was when you stopped working at

18    the bar back in November/December 2011?

19  A.  In a desk drawer in the office.

20  Q.  In Auburn Hills?

21  A.  Correct.

22  Q.  Would you be able to tell by looking at these documents

23    if this was your handwriting or the stamp?

24  A.  No.

25  Q.  Would it pretty much match your handwriting?

1  A.   Yeah, the stamp is a facsimile of my actual signature,

2       so it would be very similar.

3  Q.   And some of this I'm just trying to verify again with

4       your handwriting, on the 10159, I can see the amount

5       looks like $1,648.24, correct?

6  A.   Yes.

7  Q.   And is dated 1-15-12 or 1-18-12?

8  A.   1-15-12.

9  Q.   1-15-12.  It says pay to the order of BMW Financial

10      Services, right?

11 A.   Correct.

12 Q.   You used that check to make your car payment for a BMW?

13 A.   For two months.

14 Q.   For two months.  All right.  And again, some of the

15      same questions for Check Number 10160, I'm just

16      confirming it looks like $1,342.69 is the amount?

17 A.   Correct.

18 Q.   And that date looks also like 1-15-12?

19 A.   Correct.

20 Q.   That looks like you note, says, pay to the order of the

21      Detroit Athletic Club, correct?

22 A.   Yes.

23 Q.   You used that to pay your Detroit Athletic Club

24      membership for that month?

25 A.   Correct, for multiple months.

HANSON RENAISSANCE
COURT REPORTERS & VIDEO
hansonreporting.com
313-567-8100

1   Q.   Was that one month or was that a catch up on other

2         months?

3   A.   It was two or three.

4   Q.   When you were receiving a salary from MEM Investments,

5         did MEM Investments, when I say MEM I'm including which

6         is on here the Post Six and any other entities, you got

7         that?

8   A.   Got it.

9   Q.   Was the MEM Investments at the time you were receiving

10        salary were they paying, making car payments or was

11        that part of your income was also used to pay your car

12        payments?

13   A.   I would -- the business made my car payment for a

14        number of years.

15   Q.   Okay.

16   A.   And my DAC membership for a number of years.

17   Q.   All right.

18   A.   And there's a ordered entered early on in the MEM case

19        that permitted that, permitted a certain amount of

20        expenses to be paid by the company.

21   Q.   All right.  I'll take your word for it without knowing

22        what order that is but somewhere in the MEM case.  On

23        the date, though, mid January 2012 when these checks

24        were filled out you weren't working for MEM Investments

25        at that time, were you?

EXHIBIT 8

HANSON RENAISSANCE   hansonreporting.com
Court Reporters & Video      313-567-8100

1  A.   Yes, I was.

2  Q.   You were?

3  A.   Yes, I just wasn't getting paid a salary, but I was

4       working every day with the Chapter 11 Trustee's full

5       knowledge and, in fact, at his request.

6  Q.   Let me take a step back.  We went over already in the

7       MORs and your sheet here, the last time you received a

8       salary or monies from MEM Investments was back in,

9       well, November and crossed over into the first week of

10      December, though, right, of 2011?

11 A.   The reason, there was a mixup with respect to the last

12      check.  I met with Mr. Simon within three or four days

13      of when he was appointed which was about November 18th.

14 Q.   Mid November.

15 A.   And at that time he told me I was off the payroll.  I

16      had one more check coming from the prior week and that

17      check got voided and then I talked to him and said I'm

18      due for that last week and he agreed and I subsequently

19      was given that check.  That's why there's a couple week

20      delay.

21 Q.   That's fine.  I'm really not questioning that.  We went

22      over your MORs and I'm looking at your Exhibit 2 and

23      you indicated that a portion of your income for the

24      month of November was MEM Investments, right, and a

25      portion of your income for December 2011 was also MEM

HANSON RENAISSANCE   hansonreporting.com
COURT REPORTERS & VIDEO   313-567-8100

```
 1        Investments, again, the 1,737 amount and after the
 2        taxes were taken out it was 1,600 some dollars, right?
 3   A.   Correct.
 4   Q.   And now we're looking into January and January you
 5        weren't getting anymore income from MEM Investments,
 6        right?
 7   A.   I wasn't getting any salary.  I was off the payroll to
 8        use Simon's precise words.
 9   Q.   Did Mr. Simon authorize you then to fill out these two
10        checks and pay your personal bills with them when you
11        were off the payroll from MEM?
12   A.   No.
13   Q.   Why did you do it?
14   A.   Because I believed I was entitled to it.  He told me I
15        was off the payroll.  He never told me I wasn't
16        entitled to the expenses as I had been all along pre
17        and post petition.  Those expenses never came up.
18             I don't even know if he's aware of the order
19        that I just referred to a few minutes ago.  But they
20        were never addressed.  As far as I was concerned I
21        continued to be entitled to those expenses.  He
22        obviously took a different point of view when he
23        discovered those checks.
24   Q.   Okay.  I'm handing you back Exhibit Number 13 which is
25        the Operating Report for January.  If you'll look on
```

EXHIBIT 8

HANSON RENAISSANCE
COURT REPORTERS & VIDEO    hansonreporting.com
313-567-8100

1          the Operating Statement Page 3, do you see that?

2    A.    Yes.

3    Q.    Where on that Operating Statement does it show you made

4          the payment to the Detroit Athletic Club?

5    A.    It doesn't.  These are my personal expenses.  That was

6          an expense paid by the business.

7    Q.    Well, the expenses that's in your personal bankruptcy

8          and you're supposed to be indicating what your expenses

9          are for the month that you paid something for, you

10         indicated you paid for you BMW, but that's not in your

11         Monthly Operating Report?

12   A.    It was an expense that was paid by the business for a

13         long time.  It wasn't a personal expense.  If the

14         business wasn't paying it it would be a personal

15         expense but the business was for years.

16   Q.    But MEM didn't at this time in January 2011, nobody

17         from MEM went and paid these payments for you to BMW,

18         for the Detroit Athletic Club, right, you did that

19         yourself, you made the payment?

20   A.    Correct, just like I did in the past, no difference.

21   Q.    On your MEM it shows your recreation and clubs is only

22         199 a month, right?

23   A.    In that month?

24   Q.    Right.

25   A.    Yes.

HANSON RENAISSANCE
COURT REPORTERS & VIDEO
hansonreporting.com
313-567-8100

1   Q.   Likewise, I know it's your same argument presumably,

2        but this doesn't show 1,342 that went to the Detroit

3        Athletic Club, right?

4   A.   Correct. Same reason. None of the MORs in my personal

5        Chapter 11 reflect expenses paid by the business.

6   Q.   And that was going to be another question. I didn't

7        see anything payable to the Detroit Athletic Club in

8        other previous MORs?

9   A.   It's not there because it's a business expense.

10   Q.   Would it be fair to say a large portion or possibly

11       all, I don't know, where it says recreation, clubs, was

12       that for the Bloomfield Hills Country Club?

13   A.   Probably. It wasn't the DAC.

14   Q.   Okay. I'll take those back from you.

15       DEPOSITION MCINERNEY EXHIBIT NUMBER 15

16       MOR February 2012

17       WAS MARKED BY THE REPORTER

18       FOR IDENTIFICATION

19 BY MR. ROBLE:

20   Q.   Similar questions as with the other MORs. It says

21       February 2012 on here. Is this your handwriting on the

22       top page?

23   A.   Yes.

24   Q.   And that's your signature?

25   A.   Yes.

HANSON RENAISSANCE
COURT REPORTERS & VIDEO   hansonreporting.com
313-567-8100

1   Q.   And this was part of a document that you had provided

2        to your attorney Mr. Zousmer to file in your personal

3        bankruptcy case?

4   A.   Yes.

5   Q.   And, in fact, this looks like it was filed as Docket

6        Number 186, right?

7   A.   Yes.

8   Q.   Going to Operating Statement for income, income says

9        13,213, right?

10  A.   Correct.

11  Q.   I'm looking at your handwritten list you provided which

12       was Exhibit Number 2 that shows $10,000.00 from the

13       Archdiocese, right?

14  A.   Right.

15  Q.   Okay.  And then you got in there $3,200.00, I'm looking

16       at Exhibit 2, $3,200.00 from Roncelli Inc., and you

17       provided a document as a previous exhibit that showed

18       Roncelli paid you about $3,200.00, right?

19  A.   Right.

20  Q.   And this again does show that you made 3,938 for

21       mortgages.  Same thing as before, you're not as you sit

22       here you don't know how that amount was split up

23       between the two properties?

24  A.   Correct.

25  Q.   Now, for this month it shows net income of negative

HANSON RENAISSANCE
COURT REPORTERS & VIDEO
hansonreporting.com
313-567-8100

1        4,570, right?

2   A.   Right.

3   Q.   When you look at the checking account statement which

4        is attached if you go to Page 8 again?

5   A.   Yes.

6   Q.   Now, that only shows deposits of $5,833.57.  At the top

7        is the balance summary and it's got the two deposits

8        right down at the bottom on the same page.  Any idea

9        why the discrepancy?  Why does it only say 5,833.57

10       when you got at least $10,000.00 from the Archdiocese

11       for that month and the other 3,200 from Roncelli?

12  A.   Well, because I'm assuming that that's because the

13       dates on the bank account statement don't coincide with

14       the calendar months.

15  Q.   Okay.  Any idea while we're looking at again deposits

16       shows 3,213 which is pretty close to the Roncelli

17       3,200, I'm presuming that's from Roncelli, would you

18       agree that's probably correct?

19  A.   Yes, 13 bucks is some odd check.  But I don't know what

20       that is.  3,200 is the Roncelli money.

21  Q.   Right.  Now, 2,599 where would that have come from?

22  A.   That was deposited in January, so January 30th.  If you

23       look at the January MOR you'll see a negative under tax

24       expense of 2,799.  I deposited that check and took

25       $200.00 bucks in cash back.

HANSON RENAISSANCE   hansonreporting.com
COURT REPORTERS & VIDEO   313-567-8100

1   Q.   Let me just understand when you say negative I know

2        what you're talking about?

3   A.   Refund.

4   Q.   So that was actually money to you, not an actual

5        payment to the withholding?

6   A.   Correct.

7   Q.   So that's a deposit?

8   A.   It was a refund from -- I can't remember exactly, I

9        would assume the IRS, but.

10  Q.   Could have been state?

11  A.   Could have been, I don't think so, but could have been.

12       And so I showed it as a negative under expense.  I

13       don't consider a tax refund income.  It's an offset

14       against expense, that's how I reflected it.

15  Q.   I understand.

16  A.   And then the $200.00 difference is $200.00 in cash.

17  Q.   All right.

18  A.   And I think if we looked at the January statements for

19       the prior month it would show $10,000.00 deposit late

20       in the month.

21  Q.   Well, I'll can show you.  I'm looking at the January

22       MOR which is Exhibit Number 13.  It shows 10,473

23       deposit on 1-03 and then a 10,261.50 deposit on 1-23.

24       I'm showing you that, do you agree?

25  A.   Yeah.  And then similarly back to your original

HANSON RENAISSANCE   hansonreporting.com
Court Reporters & Video   313-567-8100

1 question would be on the March MOR because the time

2 periods don't line up it would be a deposit in late

3 February that's after this statement period ended for

4 the ten grand for February.

5 Q. Okay.  We're getting to that so we'll look at that

6 next.

7 DEPOSITION MCINERNEY EXHIBIT NUMBER 16

8 MOR March 2012

9 WAS MARKED BY THE REPORTER

10 FOR IDENTIFICATION

11 BY MR. ROBLE:

12 Q. Same question as before.  It says March 20, 2012 on the

13 front page with various writing.  Is that your writing

14 on the front page of this document?

15 A. Yes.

16 Q. And that's your signature?

17 A. Yes.

18 Q. And this information, this document was provided by you

19 to your attorney in your personal bankruptcy case --

20 A. Yes.

21 Q. -- for filing?  And it appears it was actually filed as

22 Docket Number 211, correct?

23 A. Right.

24 Q. Now going to the Operating Statement portion, income

25 $10,000.00 that was from the Archdiocese, right?

HANSON RENAISSANCE
COURT REPORTERS & VIDEO
hansonreporting.com
313-567-8100

1   A.   Correct.

2   Q.   It shows no withholding that month, right?

3   A.   Right.

4   Q.   And also no mortgages whether it was Michigan or

5        Florida not paid that month?

6   A.   Right.

7   Q.   Net income of 423, right?

8   A.   Correct.

9   Q.   Let's see.  Based on what you said previously for

10       whatever reason doesn't look like it does line up

11       because this shows on the bank statement which is

12       attached to this, it shows a deposit 10,506.02, it only

13       shows one 10,000 deposit during this timeframe?

14  A.   That's consistent with what I said.  You were looking

15       for the February payment earlier.  There it is,

16       February 27th.

17  Q.   And any idea where this extra 506.02 came from on

18       deposits?

19  A.   No, not offhand.

20  Q.   Could it have come from your wife?

21  A.   Could have.

22  Q.   Was she receiving income this date as of March?

23  A.   No.

24  Q.   Would you agree that if, in fact, a payment had been

25       made or there had been money to pay the mortgage amount

1        if you took that out this would have been another

2        negative net income for that month?

3  A.    Yes.

4  Q.    Okay.  I'll have that back, please.  I'm going to go

5        back to Exhibit 2 for you because we don't have again

6        the April or the May MORs filed yet.  I'm looking at

7        Exhibit 2 which I've given back to you.  On April it

8        says on there $10,000.00.  Is that what you received in

9        the month of April as income from the Archdiocese?

10  A.    Yes.

11  Q.    And then there was another $2,200.00 apparently from

12        that entity that your wife has an interest in?

13  A.    Correct.

14  Q.    Did you pay the mortgage payments on either the Florida

15        or Michigan home in the month of April?

16  A.    I don't know offhand.  I don't believe I paid Florida

17        but I think I paid Michigan but I would have to look at

18        the report.

19  Q.    Do you know, did you have a net positive income that

20        month or a negative?

21  A.    Don't know.

22  Q.    Similar questions for I'm looking at Exhibit 2 in May,

23        you've indicated you received another ten grand just

24        last month from the Archdiocese, right?

25  A.    Correct.

EXHIBIT 8

HANSON RENAISSANCE   hansonreporting.com
COURT REPORTERS & VIDEO   313-567-8100

```
 1   Q.   It shows another $1,000.00 from your wife's company

 2        again for services performed, right?

 3   A.   Correct.

 4   Q.   We're just talking last month.  Do you recall, did you

 5        make a payment on your mortgage for the Michigan or

 6        Florida home last month?

 7   A.   I don't recall.

 8   Q.   Do you know if you had a net positive or negative

 9        income for the month of May?

10   A.   Not offhand.  I haven't even done the MOR yet since

11        it's not due for a couple more days.

12   Q.   I know.  But I figured the month of May is over, so you

13        might have known what you did for last month?

14   A.   No.

15   Q.   Now, this isn't on your statement here.  I'm going to

16        talk about the month of June.  Did you have any income

17        so far for the month of June?

18   A.   Aside from the Archdiocese?

19   Q.   I'm asking any income?

20   A.   I have income from the Archdiocese.

21   Q.   My next question was from what source?

22   A.   And I can't remember if there's anything else so far.

23   Q.   Do you know how much the Archdiocese paid?

24   A.   10,000.

25   Q.   Do you know when they paid you?
```

HANSON RENAISSANCE
COURT REPORTERS & VIDEO   hansonreporting.com
                          313-567-8100

```
 1   A.    Friday.

 2   Q.    So it was June 15th, right?

 3   A.    Yes.

 4   Q.    Have you made the mortgage payment for your home in

 5         Michigan or Florida for this month?

 6   A.    I can't remember.  I mean, I could guess, but I don't

 7         want to guess.

 8   Q.    I appreciate that.  Do you plan on paying your mortgage

 9         for the Michigan or Florida home?

10   A.    Michigan.

11   Q.    Michigan.  From the beginning of the month of June to

12         today do you have any other source of income other than

13         the Archdiocese?

14   A.    Not that I recall.

15   Q.    Do you expect to have any source of income from today

16         to the end of this month?

17   A.    Not I can recall or can think of.

18   Q.    Well, have you done anything for someone that they

19         would owe you some money that should be paid between

20         now and the end of the month?

21   A.    I don't know, I don't know.

22   Q.    I'm sorry if I already asked you this.  Do you know if

23         you're going to have a positive net income for the end

24         of this month?

25   A.    No idea.
```

EXHIBIT 8

HANSON RENAISSANCE
COURT REPORTERS & VIDEO
hansonreporting.com
313-567-8100

```
 1              MR. ROBLE:  I want to take just a couple
 2         minute break.  I'm going to summarize some things based
 3         on your answers.
 4                        (An off-the-record
 5                         discussion was held.)
 6    BY MR. ROBLE:
 7    Q.   We're back on the record.  I've handed you Exhibits 7
 8         though 16.  I'm just trying to summarize some things
 9         based upon your testimony and the documents you got in
10         front of you.
11              Would you agree that from July 2011 the first
12         MOR that's in there through March 2012 which is the
13         last MOR we have in there, that you had at least per
14         the MOR positive cash flow for six of the months and
15         negative cash flow for three of those months.
16    A.   Sounds about right.  I wasn't counting them.
17    Q.   Okay.  They say what they say?
18    A.   Right.
19    Q.   Based on what we just went over for April you don't
20         know if you had a positive cash flow for April?
21    A.   Correct.
22    Q.   But hopefully everybody will know if you file the April
23         MOR soon?
24    A.   Correct.
25    Q.   For May, the same, you don't know if you had a positive
```

EXHIBIT 8

HANSON RENAISSANCE   hansonreporting.com
COURT REPORTERS & VIDEO   313-567-8100

1      cash flow for May?

2  A.  Haven't done the MOR.

3  Q.  And we're in June, so you don't know for this month?

4  A.  Correct.

5  Q.  Would you also agree that if you had made your mortgage

6      payments for the Michigan or the Florida property the

7      cash flow that was positive for four out of the six

8      months those MORs would have been negative?

9  A.  If the expenses stayed the same.

10 Q.  Right.  But looking at the --

11 A.  But once again, ballpark, yeah.

12 Q.  Just looking at the numbers on the MOR if it says zero

13     for the mortgage if you had to throw in any amount of

14     the normal mortgage payment, you've got four months as

15     far as if you would agree out of the six months there

16     where it looked like you had a positive, if you made

17     the mortgage payment it would have turned it into a

18     negative, right?

19 A.  Simple terms, correct.

20 Q.  Just doing the math.  What is your anticipated source

21     of income next month in July?  How much?

22 A.  10,000 from the Archdiocese, and I don't know

23     otherwise.

24 Q.  My next question.  As we sit here today you don't know

25     where your income will come otherwise then from the

HANSON RENAISSANCE
COURT REPORTERS & VIDEO   hansonreporting.com
313-567-8100

1        Archdiocese for next month?

2   A.   Not prepared to discuss it is really my answer.  I'm

3        working on some things and they're not finalized and

4        I'm really not prepared to, I'm not comfortable

5        discussing that without counsel because it obviously

6        relates to the subject matter with the hearing.

7   Q.   Well, that's true and I think that's probably why the

8        court authorized my office to take your dep today and

9        then counsel here also to be able to ask questions

10       about that because it is certainly relevant and

11       pertinent to the upcoming evidentiary hearing.

12  A.   My understanding the scope of the order was income in

13       the past.  It certainly was the subject of the document

14       request.

15  Q.   I would tend to agree with you on the latter, but not

16       the former.  What I'm looking at is Exhibit 1 which is

17       the order and I'll show you.  It says you're here for

18       your Bankruptcy Rule 2004 Exam at your prior counsel's

19       offices which we're here today at 12:00, and then it

20       has a separate order about producing certain documents,

21       lists, etcetera.

22  A.   Doesn't say anything about prospective income that I

23       saw.

24  Q.   Yes.  But it doesn't say anything about any limitations

25       either, does it?

1   A.   No.

2   Q.   Okay.  I'll go back to my question, which is other than

3        from the Archdiocese next month who do you expect to

4        get income from and how much do you expect it to be for

5        July?

6   A.   I think I've already answered that.

7   Q.   Well, let me put it this way, are you answering it by

8        refusing to answer it?

9   A.   I'm answering the way I answered it.  Should we read it

10       back?

11  Q.   Sure.

12                    (The requested portion of the

13                     record was read by the reporter.)

14  A.   That's my answer.

15  BY MR. ROBLE:

16  Q.   Let me just be clear.  So other than you saying you're

17       not comfortable giving me that information without

18       having counsel you're not going to answer the question

19       beyond what you just said?

20  A.   That's correct.

21  Q.   Okay.  I'm not going to beat a dead horse.  All right.

22       I'm going to have the same questions for how about

23       August 2012, what's your anticipated source of income

24       coming up in August?

25  A.   My answer would be the same answer.

HANSON RENAISSANCE   hansonreporting.com
COURT REPORTERS & VIDEO   313-567-8100

1   Q.   Do you expect, though, in August to receive income from
2        the Archdiocese or don't you know?
3   A.   Yes.
4   Q.   So other than the Archdiocese your answer is what
5        you've previously said?
6   A.   Correct.
7   Q.   So I'm not beating a dead horse and taking up time,
8        would your answer be the same for the foreseeable
9        September, October, November, December to the end of
10       this year?
11  A.   Yes.
12  Q.   Okay.  How about starting in 2013?  So starting next
13       year, any idea where is your source of income coming
14       from?  Archdiocese?
15  A.   The same answer.  No, I don't know about the
16       Archdiocese, that's on a month-to-month basis as we've
17       already covered.  That income will go away when I
18       complete the responsibilities of the consulting
19       assignment, but that's not clear as to when that's
20       going to be.
21  Q.   Would you agree that your primary source of income has
22       been the Archdiocese since approximately November 2011
23       to the present?
24  A.   Primary in terms of dollars, yes.
25  Q.   Right.

EXHIBIT 8

HANSON RENAISSANCE   hansonreporting.com
COURT REPORTERS & VIDEO   313-567-8100

1   A.   Yes.

2   Q.   And that, in fact, the Archdiocese is presently your

3        primary source of income?

4   A.   Correct.

5   Q.   However, as you've also alluded to that the

6        Archdiocese, you're on a month-to-month basis so upon

7        30 days notice they could stop paying you if they chose

8        to, right?

9   A.   Sure.

10  Q.   You've got no guarantees from the Archdiocese that

11       they're going to continue paying you anything past this

12       month?

13  A.   It's on a thirty day notice period, right.

14  Q.   I'm just asking, have you received a notice, any type

15       of notice they're going to stop payment?  Have they

16       given you that thirty day notice?

17  A.   No, to the contrary.  They want me to finish the

18       consulting assignment.

19  Q.   When is that anticipated to be done?

20  A.   That's what's unclear.  It's indefinite.

21  Q.   You don't have any idea?  It could be two months from

22       now, six months from now, ten years from now?

23  A.   No, it's less than ten years, more than two months.

24  Q.   Less than a year or do you expect it to be going on

25       through 2013?

**EXHIBIT 8**

HANSON RENAISSANCE
COURT REPORTERS & VIDEO   hansonreporting.com
313-567-8100

```
 1   A.   Probably less than a year.

 2   Q.   All right.

 3   A.   But there's also a possibility that the nature of the

 4        consulting assignment will change and it could extend

 5        out beyond what was originally was anticipated which

 6        could result in it's extending, you know, beyond what

 7        it was originally contemplated.

 8   Q.   But as we sit here today other than the contract you've

 9        provided a copy with of the Archdiocese which says it's

10        on a month-to-month basis, it's Exhibit 5, right, we

11        went over today?

12   A.   Correct.

13   Q.   Other than that document showing the source of income

14        you don't have anything else that you've been able to

15        provide to show any type of ongoing source of income,

16        right?

17   A.   Correct.

18   Q.   No contracts or anything that you presently have to do

19        work for Roncelli?

20   A.   I have an ongoing but intermittent consulting

21        assignment with Roncelli.

22   Q.   Is that in writing?

23   A.   No.

24   Q.   Same for, who else, the SPCE?

25   A.   Correct.
```

1  Q.   SPCE same thing, do you have anything in writing as far
2       as consulting services for them?
3  A.   No.
4  Q.   As we sit here, do you have proof or guarantee that
5       your income is going to continue beyond what it is
6       right now for any length of time in the future?
7  A.   The answer to that is the same answer I already
8       provided.
9  Q.   Going back, I'm paraphrasing, but essentially you're
10      uncomfortable taking about it without having an
11      attorney?
12 A.   Correct.
13 Q.   And other than we've also discussed the Archdiocese?
14 A.   Correct.  And I'm working on some things but nothing
15      finalized.
16 Q.   But you got no proof of that to provide to me today as
17      we sit here?
18 A.   That's correct.
19            MR. ROBLE:  I believe that is all I have for
20      the moment.  Per the court order I'll let these
21      gentlemen ask some questions if they want.  I may
22      followup once they're done, I may have some followup
23      questions, but for now, thank you.
24            MR. FOLEY:  Would you mark this as
25      Exhibit 17, please?

HANSON RENAISSANCE   hansonreporting.com
COURT REPORTERS & VIDEO   313-567-8100

 1      DEPOSITION MCINERNEY EXHIBIT NUMBER 17

 2      Order

 3      WAS MARKED BY THE REPORTER

 4      FOR IDENTIFICATION

 5  EXAMINATION BY MR. FOLEY:

 6  Q.    Mr. McInerney, I handing you what I've marked as

 7        Exhibit Number 17.  Just to refresh the record, I'm

 8        Attorney Foley.  I'm an attorney here on behalf of

 9        Creditor Charles Becker.

10            Can you please read the fourth paragraph

11        down, not the last, the one up from the bottom?

12  A.    It's further ordered that Becker is granted leave to

13        question debtor at the 2004 Examination regarding any

14        and all of his alleged business prospects, investments,

15        and/or future sources of income.

16  Q.    Thank you.  I'll take that back.

17            MR. FOLEY:  Can we mark this as Exhibit 18,

18        please?

19      DEPOSITION MCINERNEY EXHIBIT NUMBER 18

20      Reorganization & Disclosure Statement

21      WAS MARKED BY THE REPORTER

22      FOR IDENTIFICATION

23  BY MR. FOLEY:

24  Q.    Can you please turn to the very last page?  Actually

25        can you turn to the first page and identify that

HANSON RENAISSANCE
COURT REPORTERS & VIDEO    hansonreporting.com
313-567-8100

```
 1          document for me?
 2   A.     It's Debtors First Amended Combined Plan of
 3          Reorganization and Disclosure Statement.
 4   Q.     Are you familiar with this document?
 5   A.     Have I seen it before, yeah.  Have I read it recently,
 6          no.
 7   Q.     Can you describe what it is?
 8   A.     I just did.  It's a plan of reorganization and
 9          disclosure statement.
10   Q.     Did you participate in the preparation of this
11          document?
12   A.     Yes.
13   Q.     Please turn to the very last page of the document, it
14          should be Page 40 of 40.  Can you give me the title of
15          that document?
16   A.     Michael E. McInerney Forecast.
17   Q.     This was filed in 2012, is that correct?
18   A.     Correct.
19   Q.     So it's safe to presume that year one is 2012?
20   A.     No.
21   Q.     What year is year one, then?
22   A.     Year one is the first year after the conformation of
23          the plan.
24   Q.     Okay.  So this is confirmation of the plan forward?
25   A.     Correct.
```

1   Q.   It appears you list two sources of income.  One is

2         earnings and one is investments.  Can you describe for

3         me what each of those are and the distinction between

4         the two?

5   A.   Earnings is just that, earned income, and investments

6         is income from investments.

7   Q.   Okay.  How do you go about earning income, you

8         personally, that wasn't a general question?

9   A.   I don't get the question.

10   Q.   Well, you have earnings and when I asked you what it

11         was you said it's income that you've earned.  So I'm

12         asking you --

13   A.   From employment or consulting engagements.

14   Q.   When is the last time you were employed not in an

15         independent contract position?

16   A.   I was employed with MEM Investments for several years.

17   Q.   When did that end?

18   A.   November of 2011.

19   Q.   Since that time how have you earned earnings?

20   A.   I've answered that question in great detail.

21   Q.   No, I don't believe you have.

22   A.   Yes, I have.

23   Q.   Where do you make your money from?

24   A.   We've just spent two hours going through that.

25   Q.   So you're not giving me an answer?

HANSON RENAISSANCE
COURT REPORTERS & VIDEO   hansonreporting.com
313-567-8100

1   A.   I've given you an answer.  Start over.

2   Q.   Since November 2011 --

3   A.   Besides that, what does that got to do with the fourth

4        paragraph that you just had me read?

5   Q.   I'll get to that whenever I want.  I don't have to do

6        that.

7   A.   That limits the scope of your questions, and you're

8        already off.

9   Q.   In year two --

10  A.   Not to mention it's redundant.

11  Q.   You have a lot of legal knowledge for somebody that's

12       afraid to answer questions without an attorney present.

13       I'd just like to observe that.  Year two you predict

14       $150,000.00 in income, this would be future income.

15       Can you tell me where you predict that investment

16       income would come from in year two?

17  A.   I expect to recover from your client and invest that

18       money and make a return on the investment.

19  Q.   Can you be more clear you expect to recover from my

20       client?

21  A.   I'm sorry.

22  Q.   Can you clarify what you expect to recover from my

23       client?

24  A.   There's a lawsuit pending between your client and me.

25       I'm owed a lot of money.  I expect to recover.

EXHIBIT 8
HANSON RENAISSANCE   hansonreporting.com
COURT REPORTERS & VIDEO   313-567-8100

1  Q.   But you owe Mr. Becker a lot of money?

2  A.   I owe him a lot less than he owes me.

3  Q.   Do you have a judgement you can provide me showing me

4       that?

5  A.   No.

6  Q.   Okay.  So you predict you're going to recover

7       $150,000.00 in year two from my client?

8  A.   No, I forecast that.  This is a forecast.  The forecast

9       contemplates what I just said investment income on a

10      substantial recovery from your client.

11 Q.   But you predict $150.000.00?

12 A.   I didn't predict anything.  I forecast.

13 Q.   Okay.  You forecast $150,000.00 in year two?

14 A.   For the third time, that's correct.

15 Q.   So you predict in year two to recover $150,000.00 from

16      my client or is there some alternate arrangement?

17 A.   No, I've answered that three times now.  I expect a

18      recovery, a substantial amount of money, I expect to

19      invest that money and make $150,000.00 with the

20      investment income on it.

21 Q.   Using what you expect to recover from my client, which

22      you'd like to make investments, which will then yield

23      you $150,000.00?

24 A.   That is correct.

25 Q.   The earnings then is that primarily then from

1          consulting work?

2     A.   Consulting or employment.

3     Q.   Do you have any employment prospects at this time?

4     A.   Not that I'm prepared to discuss for the same reasons

5          that I indicated to Mr. Roble.

6     Q.   Do you believe you have a valid objection to answering

7          these questions?

8     A.   I gave you my answer.

9     Q.   Are you an attorney licensed to practice in the State

10         of Michigan.

11    A.   Yes.

12    Q.   Okay.  And you don't believe you have any valid

13         objections, then?

14    A.   I don't know about objections.  I've given you my

15         answer.

16    Q.   Your answer is you refused to testify without an

17         attorney present?

18    A.   That's what my answer was.

19    Q.   Okay.  In April 2011 did you have consulting income

20         from SPCE LLC?

21    A.   I don't remember.  I could take a look at the sheet.

22              MR. ROBLE:  I'm giving you Exhibit 2.

23    A.   Yes.

24    BY MR. FOLEY:

25    Q.   What did you do to earn that money?

```
 1   A.    Negotiated with Andiamo concerning an earn out

 2         obligation that they have to company.

 3   Q.    What was the result of that negotiation?

 4   A.    It's ongoing.

 5   Q.    It May 2012 were you paid $1,000.00 from SPCE LLC?

 6   A.    Yes.

 7   Q.    And what was that for?

 8   A.    Same thing.

 9   Q.    When do you predict that those negotiations will be

10         resolved?

11   A.    I don't know.

12   Q.    Over six months?

13   A.    I'm not making predictions.

14   Q.    You have no idea?

15   A.    No idea.

16   Q.    Is anyone else handling the negotiations?

17   A.    No.

18   Q.    Is there anybody else we could ask that would have the

19         ability to predict when the negotiations would be

20         wrapped up?

21   A.    No, not that I know of.

22   Q.    What does SPCE LLC currently do?

23   A.    Nothing.

24   Q.    Do they generate income?

25   A.    SPCE is collecting on a contract with Andiamo
```

HANSON RENAISSANCE   hansonreporting.com
COURT REPORTERS & VIDEO   313-567-8100

```
 1         associated with the sale of the business a year and a
 2         half ago.
 3    Q.   How much money is left on that sales contract?
 4    A.   I don't remember.  I don't know offhand.
 5    Q.   Is the hold up in the negotiations with Andiamo over a
 6         monetary amount?
 7    A.   Yes.
 8    Q.   What is the number that they propose and what is the
 9         number that you are proposing?
10    A.   Can remember offhand.
11    Q.   Is in the $10,000.00 range?
12    A.   No, it's more than that.
13    Q.   Hundreds of thousands of dollars?
14    A.   Probably not.
15    Q.   Less than $200,000.00?
16    A.   Yes.
17    Q.   To be paid to SPCE LLC?
18    A.   Correct.
19    Q.   Okay.  Other than negotiating that for SPCE LLC, do you
20         intend to do any other work for them?
21    A.   No.
22    Q.   And in February 2012 did Roncelli Incorporated pay you
23         $3,200.00?
24    A.   Yes.
25    Q.   What did you do to earn that money?
```

EXHIBIT 8
HANSON RENAISSANCE
Court Reporters & Video
hansonreporting.com
313-567-8100

1  A.    Provided consulting services to the company.

2  Q.    I'm going to ask you some questions here.  I expect

3        that you're going to tell me that you don't want to

4        answer them and that's fine.  I want to make a record

5        of them.

6              Do you have any prospects for independent

7        consulting work?

8  A.    Same answer as before.

9  Q.    How many prospects do you have for independent

10        consulting work?

11  A.    Same answer as before.

12  Q.    What is the likelihood that any of these come to

13        fruition and you're able to continue doing contract

14        work?

15  A.    Very good.

16  Q.    Do you intend to retain counsel in this matter?

17  A.    Not sure.

18  Q.    So you won't answer these questions without retaining

19        counsel and you're not sure if you're going to retain

20        counsel?

21  A.    First of all, that's not what I said as far as

22        answering the questions, and second of all, no, I'm not

23        sure as I just said about retaining counsel.

24  Q.    Under what circumstances would you be ready to answer

25        these questions regarding your future prospects for

```
 1         consulting work?
 2   A.    Finalizing one of the things that I'm working on that I
 3         alluded to repeatedly and possibly retaining counsel,
 4         and possibly not.
 5   Q.    So none of them are finalized?
 6   A.    That's what I've said a couple of times.
 7   Q.    And if they're finalized you still may not be willing
 8         to testify about it without counsel?
 9   A.    Not going to speculate about that.
10   Q.    Well, you're not answering the questions --
11   A.    Evidentiary hearing I'm going to have to.
12   Q.    You're in a deposition right now and you're still
13         refusing to, so that doesn't mean a lot to me.  Are you
14         aware that you're in a Chapter 11 Bankruptcy right now?
15   A.    Yes.
16   Q.    Are you aware that you have a duty in the order to make
17         your plan confirmable to prove that you have sources of
18         income that can sustain that plan?
19   A.    Sure.
20   Q.    Okay.  Are you aware that you've provided no evidence
21         that you have any ongoing prospect for future income
22         from consulting?
23   A.    So far.
24   Q.    Do you plan to provide those at the confirmation
25         hearing?
```

HANSON RENAISSANCE
COURT REPORTERS & VIDEO   hansonreporting.com
313-567-8100

1   A.   Yes.

2   Q.   Do you plan to exchange exhibits prior to that?

3   A.   I plan to comply with the court's order.

4   Q.   That's this Thursday.  Do you plan to have that

5        finalized by Thursday to exchange those contracts?

6   A.   I plan to comply with the court's order.

7   Q.   Are they going to be ready by this Thursday?

8   A.   Whatever I have by Thursday I will provide.

9   Q.   And if it's not provided by Thursday are you going to

10       try to introduce it at the confirmation hearing?

11  A.   If it's finalized after then, yes.

12  Q.   Are you going to make that person available for

13       deposition?

14  A.   I'm not going to do anything to that person.

15  Q.   The person that's going to give you as you said very

16       likely a source of continuing income are they going to

17       be present at the confirmation hearing to answer

18       questions?

19  A.   I have no idea.

20  Q.   Are you going to ask them to be present at the

21       confirmation hearing?

22  A.   I have no idea.

23  Q.   You don't know whether or not you're going to ask a

24       witness to come to the confirmation hearing that's next

25       week?

EXHIBIT 8
HANSON RENAISSANCE   hansonreporting.com
Court Reporters & Video   313-567-8100

1   A.    I don't know.

2   Q.    Why do you not know?

3   A.    Because I don't know.

4   Q.    Well, you don't know because you haven't confirmed the

5         deal yet?  You don't know because it's not part of your

6         strategy?

7   A.    I don't know.

8   Q.    When do you expect to have this deal wrapped up?

9   A.    I've already answered that.

10  Q.    No, you haven't.  When do expect to have the deal

11        wrapped up?

12  A.    Prior to the confirmation hearing.

13  Q.    All right.  Do you currently have any investments that

14        are generating revenue for you?

15  A.    No.

16  Q.    When you developed this forecast what did you base that

17        $200,000.00 figure on?

18  A.    An estimate.

19  Q.    What was the basis for that estimate?

20  A.    My belief that I will earn that level of income.

21  Q.    What was your belief based on?

22  A.    My past experience.

23  Q.    You've been earning about $10,000.00 a month right now

24        which totals about $120,000.00 a year, so why did you

25        believe --

HANSON RENAISSANCE   hansonreporting.com
Court Reporters & Video   313-567-8100

```
 1   A.    That's for the last six or eight months.
 2   Q.    I wasn't done with the question.  Why did you believe
 3         you'd be making 200?
 4   A.    Because I've made considerably more in the past.
 5   Q.    From MEM Investments?
 6   A.    No, from other sources.
 7   Q.    What were the other sources?
 8   A.    A whole bunch of them.  I can't remember.
 9   Q.    Let's name a few of them.  Can you tell me the name of
10         any of them?
11   A.    Pinnacle Race Course.
12   Q.    What's the current status of --
13   A.    Read my deposition.
14   Q.    What the current status of Pinnacle --
15   A.    It's all covered in there.
16   Q.    -- Race Course?
17   A.    That has nothing to do with future prospects and the
18         scope that you're permitted --
19   Q.    No, it has everything to do.  You just said you based
20         your future forecast on your past income levels.  And
21         I'm asking you tell me what some of those businesses
22         were and how you made that money?  I'm trying to
23         understand.
24   A.    I made five or $600,000.00 in a couple years from
25         Pinnacle Race Course.
```

HANSON RENAISSANCE
COURT REPORTERS & VIDEO   hansonreporting.com
                          313-567-8100

```
 1   Q.   What's the current status of that business?

 2   A.   What business?

 3   Q.   Pinnacle Race Course?

 4   A.   I believe it's out of business.  I'm no longer

 5        involved.

 6   Q.   What is the name of the person you're negotiating with

 7        right now for any future employment contracts or future

 8        consulting contracts?

 9   A.   Same answer.

10   Q.   What is their phone number?

11   A.   Same answer.

12   Q.   What is their address?

13   A.   Same answer.

14   Q.   What city are they located?

15   A.   Same answer.

16   Q.   What type of work would you be doing for them?

17   A.   Same answer.

18   Q.   Have payment terms been discussed?

19   A.   Same answer.

20   Q.   What are the payment terms?

21   A.   Same answer.

22   Q.   Has this agreement been memorialized in writing in

23        anyway?

24   A.   No.

25   Q.   How long have you been in contact with said person
```

EXHIBIT 8

HANSON RENAISSANCE
COURT REPORTERS & VIDEO
hansonreporting.com
313-567-8100

 1      negotiating this?

 2   A.   On and off for several months.

 3   Q.   And if the contract is finalized and signed and you go

 4        to work when would you begin work?

 5   A.   Remains to be determined, that's part of what's not

 6        finalized.

 7   Q.   Are there more than one person you're currently in

 8        negotiations with?

 9   A.   Yes.

10   Q.   How many are there?

11   A.   Same answer as before.

12   Q.   Are there more than ten people you're in negotiations

13        with?

14   A.   Same answer.

15   Q.   More than twenty?

16   A.   Same answer as before.

17   Q.   Less than five?

18   A.   Same answer as before.

19          MR. FOLEY:  All right.  He's completely

20        nonresponsive.  I have no further questions.

21          MR. ROBLE:  I don't think I have anything

22        else.

23          (The 2004 Exam concluded at 2:18 p.m.)

24

25

HANSON RENAISSANCE
COURT REPORTERS & VIDEO   hansonreporting.com
313-567-8100

1                    CERTIFICATE OF NOTARY

2        STATE OF MICHIGAN          )

3                                   ) SS

4        COUNTY OF WAYNE            )

5            I, Elizabeth Koller, Certified Shorthand Reporter,

6        a Notary Public in and for the above county and state,

7        do hereby certify that the above deposition was taken

8        before me at the time and place hereinbefore set forth;

9        that the witness was by me first duly sworn to testify

10       to the truth, and nothing but the truth, that the

11       foregoing questions asked and answers made by the

12       witness were duly recorded by me stenographically and

13       reduced to computer transcription; that this is a true,

14       full and correct transcript so taken; and that I am not

15       related to, nor of counsel to either party nor

16       interested in the event of this cause.

17

18

19                                  _Elizabeth Koller_

20                                  Elizabeth Koller

21                                  CSR 7042, Notary Public,

22                                  Wayne County, Michigan

23       My Commission expires:  June 1st, 2018

24

25

**A**

abbreviating 14:9
ability 73:19
able 38:6 44:11 44:22 61:9 65:14 75:13
account 33:11 35:16 38:10 40:7,25 42:15 52:3,13
accountable 25:10
accuracy 9:5
accurate 9:4 20:8
acknowledging 12:4
acting 16:17,17
actual 12:13 16:14 17:12,15 18:15 44:6 45:1 53:4
additional 22:21 37:2 40:16
address 11:9 14:14,15,15 80:12
addressed 48:20
addresses 13:21
administrative 8:3
admission 12:8
advice 25:9
afraid 70:12
ago 48:19 74:2
agree 8:14,23 9:10 10:7 12:3 18:4 28:10 32:17 34:23 38:5 52:18 53:24 55:24 59:11 60:5,15 61:15 63:21
agreed 47:18
agreement 4:14 10:5 20:24 80:22
ahold 10:23
alleged 67:14

allowed 6:24
alluded 64:5 76:3
alternate 71:16
amended 9:24 10:1 68:2
american 2:12
amount 15:19 22:14 30:22 31:2 34:14,15 40:17,22 45:4 45:16 46:19 48:1 51:22 55:25 60:13 71:18 74:6
amounts 8:19,20 8:21 12:4 14:3 15:23 16:14 18:9 19:21,22 36:23 42:19
andiamo 73:1,25 74:5
answer 7:17 61:2 62:8,14,18,25 62:25 63:4,8 63:15 66:7,7 69:25 70:1,12 72:8,15,16,18 75:4,8,11,18 75:24 77:17 80:9,11,13,15 80:17,19,21 81:11,14,16,18
answered 62:6,9 69:20 71:17 78:9
answering 62:7,9 72:6 75:22 76:10
answers 59:3 82:11
anticipated 60:20 62:23 64:19 65:5
anybody 73:18
anymore 48:5
anytime 8:1
anyway 12:4 80:23
aod 14:9
apparently 21:3

38:2,4 56:11
appear 25:24 44:4
appearances 2:1
appearing 2:8,17
appears 27:8 32:16 33:2 36:10 38:14 54:21 69:1
applied 31:24 32:4
apply 30:17,18
appointed 14:23 43:10 47:13
appreciate 17:11 58:8
approximate 31:2
approximately 31:4 42:21 43:14 63:22
april 15:21 16:10,11 17:14 19:24 21:22,24 56:6,7,9,15 59:19,20,22 72:19
archdiocese 14:8 19:11 20:1 21:4,19 22:1 33:13 34:5 35:3 36:25 37:9,17 38:19 40:6 41:23 42:21 51:13 52:10 54:25 56:9,24 57:18 57:20,23 58:13 60:22 61:1 62:3 63:2,4,14 63:16,22 64:2 64:6,10 65:9 66:13
argument 50:1
arrangement 71:16
article 10:1,9
aside 57:18
asked 7:19 12:25 58:22 69:10 82:11
asking 25:12

57:19 64:14 69:12 79:21
assignment 63:19 64:18 65:4,21
associated 74:1
assume 53:9
assuming 52:12
athletic 45:21 45:23 49:4,18 50:3,7
atm 33:11
attached 19:15 35:16 38:10 42:16 52:4 55:12
attorney 18:3 22:10 24:19 26:4 27:17 30:1 32:24 41:14 51:2 54:19 66:11 67:8,8 70:12 72:9,17
auburn 44:20
august 4:20 25:17,25 26:12 29:11 62:23,24 63:1
authorities 11:18
authorize 48:9
authorized 61:8
available 77:12
aware 48:18 76:14,16,20

**B**

back 7:25 8:7 9:8,21 10:5,19 10:25 16:16 23:3,4 24:12 25:14 26:25 27:1 29:9,21 32:5 34:1 36:22 37:19 43:18 44:18 47:6,8 48:24 50:14 52:25 53:25 56:4,5,7 59:7 62:2,10 66:9 67:16

12-04930-tjt   Doc 15   Filed 10/23/12   Entered 10/23/12 14:12:10   Page 177 of 192

EXHIBIT 8

HANSON RENAISSANCE
COURT REPORTERS & VIDEO
hansonreporting.com
313-567-8100

balance 38:24
 52:7
ballpark 60:11
bank 31:16 33:11
 35:15 40:3
 52:13 55:11
bankruptcy 1:1
 12:22 24:20
 27:17 30:2
 32:25 36:8,10
 41:15,18 49:7
 51:3 54:19
 61:18 76:14
bar 44:9,18
base 78:16
based 55:9 59:2
 59:9,19 78:21
 79:19
basic 7:7
basically 8:9
basis 21:21
 30:11 63:16
 64:6 65:10
 78:19
bathroom 7:10
bcbs 15:11,20,25
beat 62:21
beating 63:7
becker 2:17 6:11
 6:13 67:9,12
 71:1
beech 21:18,18
beginning 12:22
 58:11
behalf 2:8,17
 6:8,10,12 67:8
belief 78:20,21
believe 8:13
 28:24 56:16
 66:19 69:21
 72:6,12 78:25
 79:2 80:4
believed 48:14
benefits 15:16
best 11:3
beyond 9:2 40:17
 42:20 62:19
 65:5,6 66:5
big 35:17
bills 17:4 48:10
bit 15:14

bloomfield 50:12
blue 15:11,12,12
 16:1,1 17:2,2
 34:6,6
bmw 45:9,12
 49:10,17
boring 25:22
bottom 12:23
 22:20 24:22
 26:8 28:4
 38:11 52:8
 67:11
break 7:10,12
 19:5 59:2
bucks 31:6,11
 52:19,25
bunch 79:8
business 46:13
 49:6,12,14,15
 50:5,9 67:14
 74:1 80:1,2,4
businesses 79:21

--------------------
C
--------------------
calendar 52:14
cant 9:10 30:20
 53:8 57:22
 58:6 79:8
capsulate 10:9
car 45:12 46:10
 46:11,13
case 1:5 6:17
 25:25 30:2
 32:25 36:8,11
 41:15,18 46:18
 46:22 51:3
 54:19
cash 52:25 53:16
 59:14,15,20
 60:1,7
catch 37:11 46:1
cause 82:16
cell 11:1,3
certain 46:19
 61:20
certainly 61:10
 61:13
certificate 82:1
certified 82:5
certify 82:7
chance 9:8 10:3

change 65:4
changed 20:22
changes 38:8
chapter 1:6 43:9
 47:4 50:5
 76:14
charles 2:17
 6:11,13 67:9
chart 8:8,10,14
 9:22 10:4,7
 11:13 12:1
charts 12:3
check 18:13,14
 19:23 20:4
 24:11 40:2
 42:3,3 43:25
 45:12,15 47:12
 47:16,17,19
 52:19,24
checking 35:16
 38:10 40:7
 42:15 52:3
checks 5:14
 14:22,24,25
 15:3 17:17
 37:13,15 43:20
 43:25 44:2
 46:23 48:10,23
chose 64:7
circumstances
 75:24
city 80:14
claims 11:16,17
clarify 14:24
 16:9 31:1
 70:22
clear 20:20
 39:10,11,15,17
 62:16 63:19
 70:19
clearer 20:16
client 70:17,20
 70:23,24 71:7
 71:10,16,21
close 30:22
 52:16
club 45:21,23
 49:4,18 50:3,7
 50:12
clubs 49:21
 50:11

clue 20:6
coincide 52:13
collecting 73:25
columns 8:11
com 2:14,15 11:3
 11:6
combined 68:2
come 8:23 9:11
 40:18 43:2
 52:21 55:20
 60:25 70:16
 75:12 77:24
comfortable 61:4
 62:17
coming 10:8
 47:16 62:24
 63:13
commencing 1:17
commission 82:23
communication
 10:25
company 15:10,24
 16:16,19,22
 46:20 57:1
 73:2 75:1
compensation
 21:13
complete 63:18
completely 81:19
comply 13:20
 77:3,6
computer 82:13
concern 8:15
concerned 48:20
concerning 73:1
concluded 81:23
confirm 8:12,16
 8:19 11:23
 18:8 23:17
 24:12,13 25:23
 44:1
confirmable
 76:17
confirmation
 68:24 76:24
 77:10,17,21,24
 78:12
confirmed 36:24
 78:4
confirming 6:21
 21:20 22:1

45:16
**conformation**
68:22
**consider** 41:1
53:13
**considerably**
79:4
**consistent** 55:14
**consultant** 16:17
**consulting** 16:15
63:18 64:18
65:4,20 66:2
69:13 72:1,2
72:19 75:1,7
75:10 76:1,22
80:8
**contact** 11:7,8
80:25
**contemplated**
65:7
**contemplates**
71:9
**contents** 3:1
**continue** 64:11
66:5 75:13
**continued** 48:21
**continues** 15:6
**continuing** 21:25
77:16
**contract** 19:20
21:3 37:9,20
41:25 65:8
69:15 73:25
74:3 75:13
81:3
**contracted** 20:13
**contracts** 65:18
77:5 80:7,8
**contrary** 64:17
**copies** 17:18
43:25
**copy** 5:14 6:18
8:8 11:15,24
12:10,14,21
17:2,4 21:2,3
43:20 65:9
**correct** 6:25 7:1
7:3,5 8:20,21
10:19,20 13:16
14:7,10,13,15
15:2,5,13,17

15:18,21,22
16:8,19 17:6,7
18:13 19:13,14
20:1,2 21:10
21:11,16,23
22:3,15,16
23:2,22,23
24:21,23,24
26:13,15,17,18
27:10 28:8,9
29:8,12,13
30:3,6 31:22
32:7 33:1
34:11,12,20
35:14 37:1,3,7
38:8,16,19
39:18,24 40:19
40:23 42:14
43:13,17 44:21
45:5,11,17,19
45:21,25 48:3
49:20 50:4
51:10,24 52:18
53:6 54:22
55:1,8 56:13
56:25 57:3
59:21,24 60:4
60:19 62:20
63:6 64:4
65:12,17,25
66:12,14,18
68:17,18,25
71:14,24 74:18
82:14
**counsel** 4:4 6:9
6:22 7:2 10:22
13:4 61:5,9
62:18 75:16,19
75:20,23 76:3
76:8 82:15
**counsels** 61:18
**counting** 59:16
**country** 50:12
**county** 11:25
82:4,6,22
**couple** 7:24
10:15,16,21
16:9 21:25
47:19 57:11
59:1 76:6
79:24

**course** 79:11,16
79:25 80:3
**court** 1:1 6:16
6:23 8:25
24:20 26:5,7
27:17 61:8
66:20
**courts** 77:3,6
**coverage** 34:7
**covered** 16:6
63:17 79:15
**covering** 18:11
**covers** 9:24
**creditor** 6:11
12:6 67:9
**creditors** 9:25
**cross** 15:11,12
16:1 17:2 34:6
**crossed** 47:9
**crowder** 2:11
6:12,12
**csr** 82:21
**csr7042** 1:19
**curious** 20:3
37:8
**current** 79:12,14
80:1
**currently** 73:22
78:13 81:7
**cut** 20:18,19

_____
**D**
_____
**dac** 46:16 50:13
**dashes** 11:6
**date** 9:2 18:13
18:14,15 20:4
22:19 33:21
45:18 46:23
55:22
**dated** 32:17 45:7
**dates** 19:18
52:13
**day** 33:21 47:4
64:13,16
**days** 24:1 25:6
47:12 57:11
64:7
**dead** 62:21 63:7
**deal** 78:5,8,10
**debtor** 1:7 67:13
**debtors** 68:2

**december** 5:10
15:20 35:22
36:2 39:8 42:3
43:15 44:18
47:10,25 63:9
**deciphering** 14:4
**definitely** 13:24
**definition** 15:14
**delay** 47:20
**demonstrative**
8:10,25 10:7
**dep** 61:8
**department** 11:19
**deposit** 33:12,22
38:14,18,21
40:6 53:7,19
53:23,23 54:2
55:12,13
**deposited** 33:23
37:14 40:25
42:3,22 52:22
52:24
**deposition** 1:14
4:5,7,9,11,13
4:15,17,19,21
5:5,7,9,11,13
5:15,17,19,21
7:4 12:16 13:8
13:13 17:22
18:25 20:23
22:4 23:8
25:16 27:2
29:14 32:11
35:21 41:2
43:19 50:15
54:7 67:1,19
76:12 77:13
79:13 82:7
**deposits** 35:15
40:15,22 42:18
42:19 52:6,7
52:15 55:18
**describe** 68:7
69:2
**description**
20:13,16,21
**designated** 17:13
32:3
**desk** 44:19
**detail** 18:7
69:20

HANSON RENAISSANCE
COURT REPORTERS & VIDEO
hansonreporting.com
313-567-8100

detailed 33:10
determined 81:5
detroit 2:5 14:8
  19:11 21:4
  33:14 36:25
  41:23 45:21,23
  49:4,18 50:2,7
developed 78:16
didnt 16:3,24
  17:1,8,18 29:5
  29:6 35:9 38:1
  43:6 49:16
  50:6 71:12
difference 35:17
  35:18,18 39:5
  49:20 53:16
different 13:5
  20:20 48:22
direct 10:24
directly 15:15
director 21:19
disclosure 5:22
  17:8 67:20
  68:3,9
discovered 48:23
discrepancy 52:9
discuss 10:3
  61:2 72:4
discussed 8:8
  9:21 66:13
  80:18
discussing 61:5
discussion 8:5
  9:19 18:24
  34:13 59:5
distinction 69:3
district 1:2
division 1:3
doc 40:12
docket 6:17
  11:16 12:23
  24:23 26:8
  27:19,20 30:4
  33:2 36:10,11
  41:17 51:5
  54:22
document 21:20
  22:17 27:12,16
  36:3,7 40:10
  40:10 41:10
  51:1,17 54:14

54:18 61:13
65:13 68:1,4
68:11,13,15
documents 13:2
  16:24 17:1,6
  17:14,20 19:8
  21:7 22:12
  24:18 44:11,22
  59:9 61:20
doesnt 19:15
  39:8 49:5 50:2
  55:10 61:22,24
  76:13
doing 20:11
  39:13 40:7,15
  60:20 75:13
  80:16
dollar 8:16,19
  8:20,21 35:18
dollars 34:7
  48:2 63:24
  74:13
dont 7:14,16,17
  8:13 10:22,24
  11:7 14:17,20
  15:7,9,15
  17:14,17 24:8
  24:11 25:13
  28:16 29:2
  30:17,25 31:23
  31:25 32:1
  33:15 37:11,13
  37:15 39:25
  41:1 42:12,23
  43:4,4 44:8
  48:18 50:11
  51:22 52:13,19
  53:11,13 54:2
  56:5,16,16,21
  57:7 58:6,21
  58:21 59:19,25
  60:3,22,24
  63:2,15 64:21
  65:14 69:9,21
  70:5 72:12,14
  72:21 73:11
  74:4,4 75:3
  77:23 78:1,3,4
  78:5,7 81:21
dots 11:6
drawer 44:19

drink 7:11
drive 2:12
due 47:18 57:11
duly 6:5 82:9,12
duty 76:16
_____
        E
earlier 55:15
early 43:15
  46:18
earn 72:25 73:1
  74:25 78:20
earned 69:5,11
  69:19
earning 69:7
  78:23
earnings 69:2,5
  69:10,19 71:25
eastern 1:2
ecrowder 2:15
effective 21:22
  21:24
eight 79:1
either 11:17
  15:25 24:11
  56:14 61:25
  82:15
eleven 25:5
elizabeth 1:19
  82:5,20
elliot 2:11 6:12
email 10:24 11:1
  11:9,11 13:4
  18:2 19:8 21:8
  22:10,18
employed 69:14
  69:16
employee 4:10
  17:23 18:10
employment 69:13
  72:2,3 80:7
ended 54:3
ends 18:12
engagements
  69:13
entered 6:17,23
  46:18
entities 13:21
  44:9 46:6
entitled 21:16
  48:14,16,21

entity 15:10
  16:7 56:12
essentially 9:23
  10:1,6 15:4,24
  43:16 66:9
estimate 78:18
  78:19
etcetera 7:11
  61:21
event 82:16
everybody 7:9
  10:23 59:22
evidence 8:10,24
  10:8 76:20
evidentiary 7:25
  8:11 9:1 61:11
  76:11
exact 34:14
exactly 53:8
exam 6:16 12:13
  12:22 61:18
  81:23
examination 3:6
  3:7 6:14 67:5
  67:13
examined 6:5
exchange 77:2,5
excused 7:11
exhibit 4:3,5,7
  4:9,11,13,15
  4:17,19,21 5:3
  5:5,7,9,11,13
  5:15,17,19,21
  9:1 12:15,16
  13:7,8 14:2
  15:19 17:21,22
  18:2,5,9,25
  19:7 20:23
  21:3,9,15 22:4
  22:9,13 23:7,8
  25:14,16,24
  27:2 29:9,14
  32:11 34:1
  35:12,21,25
  36:22 37:5
  39:7 40:11
  41:2,7,21
  43:19,24 47:22
  48:24 50:15
  51:12,16,17
  53:22 54:7

56:5,7,22
61:16 65:10
66:25 67:1,7
67:17,19 72:22
**exhibits** 4:1 5:1
23:3 59:7 77:2
**expect** 58:15
62:3,4 63:1
64:24 70:17,19
70:22,25 71:17
71:18,21 75:2
78:8,10
**expecting** 12:2
**expense** 49:6,12
49:13,15 50:9
52:24 53:12,14
**expenses** 34:25
35:10 38:8
40:25 46:20
48:16,17,21
49:5,7,8 50:5
60:9
**experience** 78:22
**expires** 82:23
**explain** 10:17
15:9
**extend** 65:4
**extending** 65:6
**extra** 42:21
55:17

———————————
**F**
**facsimile** 45:1
**fact** 24:3,22
30:4 33:2 40:5
41:17 47:5
51:5 55:24
64:2
**fair** 9:3 35:11
50:10
**familiar** 68:4
**far** 23:19 24:18
26:25 27:24
33:6,12,15
37:16 44:6
48:20 57:17,22
60:15 66:1
75:21 76:23
**feb** 20:17
**february** 5:16
15:20 19:24

20:11,17 50:16
50:21 54:3,4
55:15,16 74:22
**fees** 16:15
**figure** 11:23
78:17
**figured** 57:12
**file** 24:19 26:5
27:17 30:1
32:25 36:8
41:14 51:2
59:22
**filed** 8:18 11:24
12:5,10 26:7
27:19 29:25
30:4 33:2
36:10 41:17
51:5 54:21
56:6 68:17
**filing** 54:21
**fill** 48:9
**filled** 46:24
**filling** 39:16
**finalized** 61:3
66:15 76:5,7
77:5,11 81:3,6
**finalizing** 76:2
**financial** 45:9
**fine** 7:12 9:7,16
10:18 18:16
29:3 38:18
47:21 75:4
**finish** 64:17
**first** 6:5 7:9
18:11 19:19
20:3,17 24:13
25:5 31:3,5
32:20 42:19
47:9 59:11
67:25 68:2,22
75:21 82:9
**five** 18:17 79:24
81:17
**florida** 24:10
28:15,18,25
29:7,12 30:24
31:6,9,14,17
32:1 34:18
38:1 42:11
55:5 56:14,16
57:6 58:5,9

60:6
**flow** 59:14,15,20
60:1,7
**foley** 2:10 3:7
6:10,10 66:24
67:5,8,17,23
72:24 81:19
**follows** 6:6
**followup** 66:22
66:22
**forecast** 68:16
71:8,8,12,13
78:16 79:20
**foregoing** 82:11
**foreseeable** 63:8
**former** 61:16
**fort** 2:4
**forth** 10:25
13:22 82:8
**forward** 7:2
68:24
**four** 18:17 47:12
60:7,14
**fourth** 67:10
70:3
**frankly** 14:5
20:16
**friday** 9:15,16
10:5,10,19
13:1 18:3 19:9
22:11 58:1
**front** 12:24
54:13,14 59:10
**fruition** 75:13
**full** 17:8 26:12
47:4 82:14
**funds** 40:24
**further** 67:12
81:20
**future** 66:6
67:15 70:14
75:25 76:21
79:17,20 80:7
80:7

———————————
**G**
**general** 23:13
69:8
**generate** 73:24
**generating** 78:14
**gentlemen** 66:21

**getting** 12:13
16:16 39:13
43:9 47:3 48:5
48:7 54:5
**gift** 16:21
**give** 6:18 11:1
11:15,23 12:9
12:14 15:4
34:1 68:14
77:15
**given** 16:14 19:6
21:2 34:7
35:25 47:19
56:7 64:16
70:1 72:14
**giving** 12:9,21
62:17 69:25
72:22
**gmail** 11:3,6
**go** 7:7,10,23,25
13:2,5 14:1
16:25 18:7
23:5 25:20
26:25 28:16
29:3,9 41:20
52:4 56:4 62:2
63:17 69:7
81:3
**goes** 9:2
**going** 6:18 7:2,7
7:18 9:7,10,25
10:6,10,11,17
10:18,22,24
11:15,22,23
12:5,9,14 13:2
13:5,25 14:1
18:7 24:12
25:20 28:16
50:6 51:8
54:24 56:4
57:15 58:23
59:2 62:18,21
62:22 63:20
64:11,15,24
66:5,9 69:24
71:6 75:2,3,19
76:9,11 77:7,9
77:12,14,15,16
77:20,23
**good** 75:15
**gov** 2:6

EXHIBIT 8

HANSON RENAISSANCE
COURT REPORTERS & VIDEO
hansonreporting.com
313-567-8100

grand 19:21 31:6
  37:2,6,10
  38:19,23 40:11
  40:13 54:4
  56:23
granted 67:12
great 69:20
ground 7:7,20
guarantee 66:4
guarantees 64:10
guess 58:6,7

_____ H _____

half 74:2
hand 11:22
handed 59:7
handing 22:9
  48:24 67:6
handling 73:16
handwriting
  13:17 14:5
  24:16 26:2
  27:12 29:20
  32:20 36:3
  41:10 44:2,23
  44:25 45:4
  50:21
handwritten 34:2
  36:2 40:10
  41:8 44:6
  51:11
happened 37:13
havent 57:10
  60:2 78:4,10
head 7:14,15
health 16:1
heard 7:18
hearing 7:25
  8:11 9:1 61:6
  61:11 76:11,25
  77:10,17,21,24
  78:12
held 8:5 9:19
  18:24 59:5
help 11:13,20,22
  12:1 36:22
helps 15:14
  38:12
hereinbefore
  82:8
heres 9:12

hes 48:18 81:19
hiding 17:9
hills 44:20
  50:12
hold 74:5
home 14:15 24:7
  31:3,5,6,9,11
  56:15 57:6
  58:4,9
hon 1:7
honest 9:9
hopefully 59:22
horse 62:21 63:7
hours 69:24
household 40:25
hr 21:19
hundred 35:17
hundreds 74:13
hypothetical
  35:1

_____ I _____

id 24:11 70:13
idea 20:3,12,20
  20:22 28:1,20
  35:11,18 42:1
  42:9,21 52:8
  52:15 55:17
  58:25 63:13
  64:21 73:14,15
  77:19,22
identification
  12:19 13:11
  17:25 19:3
  21:1 22:7
  23:11 25:19
  27:5 29:17
  32:14 35:24
  41:5 43:22
  50:18 54:10
  67:4,22
identified 13:2
identify 67:25
ii 10:1,9
ill 9:9 16:24
  27:1 29:9
  46:21 50:14
  53:21 56:4
  61:17 62:2
  66:20 67:16
  70:5

im 6:17,21 7:7
  7:17 9:10
  11:10,14,22,23
  12:2,5,8,9,13
  13:2,5,25 14:1
  16:19 17:9
  18:7 19:10
  20:3,14 22:9
  22:23 23:17,24
  25:12,22 28:18
  28:21 31:1
  33:9,22 34:13
  35:1,6,11
  36:21 37:8,24
  38:9 39:7 41:7
  41:21 43:24
  45:3,15 46:5
  47:17,21,22
  48:24 51:11,15
  52:12,17 53:21
  53:24 56:4,6
  56:22 57:15,19
  58:22 59:2,8
  61:2,4,4,16
  62:9,21,22
  63:7 64:14
  66:9,14 67:7,8
  69:11 70:21,25
  72:4,22 73:13
  75:2,22 76:2
  76:11 77:14
  79:21,22 80:4
included 16:4
  40:21
including 9:5
  46:5
income 14:11
  23:22 24:25
  25:3,5,7 26:19
  26:20,23 27:23
  28:1,4,11
  30:11 32:8
  33:9 34:10,22
  34:23 35:2,4,6
  35:9,12,20
  36:19,21 37:6
  38:7,25 39:8
  39:12,14,21
  40:4,20,21,24
  41:1,1 42:5,23
  43:2,5,5,6,7,8

46:11 47:23,25
  48:5 51:8,8,25
  53:13 54:24
  55:7,22 56:2,9
  56:19 57:9,16
  57:19,20 58:12
  58:15,23 60:21
  60:25 61:12,22
  62:4,23 63:1
  63:13,17,21
  64:3 65:13,15
  66:5 67:15
  69:1,5,6,7,11
  70:14,14,16
  71:9,20 72:19
  73:24 76:18,21
  77:16 78:20
  79:20
incorporated
  74:22
indefinite 64:20
independent
  69:15 75:6,9
index 4:1 5:1
indicate 13:25
indicated 8:17
  23:18 31:21
  40:16 47:23
  49:10 56:23
  72:5
indicates 21:20
  26:8,16 37:25
indicating 13:21
  49:8
info 11:8
information 9:5
  30:1 54:18
  62:17
initial 36:1
insurance 16:1
  16:13 34:8
intend 74:20
  75:16
interest 15:11
  17:8 56:12
interested 82:16
intermittent
  65:20
introduce 77:10
invest 70:17
  71:19

HANSON RENAISSANCE
COURT REPORTERS & VIDEO
hansonreporting.com
313-567-8100

investment 70:15
  70:18 71:9,20
investments 14:6
  14:22 18:11,18
  23:20 26:21
  30:9 33:7 34:4
  36:15 43:12
  46:4,5,9,24
  47:8,24 48:1,5
  67:14 69:2,5,6
  69:16 71:22
  78:13 79:5
involved 37:11
  80:5
irrelevant 39:10
irs 11:19 12:11
  53:9
isnt 34:7 57:15
issues 10:16
item 13:20 16:11
items 16:9
ive 7:21 18:2
  19:6 21:2
  35:25 56:7
  59:7 62:6 67:6
  69:20 70:1
  71:17 72:14
  76:6 78:9 79:4

--- J ---

january 5:12
  15:20 19:24
  20:14 41:3,8
  42:3 46:23
  48:4,4,25
  49:16 52:22,22
  52:23 53:18,21
judgement 71:3
july 4:18 23:9
  23:18 24:3
  59:11 60:21
  62:5
june 1:18 6:2
  13:1 21:10
  22:11 57:16,17
  58:2,11 60:3
  82:23

--- K ---

keep 12:23 17:18
kim 14:12

kimberly 14:25
  34:5
kind 10:16 39:20
  43:3
know 7:4,8,8,9
  7:16 10:5,15
  15:9 20:4,7
  23:20 24:6
  25:1,2,7,13,22
  26:19,20,23,24
  27:23,24 28:16
  28:23 30:11,15
  30:17,25 31:23
  31:25 32:1
  33:6,12,15,15
  34:14 37:11,16
  38:23 39:1,19
  42:9,12 43:4
  44:6,8,13,17
  48:18 50:1,11
  51:22 52:19
  53:1 56:16,19
  56:21 57:8,12
  57:23,25 58:21
  58:21,22 59:20
  59:22,25 60:3
  60:22,24 63:2
  63:15 65:6
  72:14 73:11,21
  74:4 77:23
  78:1,2,3,4,5,7
knowing 46:21
knowledge 47:5
  70:11
known 57:13
koller 1:19 82:5
  82:20

--- L ---

large 50:10
late 43:15 53:19
  54:2
lawsuit 70:24
leave 67:12
left 74:3
legal 70:11
length 66:6
level 78:20
levels 79:20
liability 15:10
licensed 72:9

likelihood 75:12
likewise 17:14
  50:1
limitations
  61:24
limited 15:10
limits 70:7
line 16:11 54:2
  55:10
lines 26:19
list 4:8 13:9,20
  34:2 51:11
  69:1
listed 14:1 25:3
lists 61:21
little 15:14
  19:16 20:16
llc 15:10,24
  72:20 73:5,22
  74:17,19
located 80:14
long 8:20 49:13
  80:25
longer 80:4
look 10:11,18
  18:8 19:10
  21:15 22:15
  24:13 27:11
  33:5 37:24
  38:9 39:19,20
  48:25 52:3,23
  54:5 55:10
  56:17 72:21
looked 12:1
  53:18 60:16
looking 13:13
  23:25 32:5
  33:9,22 35:1
  35:12 36:13
  38:9 41:21
  44:22 47:22
  48:4 51:11,15
  52:15 53:21
  55:14 56:6,22
  60:10,12 61:16
looks 14:5 18:11
  19:10 20:9
  23:14 26:7
  29:19,25 30:4
  40:13 41:17
  45:5,16,18,20

  51:5
lot 15:7 70:11
  70:25 71:1,2
  76:13

--- M ---

making 46:10
  73:13 79:3
manager 16:19
march 5:18 15:21
  19:24 20:17,19
  54:1,8,12
  55:22 59:12
mark 12:14 13:6
  17:20 23:6
  66:24 67:17
marked 12:18
  13:10,13 17:24
  18:2 19:2,6
  20:25 21:2
  22:6,9 23:10
  25:18 27:4
  29:16 32:13
  35:23,25 41:4
  41:7 43:21,24
  50:17 54:9
  67:3,6,21
marry 41:22
match 18:21
  44:25
math 10:12 35:1
  40:7,15 60:20
matter 61:6
  75:16
mcinerney 1:6,14
  3:5 4:5,7,9,11
  4:13,15,17,19
  4:21 5:5,7,9
  5:11,13,15,17
  5:19,21 6:4,15
  8:8,13 9:23
  10:4 12:16
  13:8 14:11,12
  14:25 17:22
  18:25 19:5
  20:23 22:4
  23:8 25:16
  27:2 29:14
  32:11 34:5
  35:21 41:2
  43:19 50:15

54:7 67:1,6,19
68:16
**mean** 19:16 27:9
28:16 58:6
76:13
**meaning** 34:17
**means** 15:11
**meant** 13:19,19
**mem** 14:6,22 15:1
18:10,17 23:20
26:21 27:24
30:9 33:7 34:4
36:14,19,24
38:14 40:2
43:11 44:9
46:4,5,5,9,18
46:22,24 47:8
47:24,25 48:5
48:11 49:16,17
49:21 69:16
79:5
**membership** 45:24
46:16
**memcinerney** 11:5
**memcinerney57**
11:3
**memorandum** 21:16
**memorialized**
80:22
**mention** 70:10
**mentioned** 33:25
**met** 47:12
**michael** 1:6,14
3:5 6:4,24
68:16
**michigan** 1:2,16
2:5,13 6:1
11:19 24:7
29:6,11 30:23
31:4,5,8,11,17
34:17 38:1
42:10 55:4
56:15,17 57:5
58:5,9,10,11
60:6 72:10
82:2,22
**mid** 46:23 47:14
**middle** 19:19
**minus** 40:2
**minute** 59:2
**minutes** 48:19

**mistake** 20:9
23:1
**misunderstanding**
16:4
**mixup** 47:11
**moment** 66:20
**monday** 1:18
**monetary** 74:6
**money** 13:22
14:19 15:3,15
37:16 52:20
53:4 55:25
58:19 69:23
70:18,25 71:1
71:18,19 72:25
74:3,25 79:22
**monies** 16:14
47:8
**month** 15:8 22:1
22:1,2 23:18
23:24 24:2,7
24:10 25:1,4
26:12,14 28:8
28:11,12 29:7
29:10 32:8
33:13,19 34:11
34:22,24 35:7
36:17,18 37:9
37:12 39:7,12
40:20 42:2,4,8
45:24 46:1
47:24 49:9,22
49:23 51:25
52:11 53:19,20
55:2,5 56:2,9
56:15,20,24
57:4,6,9,12,13
57:16,17 58:5
58:11,16,20,24
60:3,21 61:1
62:3 64:12
78:23
**monthly** 8:18
21:13 23:6
27:9 32:17
49:11
**months** 17:13
21:25 45:13,14
45:25 46:2
52:14 59:14,15
60:8,14,15

64:21,22,23
73:12 79:1
81:2
**monthtomonth**
21:21 63:16
64:6 65:10
**mor** 4:18,20,22
5:6,8,10,12,16
5:18 23:9,25
25:17,25 26:16
27:3,8,8,11
29:15,19 32:12
33:10 34:10
35:12,16,22
38:10 39:21,23
41:3 50:16
52:23 53:22
54:1,8 57:10
59:12,13,14,23
60:2,12
**mors** 18:21 39:16
47:7,22 50:4,8
50:20 56:6
60:8
**mortgage** 23:24
24:3,6,9 25:2
26:16 28:7,10
28:14,25 29:5
29:10,12 30:14
30:15,16,20,24
31:2,5,12 32:2
38:6 42:8
55:25 56:14
57:5 58:4,8
60:5,13,14,17
**mortgages** 29:4
31:3,8,17
34:13,15 37:25
51:21 55:4
**multiple** 45:25
**mumbling** 11:10

---
**N**
---
**name** 11:5 16:3,5
19:17,20 20:18
20:19 44:7
79:9,9 80:6
**names** 13:21
20:18
**narrow** 28:22
**nature** 65:3

**necessarily** 8:10
**need** 7:10,10
10:17 27:7
**needed** 12:24
39:11
**negative** 25:4
26:14 28:11
32:8 34:23
35:5,8 38:7
51:25 52:23
53:1,12 56:2
56:20 57:8
59:15 60:8,18
**negotiated** 73:1
**negotiating**
74:19 80:6
81:1
**negotiation** 73:3
**negotiations**
73:9,16,19
74:5 81:8,12
**net** 23:22 24:25
25:3 28:4,11
34:10 38:16
42:5 51:25
55:7 56:2,19
57:8 58:23
**never** 20:10
39:10 48:15,17
48:20
**nineteen** 24:1
**nod** 7:14
**nonresponsive**
81:20
**normal** 60:14
**normally** 11:7
32:3
**northern** 31:19
31:21,24
**northwestern**
1:15
**nos** 9:6
**notary** 82:1,6,21
**note** 45:20
**noted** 24:22
**notice** 28:7 64:7
64:13,14,15,16
**noticed** 20:10
**noting** 37:25
39:7
**november** 5:8

14:2 15:8,20
20:14 32:12,18
33:5 34:3
36:18 43:15
44:18 47:9,13
47:14,24 63:9
63:22 69:18
70:2
**number** 4:5,7,9
4:11,13,15,17
4:19,21 5:5,7
5:9,11,13,15
5:17,19,21
6:17 10:12
11:1,3,11
12:15,16,23
13:1,4,8,13,20
13:24,24 14:1
14:2 17:22
18:25 20:4,23
21:12 22:4
23:5,8 24:23
25:16 26:8
27:2,19 29:14
30:5 32:11,16
33:3 35:5,8,21
36:11,22 39:23
40:11 41:2
43:19,25 45:15
46:14,16 48:24
50:15 51:6,12
53:22 54:7,22
67:1,7,19 74:8
74:9 80:10
**numbers** 8:16
9:13 10:13
11:14,17,23
18:19,19 19:23
23:17,25 60:12

———————
O
———————
**oakland** 11:25
**oath** 6:6
**objection** 8:13
11:24 12:9,10
72:6
**objections** 72:13
72:14
**obligation** 73:2
**observe** 70:13
**obviously** 7:11

7:13 11:5
20:18 48:22
61:5
**october** 5:6 21:5
29:15,20 32:5
37:20 63:9
**odd** 52:19
**offhand** 25:9
28:3 29:2
30:13,16,17,20
30:25 34:16
37:14 42:12
43:4 55:19
56:16 57:10
74:4,10
**office** 2:3 6:8
8:9 9:11,22
11:11 12:25
21:9 44:19
61:8
**offices** 61:19
**offset** 53:13
**offtherecord** 8:4
9:18 18:23
59:4
**okay** 7:23 9:7
11:6,12,21
12:12 17:5,11
24:12 28:20
33:24 38:5
39:19 40:3
43:7 46:15
48:24 50:14
51:15 52:15
54:5 56:4
59:17 62:2,21
63:12 68:24
69:7 71:6,13
72:12,19 74:19
76:20
**once** 40:24 60:11
66:22
**ones** 29:2
**ongoing** 65:15,20
73:4 76:21
**operating** 8:18
23:6,15 26:10
27:9,22 30:7
32:17 33:5
36:13 39:22
41:20 48:25

49:1,3,11 51:8
54:24
**opportunity** 8:16
**opposed** 16:12,21
**options** 42:13
**order** 4:6 5:20
6:16,23 12:17
12:21,22 13:23
15:15 18:5
21:9 22:12
45:9,20 46:22
48:18 61:12,17
61:20 66:20
67:2 76:16
77:3,6
**ordered** 46:18
67:12
**original** 53:25
**originally** 65:5
65:7
**owe** 58:19 71:1,2
**owed** 12:5,6
37:16 70:25
**owes** 71:2
**owns** 16:20

———————
P
———————
**p51429** 2:2
**p74323** 2:10
**p76137** 2:11
**packet** 19:7 21:7
**page** 1:12 3:3
4:3 5:3 18:12
20:17 21:15
23:14 24:13
26:11 27:22
32:20 38:11
39:22,22 41:20
41:20 42:18
49:1 50:22
52:4,8 54:13
54:14 67:24,25
68:13,14
**pages** 13:4 19:15
43:25
**paid** 13:22 14:18
14:21,25 15:15
16:15 19:12,22
22:18 26:17
29:2 30:20
33:18 34:15

35:10 37:8
42:1 43:9
46:20 47:3
49:6,9,10,12
49:17 50:5
51:18 55:5
56:16,17 57:23
57:25 58:19
73:5 74:17
**pamela** 21:18,18
**paragraph** 21:12
67:10 70:4
**paraphrasing**
66:9
**part** 12:8 17:19
18:2 19:7 21:7
21:8 22:10,17
33:10 34:22
46:11 51:1
78:5 81:5
**partial** 11:15
19:18 25:1
**participate**
68:10
**parties** 8:25
**partly** 19:20
**party** 82:15
**patrick** 2:10
6:10
**pay** 16:1 18:10
18:14,17 22:2
38:1,6 40:25
43:11,14 45:9
45:20,23 46:11
48:10 55:25
56:14 74:22
**payable** 50:7
**paying** 15:25
46:10 49:14
58:8 64:7,11
**payment** 23:24
24:6,9 28:10
28:14 29:5,6
29:10,11,12
30:15,22 31:20
31:24,25 45:12
46:13 49:4,15
53:5 55:15,24
57:5 58:4
60:14,17 64:15
80:18,20

EXHIBIT 8
HANSON RENAISSANCE
COURT REPORTERS & VIDEO
hansonreporting.com
313-567-8100

payments 9:24
   14:5 17:12,16
   19:25 25:2
   28:23,25 30:16
   30:23,24 31:1
   31:3 32:1,6
   42:9,10 46:10
   46:12 49:17
   56:14 60:6
payroll 47:15
   48:7,11,15
pending 70:24
people 81:12
perception 17:9
performance 38:9
performed 15:1
   57:2
period 14:23
   25:10 54:3
   64:13
periods 18:14
   54:2
permitted 46:19
   46:19 79:18
person 77:12,14
   77:15 80:6,25
   81:7
personal 48:10
   49:5,7,13,14
   50:4 51:2
   54:19
personally 69:8
pertinent 61:11
petition 28:23
   48:17
pfoley 2:14
phone 11:1 80:10
pinnacle 79:11
   79:14,25 80:3
place 82:8
plan 9:24 10:1,2
   10:10,14 58:8
   68:2,8,23,24
   76:17,18,24
   77:2,3,4,6
please 7:14,16
   12:24 13:6
   23:14 24:13
   25:14 56:4
   66:25 67:10,18
   67:24 68:13

plodding 39:20
point 8:1,15
   21:21 35:9
   48:22
pointed 25:1
pointing 21:12
policy 16:5,6
   17:3,10
portion 10:9
   30:8 47:23,25
   50:10 54:24
   62:12
position 69:15
positive 38:5
   42:5 56:19
   57:8 58:23
   59:14,20,25
   60:7,16
possibility 65:3
possibly 50:10
   76:3,4
post 28:23 44:1
   44:9 46:6
   48:17
posting 20:12,15
potentially 17:24
practice 72:9
pre 28:23 48:16
precise 48:8
predict 70:13,15
   71:6,11,12,15
   73:9,19
predictions
   73:13
preparation
   68:10
prepared 8:9
   61:2,4 72:4
present 6:9,24
   63:23 70:12
   72:17 77:17,20
presently 64:2
   65:18
presumably 9:11
   29:5 40:17
   50:1
presume 7:18
   10:11,12 14:11
   19:17 68:19
presuming 34:13
   52:17

pretty 20:20
   44:25 52:16
previous 6:22,23
   50:8 51:17
previously 37:4
   44:11 55:9
   63:5
primarily 71:25
primary 31:17
   63:21,24 64:3
printout 11:16
prior 14:22
   47:16 53:19
   61:18 77:2
   78:12
probably 7:8
   36:18 38:25
   50:13 52:18
   61:7 65:1
   74:14
produced 22:12
producing 61:20
proof 19:25 66:4
   66:16
properties 51:23
property 28:15
   29:6,7,11,12
   31:9,14,18
   38:1 60:6
propose 74:8
proposed 9:22
   10:4
proposing 74:9
prospect 76:21
prospective
   61:22
prospects 67:14
   72:3 75:6,9,25
   79:17
prove 76:17
provide 12:25
   65:15 66:16
   71:3 76:24
   77:8
provided 13:14
   14:14 17:1,5,6
   17:15,20 18:4
   19:8,25 21:8
   21:10 24:18
   26:4 27:16
   29:25 32:24

   33:20 34:3
   36:7 40:10,12
   41:14 51:1,11
   51:17 54:18
   65:9 66:8 75:1
   76:20 77:9
public 82:6,21
pulled 20:10
pursuant 6:16,23
   22:12 37:19
put 12:1 17:7
   62:7
putting 15:18

_____
              **Q**
question 7:15,17
   7:19 13:19
   25:12 29:19
   33:17 39:21
   41:25 50:6
   54:1,12 57:21
   60:24 62:2,18
   67:13 69:8,9
   69:20 79:2
questioning
   47:21
questions 7:20
   10:15 23:13
   27:7 36:1
   45:15 50:20
   56:22 61:9
   62:22 66:21,23
   70:7,12 72:7
   75:2,18,22,25
   76:10 77:18
   81:20 82:11
quick 14:2
quite 35:11

_____
              **R**
race 79:11,16,25
   80:3
range 74:11
read 62:9,13
   67:10 68:5
   70:4 79:13
ready 75:24 77:7
real 14:2
really 12:13
   17:10 47:21
   61:2,4

reason 9:9 20:9
  47:11 50:4
  55:10
reasons 72:4
recall 24:9,18
  28:15 42:23
  57:4,7 58:14
  58:17
receive 13:3
  63:1
received 18:3,15
  20:1 22:11
  23:18 34:4
  36:19 47:7
  56:8,23 64:14
receiving 43:14
  46:4,9 55:22
record 6:7,21
  7:23 8:1,2,7,7
  9:17,21 59:7
  62:13 67:7
  75:4
recorded 7:13
  82:12
records 14:17,18
recover 70:17,19
  70:22,25 71:6
  71:15,21
recovery 71:10
  71:18
recreation 49:21
  50:11
reduced 82:13
redundant 70:10
refer 12:24 23:4
  27:8
referenced 12:21
  16:13
references 11:17
referred 48:19
referring 24:3
  36:22
reflect 50:5
reflected 53:14
refresh 67:7
refund 53:3,8,13
refused 72:16
refusing 62:8
  76:13
regard 11:12
  17:12

regarding 13:20
  17:1 19:25
  67:13 75:25
reimbursement
  43:3
related 35:20
  82:15
relates 61:6
relevant 61:10
relying 12:2
remains 81:5
remember 24:8,11
  29:2 37:14,15
  43:4 53:8
  57:22 58:6
  72:21 74:4,10
  79:8
reorganization
  5:22 67:20
  68:3,8
repeatedly 76:3
report 32:17
  39:12 48:25
  49:11 56:18
reporter 12:18
  13:10 17:24
  19:2 20:25
  22:6 23:10
  25:18 27:4
  29:16 32:13
  35:23 41:4
  43:21 50:17
  54:9 62:13
  67:3,21 82:5
reports 8:18
  23:6 27:9
request 47:5
  61:14
requested 62:12
resolve 10:16
resolved 73:10
respect 47:11
respond 21:9
  22:11
response 18:4
responses 7:15
responsibilities
  63:18
responsible
  25:10
result 65:6 73:3

retain 75:16,19
retained 4:4
retaining 75:18
  75:23 76:3
return 70:18
revenue 78:14
richard 2:2,6
  6:7
right 6:19 7:4
  8:3 9:7 10:12
  10:13,13 13:25
  17:19 18:20,22
  20:12 21:22
  23:13 24:5
  26:8,9,12,14
  28:5,6 29:8
  30:5 32:9,10
  32:16 33:4
  34:3,9 35:3,5
  35:13 36:11,13
  38:1,15,17,21
  40:7,13 41:8
  41:18,23,24
  42:6,7 45:10
  45:14 46:17,21
  47:10,24 48:2
  48:6 49:18,22
  49:24 50:3
  51:6,9,13,14
  51:18,19 52:1
  52:2,8,21
  53:17 54:23,25
  55:2,3,6,7
  56:24 57:2
  58:2 59:16,18
  60:10,18 62:21
  63:25 64:8,13
  65:2,10,16
  66:6 76:12,14
  78:13,23 80:7
  81:19
roble 2:2,6 3:6
  6:7,7,14 8:6
  9:17,20 12:20
  13:6,12 17:19
  18:1 19:4 22:8
  23:12 25:21
  27:6 29:18
  32:15 41:6
  43:23 50:19
  54:11 59:1,6

  62:15 66:19
  72:5,22 81:21
roncelli 22:13
  22:19,22 37:2
  37:5 38:23
  40:12,13 51:16
  51:18 52:11,16
  52:17,20 65:19
  65:21 74:22
room 6:25
round 42:19
rule 12:22 61:18
rules 7:8,20

_____
                S
_____
safe 68:19
salary 23:19
  27:23 30:8
  33:6 36:13
  40:1 46:4,10
  47:3,8 48:7
sale 74:1
sales 74:3
saw 61:23
saying 20:15
  35:6 62:16
says 12:6 15:7,8
  15:25 16:11
  18:10,13 19:17
  19:19 20:12,13
  20:17 21:12,21
  22:19,20,23
  29:4,20 33:22
  35:13,17 36:1
  36:14 37:9
  38:11 40:3,4
  41:25 45:9,20
  50:11,20 51:8
  54:12 56:8
  60:12 61:17
  65:9
sbplclaw 2:14,15
schedule 33:20
scheduled 6:16
scope 61:12 70:7
  79:18
second 6:18 9:21
  22:17 31:3,8
  31:12 75:22
section 9:23,25
see 11:16 14:17

HANSON RENAISSANCE
COURT REPORTERS & VIDEO
hansonreporting.com
313-567-8100

16:24 17:1,14
18:8 38:11
45:4 49:1 50:7
52:23 55:9
**seen** 68:5
**sent** 32:1
**separate** 16:11
61:20
**september** 4:22
27:3,11 29:7
63:9
**services** 14:25
16:23 19:18,18
19:20 20:13,18
20:19 37:19
45:10 57:2
66:2 75:1
**set** 7:21 9:1
11:10 13:22
36:1 82:8
**seven** 25:19
**shake** 7:14
**sheet** 47:7 72:21
**shield** 15:12
16:2 17:2 34:6
**short** 19:5
**shorthand** 82:5
**show** 17:3 29:9
30:14 39:8
42:18 49:3
50:2 51:20
53:19,21 61:17
65:15
**showed** 40:11
51:17 53:12
**showing** 14:18
37:5 41:7
43:24 53:24
65:13 71:3
**shown** 15:23
**shows** 17:15
19:12 22:14,18
24:25 26:11
28:4,7 29:10
32:8 33:11
34:10 39:23
40:15 42:5,8
49:21 51:12,25
52:6,16 53:22
55:2,11,12,13
57:1

**signature** 24:14
25:24 27:14
29:23 32:22
36:5 41:12
44:4,7,10 45:1
50:24 54:16
**signed** 81:3
**similar** 10:3
27:7 34:13
45:2 50:20
56:22
**similarly** 53:25
**simon** 47:12 48:9
**simons** 48:8
**simple** 60:19
**simply** 12:5
**sit** 21:24 25:7
31:23 32:4
39:1 51:21
60:24 65:8
66:4,17
**six** 44:1,9 46:6
59:14 60:7,15
64:22 73:12
79:1
**somebody** 9:11
70:11
**somewhat** 25:22
**soon** 59:23
**sorry** 11:10
20:14 22:23
38:3 39:19
58:22 70:21
**sound** 9:3
**sounds** 59:16
**source** 39:4 43:1
57:21 58:12,15
60:20 62:23
63:13,21 64:3
65:13,15 77:16
**sources** 67:15
69:1 76:17
79:6,7
**southern** 1:3
**southfield** 1:16
2:13 6:1
**spce** 15:10,20,24
16:10,18 17:12
65:24 66:1
72:20 73:5,22
73:25 74:17,19

**spcebcbs** 15:7
**speculate** 76:9
**speculating** 39:2
39:3
**spent** 69:24
**split** 32:5 34:19
42:11 51:22
**ss** 82:3
**stamp** 44:7,10,13
44:23 45:1
**start** 7:23 14:9
25:23 70:1
**started** 21:5
37:20
**starting** 6:15
19:23 63:12,12
**starts** 18:11
20:15
**state** 53:10 72:9
82:2,6
**statement** 4:10
5:22 17:23
18:10 23:15
26:11 27:22
30:8 33:5,10
35:15,16 36:14
38:10 39:22
40:3 41:20
49:1,3 51:8
52:3,13 54:3
54:24 55:11
57:15 67:20
68:3,9
**statements** 53:18
**states** 1:1 6:8
12:11
**stating** 15:18
**status** 79:12,14
80:1
**stayed** 60:9
**stenographically**
82:12
**step** 24:12 47:6
**stipulate** 10:6
**stop** 43:14 64:7
64:15
**stopped** 39:13,13
43:9 44:17
**straight** 8:17
**strategy** 78:6
**street** 2:4

**stubs** 18:17
**subject** 61:6,13
**subsequently**
47:18
**substantial**
71:10,18
**suite** 1:15 2:4
2:12
**summarize** 59:2,8
**summary** 42:15
52:7
**support** 34:21
**supposed** 31:10
37:10 42:1
49:8
**sure** 31:16 32:4
39:1 44:15
62:11 64:9
75:17,19,23
76:19
**sustain** 76:18
**sworn** 6:5 82:9

---

**T**

**table** 3:1
**take** 7:12 13:14
27:1 35:4
43:18 46:21
47:6 50:14
59:1 61:8
67:16 72:21
**taken** 1:15 7:4
38:17 48:2
82:7,14
**talk** 7:24 8:2
57:16
**talked** 40:5
47:17
**talking** 10:21
28:18 30:18
39:15 43:11
53:2 57:4
**tax** 52:23 53:13
**taxes** 38:17 40:3
48:2
**taxing** 11:18
**tell** 14:3 30:20
44:22 70:15
75:3 79:9,21
**ten** 19:21 37:10
54:4 56:23

EXHIBIT 8

HANSON RENAISSANCE
COURT REPORTERS & VIDEO
hansonreporting.com
313-567-8100

64:22,23 81:12
**tend** 61:15
**terms** 60:19
  63:24 80:18,20
**testified** 6:6
**testify** 72:16
  76:8 82:9
**testimony** 59:9
**thank** 6:21 9:17
  11:5 25:15
  26:10 43:18
  66:23 67:16
**thanks** 11:2
**thats** 7:12 9:4,7
  9:16 10:18
  17:17 18:16
  23:2,15 24:13
  24:16 25:1,13
  26:2 27:1,14
  27:22 29:3,23
  31:16,21 32:20
  32:22 33:20
  34:2 35:6 36:5
  37:16 38:8,18
  41:10,12 47:19
  47:21 49:7,10
  50:24 52:12,17
  52:18 53:7,14
  54:3,16 55:14
  59:12 61:7,7
  62:14,20 63:16
  63:19,19 64:20
  66:18 70:11
  71:14 72:18
  75:4,21 76:6
  77:4,15,24
  79:1 81:5
**theres** 15:19
  16:9,10 23:24
  26:19 28:1
  33:10 40:6
  46:18 47:19
  57:22 65:3
  70:24
**theyre** 8:21 12:6
  17:17 61:3
  64:11,15 66:22
  76:7
**thing** 15:6 17:11
  29:9 30:7 42:9
  51:21 66:1

73:8
**things** 7:13,18
  7:24 10:21
  11:25 13:3,5
  25:23 41:22
  59:2,8 61:3
  66:14 76:2
**think** 8:1 9:9
  10:22 11:9
  19:16 31:15
  36:17 37:11
  39:6 53:11,18
  56:17 58:17
  61:7 62:6
  81:21
**third** 23:14
  26:11 39:22
  71:14
**thirty** 64:13,16
**thomas** 1:7
**thousands** 74:13
**three** 14:22 15:3
  42:13 46:3
  47:12 59:15
  71:17
**throw** 60:13
**thursday** 77:4,5
  77:7,8,9
**time** 7:2 10:17
  14:23 28:14,20
  30:9 33:7
  39:16 41:25
  43:16 46:9,25
  47:7,15 49:13
  49:16 54:1
  63:7 66:6
  69:14,19 71:14
  72:3 82:8
**timeframe** 10:11
  13:22 22:21
  55:13
**times** 71:17 76:6
**title** 68:14
**today** 21:24
  44:14 58:12,15
  60:24 61:8,19
  65:8,11 66:16
**told** 47:15 48:14
  48:15
**top** 29:19 32:18
  36:2 41:8

50:22 52:6
**total** 22:14
  35:12,15
**totals** 78:24
**transcript** 82:14
**transcription**
  82:13
**trapped** 7:9
**treasurer** 11:25
**treasury** 11:19
**tried** 10:16 38:6
  41:22
**true** 61:7 82:13
**trust** 31:19,21
  31:24
**trustee** 2:3,8
  14:23 43:10
**trustees** 6:8
  47:4
**truth** 82:10,10
**try** 77:10
**trying** 23:17
  25:23 28:22
  31:1 45:3 59:8
  79:22
**tucker** 1:7
**turn** 23:14 26:10
  27:22 30:7
  35:7 42:15
  67:24,25 68:13
**turned** 60:17
**twenty** 81:15
**two** 5:14 7:18,19
  17:13 19:15
  26:19 30:16,22
  30:23,23 31:1
  31:6 32:1 37:2
  37:6,13,14
  38:23 40:11,13
  42:18 43:20,25
  43:25 44:2
  45:13,14 46:3
  48:9 51:23
  52:7 64:21,23
  69:1,4,24 70:9
  70:13,16 71:7
  71:13,15
**type** 64:14 65:15
  80:16
**types** 18:10
**typo** 8:22 10:14

**U**

**unclear** 19:16
  64:20
**uncomfortable**
  66:10
**understand** 7:16
  7:17 11:14
  12:7 15:7 27:9
  28:19 31:23
  39:25 53:1,15
  79:23
**understanding**
  8:12 61:11
**understood** 7:19
**united** 1:1 6:8
  12:11
**upcoming** 9:1
  61:11
**usdoj** 2:6
**use** 7:24 8:9,14
  10:7 48:8

**V**

**valid** 72:6,12
**various** 14:3
  18:9 36:23
  54:13
**verbal** 7:15
**verify** 9:4 45:3
**view** 48:22
**voided** 47:17

**W**

**want** 8:9,15,19
  9:4 12:14 16:3
  16:9 17:8 18:7
  23:5 24:12
  31:16 34:2
  37:24 58:7
  59:1 64:17
  66:21 70:5
  75:3,4
**wanted** 7:23 32:13
**wasnt** 20:11 24:1
  25:9 39:15,16
  40:20 42:23
  43:1,5,5,7
  47:3 48:7,15
  49:13,14 50:13
  59:16 69:8

HANSON RENAISSANCE
COURT REPORTERS & VIDEO
hansonreporting.com
313-567-8100

79:2
**water** 19:6
**way** 37:12 62:7,9
**wayne** 82:4,22
**week** 9:2 47:9,16
47:18,19 77:25
**went** 8:11 9:12
9:23 11:13
17:13 18:5
33:25 37:4
40:1,2 47:6,21
49:17 50:2
59:19 65:11
**west** 2:4
**weve** 10:3 14:11
36:21 38:14,18
63:16 66:13
69:24
**whats** 13:13 19:6
21:2 22:9 41:7
43:24 62:23
64:20 79:12
80:1 81:5
**whos** 31:16
**wife** 14:12 15:11
15:24 35:7
38:25 39:4,9
40:18 42:24
43:1 55:20
56:12
**wifes** 16:16
34:21 40:21
43:5,7 57:1
**willing** 76:7
**withdraw** 6:24
**withholding** 53:5
55:2
**witness** 3:3 9:11
77:24 82:9,12
**wont** 75:18
**word** 46:21
**words** 48:8
**work** 16:6 65:19
72:1 74:20
75:7,10,14
76:1 80:16
81:4,4
**working** 44:17
46:24 47:4
61:3 66:14
76:2

**worth** 11:12
**worthwhile** 10:23
**wouldnt** 35:10
**wrapped** 73:20
78:8,11
**writing** 54:13,13
65:22 66:1
80:22
**written** 36:23
**wrong** 8:21,22

---

**X**

---

**Y**

**yeah** 11:10 18:17
33:15 35:4
45:1 53:25
60:11 68:5
**year** 19:12 28:21
63:10,13 64:24
65:1 68:19,21
68:21,22,22
70:9,13,16
71:7,13,15
74:1 78:24
**years** 46:14,16
49:15 64:22,23
69:16 79:24
**yep** 9:16
**yield** 71:22
**youd** 28:10 71:22
79:3
**youll** 21:15
48:25 52:23
**youre** 6:15 7:2,9
10:6,10,11,17
10:18 12:3
16:6,17 21:21
21:25 24:3
32:4 34:3
37:10 42:1
43:11 49:8
51:21 53:2
58:23 61:17
62:16,18 64:6
66:9 69:25
70:7 71:6 75:3
75:13,19,19
76:10,12,12,14
77:23 79:18
80:6 81:7,12

**youve** 7:4 14:1,8
22:13 24:25
26:14 33:6,9
34:6 36:23,24
37:5 38:21
40:1 56:23
60:14 63:5
64:5,10 65:8
65:14 69:11
76:20 78:23

---

**Z**

**zero** 25:3 28:7
29:4 37:25
60:12
**zousmer** 6:24
13:15 19:8
21:8 22:10
24:19 26:4
27:17 30:1
32:24 36:7
51:2

---

**0**

**00** 13:1 14:22,24
15:8 16:12,12
19:13 21:13
22:2,15,18,21
28:4 31:4
33:11,12,13,18
34:4 40:4,6,9
40:16 41:21,22
42:1,2,22
51:12,15,16,18
52:10,25 53:16
53:16,19 54:25
56:8,11 57:1
61:19 70:14
71:7,11,13,15
71:19,23 73:5
74:11,15,23
78:17,23,24
79:24
**000** 16:12 19:13
21:13 22:2,15
31:15 33:11,12
33:13,18 34:4
35:2 36:21,24
37:8 40:4,5,6
40:9,17,22
41:21,22 42:1

42:2,20 51:12
52:10 53:19
54:25 55:13
56:8 57:1,24
60:22 70:14
71:7,11,13,15
71:19,23 73:5
74:11,15 78:17
78:23,24 79:24
**02** 55:12,17
**075** 40:16

---

**1**

**1** 1:12 4:5 12:15
12:16 13:20,24
14:1 15:8
16:12 18:5
21:9 22:13
23:22 24:25
31:4,15 34:10
35:7 36:14,23
38:14,16 40:1
40:3 45:5,16
48:1,2 50:2
57:1 61:16
73:5
**10** 5:5 21:13
22:2 29:14
33:11,12,13,18
34:4 35:2 42:1
42:19,20 51:12
52:10 53:19,22
53:23 54:25
55:12,13 56:8
57:24 60:22
74:11 78:23
**100** 31:6
**10159** 43:25 45:4
**10160** 44:1 45:15
**102311** 18:12
**103** 53:23
**103012** 22:19
**1031** 22:25
**103112** 22:20
**1099** 4:12,16
19:1,11 22:5
22:13
**11** 1:6,17 5:7
6:3 32:11,16
35:12 43:9
47:4 50:5

EXHIBIT 8
HANSON RENAISSANCE
COURT REPORTERS & VIDEO
hansonreporting.com
313-567-8100

# Michael McInerney
## 6/18/2012

76:14
**1109** 33:11,22
**11512** 45:7,8,9
  45:18
**1158953tjt** 1:5
**118** 30:5
**11812** 45:7
**12** 4:6 5:9 33:9
  34:22 35:2,21
  35:25 38:11
  42:18 61:19
**120** 78:24
**120811** 18:13
**123** 53:23
**12th** 25:11
**13** 4:8 5:11 41:2
  41:7 48:24
  51:9 52:19
  53:22
**13012** 22:23 23:1
**13112** 22:23
**13123** 23:1
**14** 5:13 43:19,24
**142** 33:3
**15** 5:15 50:15
**150** 70:14 71:7
  71:11,13,15,19
  71:23
**158** 36:11
**159** 41:18
**15th** 13:1 18:3
  19:9 21:10
  22:11 58:2
**16** 5:17 54:7
  59:8
**17** 4:10 5:19
  66:25 67:1,7
**174** 35:13
**18** 1:18 4:12
  5:21 6:2 35:17
  67:17,19 81:23
**186** 51:6
**18th** 47:13
**19** 35:13
**192** 23:19
**199** 49:22
**1st** 82:23

---
### 2
**2** 1:17 4:7 6:3
  13:7,8,14,24

14:2,18 15:19
16:12 21:12
22:15 26:14,23
32:9 34:1,5,21
35:7 36:22
39:7 40:9,11
40:17 41:21
47:22 51:12,16
52:21,24 56:5
56:7,11,22
72:22 81:23
**20** 4:14 36:24
  37:8 38:18
  40:5,6 41:21
  41:22 42:2,20
  54:12
**200** 16:12 22:18
  22:21 51:15,16
  51:18 52:11,17
  52:20,25 53:16
  53:16 56:11
  74:15,23 78:17
  79:3
**2004** 6:15 12:13
  12:22 61:18
  67:13 81:23
**2010** 28:21
**2011** 4:12,16,18
  4:20,22 5:6,8
  5:10 19:1,12
  20:11 21:5
  22:5,13 23:9
  23:18 25:17,25
  27:3,11 28:21
  28:23 29:15,20
  32:5,12,18
  35:22 36:2
  37:22 44:18
  47:10,25 49:16
  59:11 63:22
  69:18 70:2
  72:19
**2012** 1:18 5:12
  5:16,18 6:2
  16:10,10 19:24
  20:19 21:22
  28:21,24 41:3
  41:8 46:23
  50:16,21 54:8
  54:12 59:12
  62:23 68:17,19

73:5 74:22
**2013** 63:12 64:25
**2018** 82:23
**211** 2:4 54:22
**213** 51:9 52:16
**2152011** 20:4
**22** 4:16 36:21,25
  40:4
**2266769** 2:7
**23** 4:18 39:23
  40:20,24
**24** 45:5
**246** 6:17 12:23
**248** 2:16 11:4
**25** 4:20 40:16,22
**250** 14:18 33:9
  34:5,21,22
  35:2,7
**253** 15:8
**261** 42:20 53:23
**26100** 2:12
**266** 38:5
**27** 4:22
**27th** 55:16
**29** 5:6
**29100** 1:15

---
### 3
**3** 4:9 17:21,22
  18:2,9 22:18
  22:21 27:22
  28:1 30:11,14
  31:20 34:14,15
  38:21 41:20
  42:9 49:1
  51:15,16,18,20
  52:11,16,17,20
  74:23
**30** 64:7
**301** 34:10
**30th** 52:22
**310** 1:15
**313** 2:7
**31st** 25:25
**32** 5:8
**342** 45:16 50:2
**35** 5:10
**3547906** 2:16

---
### 4
**4** 4:11 18:25

19:7 52:1
**40** 19:13 68:14
  68:14
**400** 31:11
**401** 35:7
**41** 5:12
**423** 55:7
**43** 5:14
**432** 38:21
**473** 42:19 53:22
**48034** 1:16 2:13
**481** 28:1
**48226** 2:5
**493** 28:4
**4th** 21:5

---
### 5
**5** 4:13 13:1
  20:23 21:3
  23:19 42:5
  52:6,9 65:10
**50** 5:16 42:20
  53:23
**500** 2:12
**506** 55:12,17
**54** 5:18
**57** 11:6 52:6,9
**570** 52:1
**589** 26:14
**599** 52:21
**5th** 21:22,24

---
### 6
**6** 3:6 4:15 14:5
  22:4,9 26:19
  26:20 33:6
  34:4
**600** 48:2 79:24
**632** 38:14 40:3
**642** 23:22 24:25
**648** 45:5
**655** 27:23 30:8
**67** 3:7 5:20,22
**69** 24:23 45:16

---
### 7
**7** 4:17 23:7,8
  59:7
**70** 26:8
**700** 2:4 42:22
**7042** 82:21

EXHIBIT 8

HANSON RENAISSANCE
COURT REPORTERS & VIDEO
hansonreporting.com
313-567-8100

**7093535** 11:4
**712** 24:4
**719** 32:9
**731** 24:4 36:14
  36:23 38:16
  39:23 40:1,20
  40:24
**737** 48:1
**750** 14:22,24
  26:23
**788** 35:17
**79** 27:19
**799** 52:24

---
**8**
---

**8** 4:19 25:16,24
  27:23 29:9
  30:8 42:18
  52:4
**800** 31:4
**82** 1:12
**833** 52:6,9
**846** 30:11

---
**9**
---

**9** 4:21 27:2
  38:11
**923** 26:19,20
**924** 14:5 33:6
  34:4
**938** 30:14 31:20
  34:14,15 42:5
  42:9 51:20
**98** 38:14,21

HANSON RENAISSANCE
COURT REPORTERS & VIDEO
hansonreporting.com
313-567-8100